UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Linda Tirado,<br><br>      Plaintiffs,<br><br>v.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his official capacity*; and John Does 1-4, *in their individual and official capacities*,<br><br>      Defendants. | Case No:   20-CV-01338 (JRT/ECW)<br><br>**DEFENDANT MINNEAPOLIS POLICE LIEUTENANT ROBERT KROLL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)** |

## INTRODUCTION

The instant case is a claim by a member of the media for injuries incurred while she was present during the protests and riots on May 29, 2020 in Minneapolis, Minnesota. Plaintiff fails to allege any conduct by Defendant Minneapolis Police Lieutenant Robert Kroll ("Defendant Kroll") which would cause liability to Defendant Kroll. As such, Plaintiff's claims against Defendant Kroll must be dismissed.

1

## FACTS

The Complaint describes the series of events leading up to the protests and riots that took place in the City of Minneapolis, Minnesota in May 2020.  The relevant facts in this case are that Plaintiff alleges she was a member of the media and was injured by a projectile while covering the riots for "the media." There is no allegation that Defendant Kroll deployed the projectile or even directed MPD officers to deploy a projectile (or use any force). There is no allegation that Defendant Kroll was on duty as a police officer at the time of the alleged injuries – he was not.

Defendant Kroll is the President of the Police Officers' Federation of Minneapolis ("POFM"), the Exclusive Representative of all licensed police officers employed by the City of Minneapolis between the ranks of Police Officer and Lieutenant.  See Kelly Aff. Ex. 1 (Labor Agreement between the POFM and City of Minneapolis).  The POFM is a private non-profit corporation see Kelly Aff. Ex. 2 (Minnesota Secretary of State Business Record Detail). As President of the POFM, Defendant Kroll is contractually "relieved from [his] regularly scheduled duties to engage in Federation activities…" and is designated to "work exclusively on Federation business on a permanent basis (the "Full-Time Personnel")…" Kelly Aff. Ex 1 at 57.  The City of Minneapolis and its Police Department "shall not order Full-Time Personnel to perform duties for the Police Department…" Id at 58. POFM directs the "activities of personnel while such personnel are engaged in Federation business…" Id.  Thus, the City of Minneapolis and the Minneapolis Police Department are prohibited from requiring Defendant Kroll to perform

law enforcement duties for the MPD with only a few exceptions[1]. Id. Defendant Kroll holds the rank of Lieutenant from the Minneapolis Police Department, but is designated as Full-Time personnel where he works exclusively for POFM and has been Full-Time for POFM since 2014.

On the date of Plaintiff's alleged injuries, Defendant Kroll was designated as Full-Time Personnel of the POFM, working exclusively on POFM business. As a Full-Time Personnel of the POFM, Defendant Kroll supervises and directs other POFM personnel and holds no supervisory role or responsibility within the Minneapolis Police Department.

Plaintiff's sole allegation to support its claim against Defendant Kroll is a statement that Defendant Kroll sent to the members of the POFM. The Complaint alleges Plaintiff was injured on May 29, 2020. Complaint, ¶1. Defendant Kroll's statement was issued on June 2, 2020, four days *after* Plaintiff's alleged injury had already occurred. Complaint ¶40. Defendant Kroll was not present nor was he supervising any Minneapolis Police Department personnel at the time of Plaintiff's alleged injury.

## ISSUES

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted?

## STANDARD OF REVIEW

---

[1] "[T]raining required for such Full-Time Personnel to retain their POST license and/or good standing as employees of the Minneapolis Police Department; being interviewed under Garrity by Internal Affairs; or required participation in criminal or civil litigation relating to duties performed by the employee as a Minneapolis Police officer (collectively the "Mandatory MPD Duties")."

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). Accordingly, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment under Rule 12(d). *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Court must grant a Rule 12(b)(6) motion to dismiss for failure to state a claim if the plaintiff "cannot prove any set of facts in support of the claim which would entitle him to relief." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). The Supreme Court has emphasized that even under the liberal pleading standard of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a

4

right to relief above the speculative level." *Iqbal*, 129 S. Ct. at 1964-65.  "The threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must provide more than labels and conclusions.

     Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

     Courts ordinarily do not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992)(quotations omitted). "[F]acts asserted in the memoranda [supporting a motion to dismiss] themselves, as well as statements made at oral argument, may not be considered unless they were first asserted in the pleadings." *Folger v. City of Minneapolis*, 43 F.Supp.3d 922, 930 (D.Minn.2014).

A court may, however, consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc*., 537 F.3d 913, 916 (8th Cir.2008). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.' " *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir.2012) (quoting *Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir.2003)). For instance, the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered. *Gorog v. Best Buy Co*., 760 F.3d 787, 791 (8th Cir.2014). The Exhibits attached to the Kelly Affidavit are all referenced in specific paragraphs of the complaint and incorporated by the complaint and the Court should, therefore, consider them.

## ARGUMENT

The Complaint should be dismissed because Plaintiff "cannot prove any set of facts in support of the claim which would entitle [her] to relief."

Plaintiff alleges that she was injured by a projectile while covering the protests and riots for "the media." There is no allegation that Defendant Kroll deployed the projectile that allegedly injured Plaintiff. There is no allegation that Defendant Kroll directed MPD officers to deploy a projectile (or use force on Plaintiff). In fact, there is no allegation that Defendant Kroll was even on duty as a police officer at the time of the alleged injuries.

The facts alleged in the Complaint do not allow the court to even infer more than the mere possibility of misconduct let alone the requirement that "the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

To survive a motion to dismiss, the pleading standard in Rule 8 requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id* 1949 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's Complaint in this case fails to meet the unacceptable "unadorned, the defendant-unlawfully-harmed-me accusation"—instead, Plaintiff essentially asserts that Defendant Kroll is somehow liable simply because he is the president of the union designated as the exclusive representative of Minneapolis police officers. The Complaint should be dismissed because it does not contain "enough facts to state a claim to relief that is plausible on its face."

Assuming *arguendo* that Plaintiff meets the Rule 8 threshold to survive a motion to dismiss, the allegations against Defendant Kroll fall squarely within the constitutional protections of the First Amendment. Plaintiff asks this Court to create a cause of action under 42 U.S.C. §1983 that causes financial liability for the content of protected speech. "When a law burdens such speech, the Court applies 'exacting scrutiny,' upholding the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 334-335 (1995) citing *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786 (1978). The United States Congress never intended to allow 42 U.S.C. §1983 as a sword to slaughter the First Amendment. U.S.C.A. Const.Amend. 1. Plaintiff's twisting of 42 U.S.C. §1983 cannot meet any level of

7

scrutiny, let alone the exacting scrutiny required in this content-based claim. The Complaint against Defendant Kroll should be dismissed.

### I. PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AGAINST DEFENDANT KROLL

Plaintiff's claims against Defendant Kroll are based either upon the actions of others or upon the content of Defendant Kroll's protected speech neither of which are legitimate causes of action. Defendant Kroll cannot be held liable for the actions of others, especially those that he does not directly supervise. Defendant Kroll, as the President of the POFM, is afforded the highest rung of First Amendment protection for the content of his speech. Because Defendant Kroll (i) was not present when Plaintiff allegedly sustained injuries; (ii) was not supervising Minneapolis Police Department Police Officers at the time of Plaintiff's alleged injury; and (iii) his speech is protected by the First Amendment, the motion to dismiss should be granted.

#### A. DEFENDANT KROLL WAS NOT PRESENT NOR SUPERVISING ANY MINNEAPOLIS POLICE OFFICERS AT THE TIME OF PLAINTIFF'S ALLEGED INJURIES

Plaintiff's claim against Defendant Kroll is solely in Defendant Kroll's "official capacity." See Complaint. "Local governing bodies can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief." *Leaf v. Freeman*, 499 N.W.2d 54 (Minn. App. 1993) citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 701, (1978). "In *Monell,* the Court further acknowledged that 'official-capacity suits generally represent only another way of pleading an action against an entity

of which an officer is an agent.'" *Id*, quoting *Monel*, 436 U.S. at 690. Actions brought against state officials in their official capacity are actually suits against the state. *Will v. Michigan,* 491 U.S. 58, 71, (1989).  Defendants "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic." *Iqbal*, 556 U.S. 662 (2009).

     As a threshold matter, Plaintiff does not and cannot plead that Defendant Kroll inflicted harm upon Plaintiff because he was not present nor working as a Police Officer at the time of Plaintiff's alleged injuries.  Accordingly, Plaintiff cannot plead any facts that Defendant Kroll was supervising employees in the discharge of official duties because he was not working as an MPD Lieutenant at the time of Plaintiff's alleged injuries.  As a matter of law, Defendant Kroll cannot be liable for the conduct of a subordinate because "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Id.* at 676 (internal citation omitted). "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties" Id, quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888).

     The Complaint mentions Defendant Kroll just three times.  Defendant Kroll is identified in paragraph 14 as a Lieutenant of the Minneapolis Police Department and President of the POFM.  See Complaint p. 7.  The next mention of Defendant Kroll is in

paragraph 40 which alleges that Police Department members are hostile to the media because Defendant Kroll wrote a letter to the POFM Members stating: "I've noted in press conferences from out mayor, our governor, and beyond, how they refuse to acknowledge work of MPD and continually shift blame to it. It is despicable behavior. How our command staff can tolerate it and live with themselves I do not know." Id at 18. The letter speaks for itself. There is no mention of the media other than elected officials holding press conferences. Id.

The final reference to Defendant Kroll is paragraph 41. In it, Defendant Kroll answered a question during an interview with a reporter about being involved in police shootings. Id at 19. The news article referenced in the complaint was published June 2, 2020. Id.

Defendant Kroll is not alleged to have done anything beyond sending a letter to his union membership and taking part in an interview discussing officer involved shootings and PTSD. Neither of the two actions included an explicit or even implicit a call for violence against any one or any entity. The remainder of the allegations are towards Defendants or State and Municipal Defendants. There are no facts pled nor any facts that can be pled to show that Defendant Kroll engaged in any act towards Plaintiff which creates liability to Defendant Kroll. The claims against Defendant Kroll do not go beyond mere averments or conclusory statements. The Complaint fails to allege any facts that support any claim against Defendant Kroll and it should be dismissed.

Plaintiff named John Does 1-4, in their individual and official capacities, the City of Minneapolis, and Minneapolis Police Chief Medaria Arradondo, in his official capacity, as Defendants in this case. There is no benefit or necessity to name Defendant Kroll in his official capacity. The only reason to name Defendant Kroll is for Plaintiff's personal disdain towards him, to garner attention from the media, and/or to harass Defendant Kroll. There is no legal basis for the claims against Defendant Kroll and he should be dismissed.

Defendant Kroll was not present nor was he supervising anyone who was present at the time of Plaintiff's alleged injuries. Because Plaintiff cannot prove any facts that Defendant Kroll caused Plaintiff's injuries, the claim against him must be dismissed,

### B.   DEFENDANT KROLL'S SPEECH IS PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled" by the Supreme Court. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). This constitutional safeguard, "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). The Supreme Court has expressly held that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government

and public officials. *Id* at 270-271 citing *Terminiello v. Chicago*, 337 U.S. 1 (1949) and *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

As the President of the POFM, Defendant Kroll is an outspoken advocate for the union and its members.  The letter referenced in the Complaint was sent by Defendant Kroll, as POFM President, to POFM members. Defendant Kroll voiced his support for POFM members in the face of protests and riots following the death of George Floyd- clearly a matter of significant public concern. As the President of a Union, Defendant Kroll's speech is protected by the First Amendment of the United States Constitution. Speech on matters of public concern is at the heart of the First Amendment's protection. *Snyder v. Phelps*, 562 U.S. 443 (2011). Unions can also speak out on controversial subjects including "climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions." *Janus*, 138 S.Ct. at 2466. "These are sensitive political topics, and they are undoubtedly matters of profound 'value and concern to the public.' *Id.* quoting *Snyder,* 562 U.S. at 453. When Unions engage in such speech, it "occupies the highest rung of the hierarchy of First Amendment values" and merits "special protection."  *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011).  The first six pages of Plaintiff's Complaint lays out the introduction of the matters of public concern that caused "Ms. Tirado, like many journalists across the country, [to rush] to Minneapolis to cover the civil uprisings." Complaint, p. 4. Law enforcement's actions in response to the violent protests and riots that rocked the Twin

Cities and caused an unprecedented activation of the *entire* Minnesota National Guard by the Governor certainly is a matter of public concern.

Accordingly, here, like *Janus*, "the union speech at issue in this case is overwhelmingly of substantial public concern." 138 S.Ct. at 2447. Likewise, Defendant Kroll's commentary about the hard work that the members of POFM engaged in, which went unrecognized by elected officials in the City of Minneapolis, was, and is, of substantial public concern. Additionally, Defendant Kroll's protected speech referenced in paragraph 41 of the complaint regarded Police Officer use of force incidents and the rise in Police Officers' Post Traumatic Stress Disorder diagnoses in general. Both use of force and PTSD are of substantial public concern.

As the Defendant Kroll's speech was not on behalf of the City of Minneapolis or the Minneapolis Police Department. "[I]f the union's speech is really the employer's speech, then the employer could dictate what the union says. Unions, we trust, would be appalled by such a suggestion." *Janus v. American Federation of State, County, and Mun. Employees, Council 31* 138 S.Ct. 2448, 2475 (2018).

Plaintiff does not allege nor can she reasonably allege that Defendant Kroll's speech falls within one of the extremely few exceptions to First Amendment protection such as defamation or incitement to violence. To summarize Plaintiff's claim against Defendant Kroll: she doesn't like him or what he says. Thankfully, disliking an individual does not create a valid cause of action. The First Amendment was enacted to expressly protect an individual's speech and is designed to preclude lawsuits such as this

one. The constitutional protection does not turn upon 'the truth, popularity, or social utility of the ideas and beliefs which are offered.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 445 (1963).  The speech in which Defendant Kroll engaged in, "the advocacy of a politically controversial viewpoint-is the essence of First Amendment expression." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347 (1995) citing *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, (1992); *Lovell v. City of Griffin,* 303 U.S. 444, (1938). Like *McIntyre*, the speech took place during a time with controversial actions by rioters in response to actions of POFM's members which "only strengthens the protection afforded to [Defendant Kroll's] expression: Urgent, important, and effective speech can be no less protected than impotent speech, lest the right to speak be relegated to those instances when it is least needed." *Id* citing *Terminiello v. Chicago,* 337 U.S. 1, 4, (1949).

The Supreme Court has rejected similar lawsuits.  Plaintiff asks this Court to create "a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law." *New York Times*, 376 U.S. at 278, quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).  "The fear of damage awards under a rule such as that invoked by the [Plaintiff] here may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times,* 376 U.S. at 277 citing *City of Chicago v. Tribune Co.,* 139 N.E. 86, 90 (Ill. 1923).

To allow this case to move forward would have a significant chilling effect on Unions' and its elected union officials to engage in speech on matters of public concern.

The ironic outcome is that it would likely be turned against parties like the Plaintiff, as a member of the media. It would decimate the protections of the First Amendment and create a deluge in litigation based solely on the content of a Defendant's speech. Plaintiff has not cited to any Court that has interpreted 42 U.S.C. §1983 to create liability based upon the content of a Defendant's speech. Such a claim turns the First Amendment upon its head.

The irony that this lawsuit comes from a member of the media, traditional stalwarts of First Amendment protections, against Defendant Kroll based solely upon Defendant Kroll's protected speech cannot be lost. The case against Defendant Kroll should be dismissed.

## CONCLUSION

Plaintiff's claims against Defendant Kroll do not withstand any level of scrutiny. In order to survive, Plaintiff must prove that 42 U.S.C. §1983 creates a content-based restriction that will somehow survive an exacting scrutiny analysis. However, the Supreme Court has recognized Union speech on matters of public concern receive the highest level of protection. *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011).

Plaintiff's allegation against Defendant Kroll is based upon her dislike of, or disagreement with, the content of his speech. To allow such a claim to go forward would destroy the fundamental protections of the First Amendment. The Complaint does not allege that Defendant Kroll was present at the time of Plaintiff's alleged injury nor that he

held any role in law enforcement at the time of Plaintiff's alleged injury. Because Plaintiff's claims against Defendant Kroll lack any factual basis, they should be dismissed.

Dated: July 6, 2020 **KELLY & LEMMONS, P.A.**

/s/ Joseph A. Kelly
Joseph A. Kelly (#389356)
Kevin M. Beck (#389072)
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Minneapolis Police Lieutenant Robert Kroll*