UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Linda Tirado,

Case No:      20-CV-01338 (JRT/ECW)

Plaintiffs,

**DEFENDANT ROBERT KROLL'S
MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT
PURSUANT TO RULE 12(B)(6)**

v.

City of Minneapolis; Minneapolis Chief
of Police Medaria Arradondo *in his
official capacity*; Robert Kroll, *in his
individual capacity*; and John Does 1-4,
*in their official and individual capacities*,

Defendants.

## INTRODUCTION

The instant case is a claim by a member of the media for injuries incurred while she was present during the protests and riots on May 29, 2020 in Minneapolis, Minnesota. Plaintiff fails to allege any conduct by Defendant Robert Kroll ("Defendant Kroll") which would cause liability to Defendant Kroll.  As such, Plaintiff's claims against Defendant Kroll must be dismissed.

## FACTS

The Complaint describes the series of events leading up to the protests and riots that took place in the City of Minneapolis, Minnesota in May 2020. The relevant facts in this case are that Plaintiff alleges she was injured by a projectile while covering the riots for "the media." There is no allegation that Defendant Kroll deployed the projectile or directed MPD officers to deploy a projectile (or use any force). There is no allegation that Defendant Kroll was even on duty as a police officer at the time of the alleged injuries – he was not.

Defendant Kroll is the President of the Police Officers' Federation of Minneapolis ("POFM"), the Exclusive Representative of all licensed police officers employed by the City of Minneapolis between the ranks of Police Officer and Lieutenant. *See* Affidavit of Joseph A. Kelly, Ex. 1 (Labor Agreement between the POFM and City of Minneapolis). The POFM is a private non-profit corporation. *See id.*, Ex. 2 (Minnesota Secretary of State Business Record Detail). As President of the POFM, Defendant Kroll is contractually "relieved from [his] regularly scheduled duties to engage in Federation activities…" and is designated to "work exclusively on Federation business on a permanent basis (the "Full-Time Personnel")…" *Id.*, Ex. 1 at 57. The City of Minneapolis and its Police Department "shall not order Full-Time Personnel to perform duties for the Police Department…" *Id.* at 58. POFM directs the "activities of personnel while such personnel are engaged in Federation business…" *Id.* Thus, the City of Minneapolis and the Minneapolis Police Department are prohibited from requiring Defendant Kroll to

perform law enforcement duties for the MPD with only a few exceptions[1]. *Id.* Defendant Kroll holds the rank of Lieutenant from the Minneapolis Police Department, but is designated as Full-Time personnel working exclusively for POFM and has been Full-Time for POFM since 2014.

On the date of Plaintiff's alleged injuries, Defendant Kroll was designated as Full-Time Personnel of the POFM, working exclusively on POFM business. As a Full-Time Personnel of the POFM, Defendant Kroll supervises and directs other POFM personnel engaged in Federation business and holds no supervisory role or responsibility within the Minneapolis Police Department.

Plaintiff's sole allegation to support its claim against Defendant Kroll is an email Defendant Kroll sent to the members of the POFM days after Plaintiff sustained her injuries. The Amended Complaint alleges Plaintiff was injured on May 30, 2020.[2] Amended Complaint, ¶ 1. Defendant Kroll sent a subsequent email on June 1, 2020, two days *after* Plaintiff's alleged injury had already occurred. Amended Complaint, ¶ 122. Defendant Kroll was not present nor was he supervising any Minneapolis Police Department personnel at the time of Plaintiff's alleged injury.

---

[1] "[T]raining required for such Full-Time Personnel to retain their POST license and/or good standing as employees of the Minneapolis Police Department; being interviewed under Garrity by Internal Affairs; or required participation in criminal or civil litigation relating to duties performed by the employee as a Minneapolis Police officer (collectively the "Mandatory MPD Duties")."
[2] The original complaint alleged that Plaintiff was injured on May 29, 2020

## ISSUES

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted?

## STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). Accordingly, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment under Rule 12(d). *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Court must grant a Rule 12(b)(6) motion to dismiss for failure to state a claim if the plaintiff "cannot prove any set of facts in support of the claim which would entitle him to relief." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). The Supreme Court has emphasized that even under the liberal pleading standard of Rule 8, a complaint must contain "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Courts ordinarily do not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). A court may, however, consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc*., 537 F.3d 913, 916 (8th Cir.

2008). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir. 2003)). For instance, the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered. *Gorog v. Best Buy Co*., 760 F.3d 787, 791 (8th Cir. 2014). The Exhibits attached to the Kelly Affidavit are all referenced in specific paragraphs of the Amended Complaint, incorporated by the Amended Complaint, and are properly considered by the Court.

## ARGUMENT

The Complaint should be dismissed because Plaintiff "cannot prove any set of facts in support of the claim which would entitle [her] to relief." Plaintiff alleges that she was injured by a projectile while covering the protests and riots for "the media." There is no allegation that Defendant Kroll deployed the projectile that allegedly injured Plaintiff, and there is no allegation that Defendant Kroll directed MPD officers to deploy a projectile (or use force on Plaintiff). In fact, there is no allegation that Defendant Kroll was on duty as a police officer or present at the time of the alleged injuries. Plaintiff's Amended Complaint alleging a civil conspiracy does not allege facts to support a meeting of the minds between Defendant Kroll (a private actor) and a government actor to violate Plaintiff Tirado's constitutional rights.

Plaintiffs' Complaint in this case fails to meet the unacceptable "unadorned, the defendant-unlawfully-harmed-me accusation"—instead, Plaintiffs essentially assert that Defendant Kroll is liable because he is the president of the union designated as the exclusive representative of Minneapolis police officers. Being an elected union official does not create a plausible cause of action. The Complaint should be dismissed because it does not contain "enough facts to state a claim to relief that is plausible on its face."

Even assuming *arguendo* that Plaintiff meets the Rule 8 threshold to survive a motion to dismiss, the allegations against Defendant Kroll fall squarely within the constitutional protections of the First Amendment. Plaintiff asks this Court to manufacture a cause of action under 42 U.S.C. § 1983 that imposes financial liability for the content of protected speech. "When a law burdens such speech, the Court applies 'exacting scrutiny,' upholding the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 334-35 (1995) citing *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786 (1978). The United States Congress never intended to allow 42 U.S.C. § 1983 as a sword to slaughter the First Amendment. U.S.C.A. Const. Amend. 1.

Plaintiff's twisting of 42 U.S.C. § 1983 cannot meet any level of scrutiny, let alone the exacting scrutiny required in this content-based claim. Plaintiff's claims against Defendant Kroll are based either upon the actions of others or upon the content of Defendant Kroll's protected speech—neither of which are valid causes of action.

The Complaint against Defendant Kroll should be dismissed.

7

## I.   PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM AGAINST DEFENDANT KROLL.

Defendant Kroll was not supervising Minneapolis Police Department Police Officers at the time of Plaintiff's alleged injury and was not present when Plaintiff allegedly sustained injuries. Defendant Kroll cannot be held liable for the actions of others, especially those that he does not directly supervise.

Moreover, Defendant Kroll, as the President of the POFM, was a private citizen and not acting under color of state law. The allegations in Plaintiff's Amended Complaint do not meet the threshold requirements to plead a § 1983 conspiracy.

Last, Defendant Kroll's speech, as President of the POFM, is afforded the highest rung of First Amendment protection. The motion to dismiss should be granted.

### A.   Defendant Kroll is not liable pursuant to 42 U.S.C. § 1983 because he was not acting under color of law.

Plaintiff's § 1983 claim fails as a matter of law because Defendant Kroll is sued only in his *individual capacity*. Naming Defendant Kroll only "in his individual capacity" is an explicit recognition that Defendant Kroll was not acting under color of law. "Acts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett v. First State Bank,* 399 F.3d 940, 949 (8th Cir. 2005) (alteration in original) (quoting *Screws v. United States,* 325 U.S. 91, 111 (1945)). A defendant is acting under color of state law only if he "acts or purports to act in the performance of official duties . . . ." *Johnson v. Phillips,* 664 F.3d 232,240 (8th Cir. 2011). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was *committed by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42 (1988) (emphasis added).

"[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Johnson,* 664 F.3d at 239–40 (quoting *West,* 487 U.S. at 49). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir. 1997) (internal quotation marks omitted).

To determine whether an official is acting under color of law, the Court "look[s] to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez–Peyro v. Holder,* 574 F.3d 893, 900 (8th Cir.2009). "Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe,* 128 F.3d at 1216. "In determining whether a sufficient nexus exists in the context of a § 1983 claim brought against a police officer, the Court considers a number of factors, including whether the officer was on duty and in uniform, the motivation for the officer's actions, whether the officer had access to the plaintiff because of the officer's position, and whether the officer invoked his status or threatened to use his official authority in the future. *Magee v. Trusttees of Hamline University, Minn., et al.*, 957 F.Supp. 2d 1047, 1055 (D. Minn. 2013) (citing *Ramirez–Peyro,* 574 F.3d at 901).

Applying these factors, this Court dismissed a similar suit against Dave Titus, then a St. Paul Police Officer and President of the St. Paul Police Federation. *Magee,* 957 F.Supp.2d at 1047. The plaintiff in *Magee* alleged that Titus violated her rights when he published a written response to an editorial written by the plaintiff. *Magee*, 957 F.Supp.2d at 1047. In his response, Titus identified himself as a St. Paul Police Officer and the President of the St. Paul Police Federation, questioned Magee's "fitness to teach" and stated "I hope Professor Magee confines her race baiting and cop-hating to her newspaper submissions and keeps it out of the classroom." *Id.* Titus then contacted Hamline, allegedly with the intent to have Magee fired in retaliation for her critical editorial, and organized a boycott of Hamline University to encourage Hamline to fire Magee. *Id.*

This Court found that those facts were insufficient to show that Titus was acting under color of state law because Titus was not using his position as a police officer to influence others, but was using his position as St. Paul Police Federation President. *Id.* "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Id.* at 1056 (quoting *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 762 (8th Cir. 2003)). The Eighth Circuit affirmed the dismissal. *See Magee v. Trustees of Hamline University, Minn. et al.*, 747 F.3d 532 (8th Cir. 2014). Specifically, the Eighth Circuit held that Titus "was not acting 'under color of state law' when he published [the] editorial" and that the "federation's

call for police department to boycott university did not constitute joint activity with state." *Id.* (internal citation omitted).

Like Titus, no facts can be plead that Defendant Kroll was acting under color of law. The facts alleged in the Amended Complaint show that Defendant Kroll was not acting under color of state law when he sent an email to MPD Command Staff and POFM membership. Defendant Kroll works full time as the President of the Police Officers Federation of Minneapolis and does not perform law enforcement duties under the color of law. *See* Kelly Aff., Ex. 1, p. 57. Like Titus, Defendant Kroll was not using his position as a police officer—he was not on duty, not in uniform, and had no contact with any of the plaintiffs—rather, all of his conduct was in the scope of his position as President of the POFM. Like *Magee*, the POFM's requests for responses for "several issues" does not constitute joint activity with the state.

### 1.   Defendant Kroll and the POFM are private parties.

Labor unions are generally not state actors. *See Montgomery v. City of Ardmore* 365 F.3d 926 (10th Cir. 2004); *see also Magee*, 747 F.3d at 532. As President of the POFM, Defendant Kroll acts as a private party. The Amended Complaint makes it clear that Defendant Kroll's actions are in the scope of his private position as the President of POFM and not as a police officer. There are no allegations in the Complaint establishing even an inference of a nexus between Defendant Kroll's official conduct as a police officer acting under color of law and plaintiff's injuries.

"[A] clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights." *Ottoman*, 347 F.3d at 761-62. Defendant Kroll's actions were not "made possible by, or undertaken in, his position as a police officer." *Magee*, 957 F.Supp.2d at 1057. Instead, Defendant Kroll's actions were made possible and undertaken solely in his private position as President of POFM. Because Defendant Kroll did not act under color of state law, he cannot be liable under 42 U.S.C. § 1983 and the complaint should be dismissed.

**B.    Defendant Kroll did not conspire with a public actor to violate Plaintiff Tirado's civil rights.**

In her desperate attempt to include Defendant Kroll in this lawsuit, Plaintiff amended her complaint to add a claim of civil conspiracy alleging generally that Defendant Kroll conspired with the City to violate her civil rights. A private actor may be held liable under § 1983 only when the private actor "is a willful participant in joint activity with the State or its agents." *Magee*, 957 F.Supp.2d at 1057 (citing *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982))). The allegations in the Amended Complaint do not create an inference that Defendant Kroll was a willful participant in joint activity with the state.

1.    There is no allegation that Defendant Kroll reached a mutual understanding with the State or its agents to violate Plaintiff Tirado's civil rights.

To prove a § 1983 conspiracy claim, Plaintiff must show "that the defendant conspired with others to deprive . . . her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that

the overt act injured the plaintiff." *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999). A plaintiff cannot allege a generalized § 1983 conspiracy—the conspiracy must be specific to the plaintiff: "A private actor may be liable as a § 1983 conspirator when the private actor reached an agreement with a person acting under color of state law *to retaliate against the § 1983 plaintiff for her protected First Amendment activity." Lawrence v. City of St. Paul*, 740 F.Supp.2d 1026 (D. Minn. 2010) (emphasis added) (citing *Dossett,* 399 F.3d at 947).

Accordingly, to maintain a §1983 conspiracy action against Defendant Kroll as a private individual, Plaintiff must prove that Kroll willfully participated with and reached a mutual understanding with officials acting under color of law to retaliate against the Plaintiff for *her* protected First Amendment activity. *See Lawrence*, 740 F.Supp.2d at 1026 (citing *White v. McKinley,* 519 F.3d 806, 816 (8th Cir. 2008)). Plaintiff's Amended Complaint, citing nothing beyond generalized legal conclusory statements, does not, and cannot, allege that Defendant Kroll entered into a mutual understanding with government officials to deprive this specific plaintiff of her civil rights. The complaint against Defendant Kroll should be dismissed.

> 2.   <u>There are no allegations of specific facts to show even infer a meeting of the minds to violate Plaintiff Tirado's constitutional rights.</u>

A conspiracy claim under § 1983 "requires allegations of *specific facts* tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010) (emphasis added) (quoting *Kearse v. Moffett,* 311 F.3d 891,

892 (8th Cir. 2002)). A private party does not conspire with government actors for purposes of § 1983 merely by "invoking an exercise of the state official's authority"—for example, by calling the police. *Young v. Harrison,* 284 F.3d 863, 870 (8th Cir. 2002). Rather, a plaintiff alleging a conspiracy between a private party and a government actor must allege facts that would permit a reasonable jury to find that the two reached an agreement to violate the plaintiff's constitutional rights.

The Plaintiff in *Young* rented a hotel room with friends. After consuming a large amount of alcohol, they returned to the hotel room where they were so disorderly that hotel security called the police. Hotel security ultimately let the police into the plaintiff's room where the police officers used force and allegedly violated plaintiff's civil rights. *See Young*, 284 F.3d 863. The court rejected plaintiff's § 1983 conspiracy claim against the private security guard because merely "invoking an exercise of the state official's authority" (e.g. calling the police) was not an agreement to violate the plaintiff's constitutional rights. *Id.* at 870.

Here, like *Young*, Plaintiff generally alleges that Defendant Kroll conspired with either Defendant Arradondo or members of the police department via an email sent on May 29, 2020. The email speaks for itself and is clearly an attempt by Defendant Kroll, as President of the POFM, to voice concerns related to the ongoing protests and riots. There is no evidence or inference that can be drawn to prove that Defendant Kroll and Chief Arradondo discussed or reached an agreement to violate Plaintiff Tirado's constitutional rights. Despite Plaintiff's self-serving mischaracterization of the email, it

14

lacks even an inkling of a mutual understanding to deprive *anyone*, let alone this particular Plaintiff, of any civil rights. Defendant Kroll's email simply asked the Chief of Police for responses to issues identified by the Union. Even viewing it in the light most favorable to Plaintiff, Defendant Kroll was requesting the police to invoke their authority as law enforcement officers, just as Governor Walz had done earlier in the day. There is no factual allegation to support a conspiratorial agreement to violate Plaintiff's constitutional rights. *See Young*, 284 F.3d at 870 ("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority.").

Similarly, *Lawrence* found that one-way communication is insufficient proof of a conspiracy. 740 F.Supp.2d at 1050 ("alleging that two people had the *opportunity* to conspire—i.e., that they could have met with each other, or called each other, or e-mailed each other—is obviously not sufficient to 'nudge[ ]' a conspiracy claim 'across the line from conceivable to plausible.'") (emphasis in original) (quoting *Twombly*, 550 U.S. at 570). To hold otherwise would create potential § 1983 conspiracy liability for nearly any communication to a government actor: "no conspiracy claim—including the conspiracy claim in *Bell Atlantic Corp. v. Twombly*—could be dismissed for failure to plead 'enough facts to state a claim to relief that is plausible on its face,' *because defendants almost always have the opportunity to communicate*." *Id.* (emphasis added).

Plaintiff's sole allegation is legally insufficient to state a plausible § 1983 conspiracy claim against Defendant Kroll. The email from Defendant Kroll reiterating examples of available law enforcement tactics that had been raised by Governor Walz at

a press conference earlier that day shows no mutual agreement. For example, at a press conference *earlier that morning*, Governor Walz went further than Defendant Kroll when the governor stated: "We cannot have the looting and recklessness that went on. It's time for us to clean our streets" and floated the possibility of imposing martial law. WCCO, May 29, 2020, available at https://minnesota.cbslocal.com/2020/05/29/minneapolis-and-st-paul-are-on-fire-gov-walz-says-order-must-be-restored-as-twin-cities-enters-4th-day-of-george-floyd-unrest/ (last accessed Aug. 19, 2020). When asked if martial law should be considered, Walz responded by saying, "Certainly, all those tools are there." *Id.* Governor Walz called the City's response as "abject failure" and stated that "[i]f [the local response] would have been executed correctly, the state would not lead on this." *Id.* Despite these statements that went further than those of Defendant Kroll, Governor Walz, a public actor, is not named in this lawsuit and that state defendants have been dismissed.

"[C]onclusory allegations are insufficient to state a § 1983 claim." *Id.* Plaintiff can present no evidence that Defendant Kroll acted in concert with the City. There are no specific factual allegations suggesting that Defendant Kroll conspired with the City. *Cf. Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.,* 850 F.2d 876, 880–81 (2d Cir. 1988) (holding that complaint alleged sufficient facts to support conclusion that private-actor PBA had acted under color of state law, where complaint alleged, inter alia, that PBA had hired private investigators and placed plaintiff under surveillance with knowledge and consent of a state-actor, the New York City Police Department). Plaintiff's conclusory allegations of conspiracy ring especially hollow in light of the

documented adversarial relationship between the City and Defendant Kroll in his role as President of the POFM.

Instead, Plaintiff relies solely upon an email Defendant Kroll sent to Chief Arradondo. Defendant Kroll's email speaks for itself and does not contain a demand or even a request that Chief Arradondo violate anyone's constitutional rights. In particular, there is no reference to Plaintiff Tirado. The email concludes by stating "[a]t some point community engagement needs to end and law enforcement needs to take place." The email was *sent* at 9:01 p.m. on May 29, 2020. Plaintiff was injured late in the night of May 29, 2020 or during the very early hours of May 30, 2020. *Compare* Complaint (ECF Doc. No. 1) and Amended Complaint. Defendant Kroll, like many Minnesotans (to inclue Governor Walz), was horrified by the rioting, looting, and destruction of property. In Defendant Kroll's May 29, 2020 email, he simply asked for the restoration of order, as did many people across the state, region, and country. See WCCO, May 29, 2020, available at https://minnesota.cbslocal.com/2020/05/29/minneapolis-and-st-paul-are-on-fire-gov-walz-says-order-must-be-restored-as-twin-cities-enters-4th-day-of-george-floyd-unrest/ (last accessed Aug. 19, 2020). ("We cannot have the looting and recklessness that went on. It's time for us to clean our streets."). In fact, the protests and rioting prompted Gov. Walz to ultimately issue an unprecedented call-out of the entire Minnesota National Guard to end the riots and restore order.

This Court addressed this precise issue when it denied plaintiff's motion to amend her complaint to add a claim of civil conspiracy in *Magee.* Like the generalized

allegations against Defendant Kroll's influence on MPD policy, the plaintiff in *Magee* "allege[d] generally that Titus was able to influence police policy through his position as an officer and president of the SPPF." 957 F.Supp. at 1057. Magee further alleged that Titus conspired with the Saint Paul Police Department ("SPPD"), with a meeting of the minds, to deprive her of constitutionally-guaranteed rights—in particular, that Titus's letter to the editor identified himself as president of the SPPF and that Titus, through the SPPF, declared a boycott against Hamline until it took punitive action against Magee; that the SPPF's boycott resolution urged the SPPD to join the boycott against Hamline and that "[u]pon information and belief Titus was successful in obtaining assistance from police officers or the SPPD to boycott Hamline." *Id.* at 1071.

The court denied Magee's motion to amend her complaint to add the §1983 conspiracy allegation, finding that "Magee has not alleged facts supporting a conspiracy or meeting of the minds between the SPPF and any public actors. The Proposed Amended Complaint contains *no factual allegations of a mutual understanding between the SPPF and the police department* concerning an unlawful objective to violate Magee's constitutional rights." *Id.* (*citing White v. McKinley,* 519 F.3d 806, 816 (8th Cir. 2008) (emphasis added). *Magee* held the allegation that the SPPF boycott was "effectuated by numerous public police officers" was insufficient to render her claim against the SPPF plausible because it failed to "acknowledge the distinction between police officers acting in their official capacity and in their personal lives." *Id.* (*citing Lawrence*, 740 F.Supp.2d at 1046. *Magee* further held that plaintiff's "assertion that Titus acted with sufficient

nexus to his police officer status to act under color of law is a conclusory allegation of law that is not entitled to an assumption of truth." *Id.* (citing *Delgado–O'Neil v. City of Minneapolis,* No. 08–4924, 2010 WL 330322 (D. Minn. Jan. 20, 2010) *aff'd,* 435 Fed. Appx. 582 (8th Cir. 2011)). "Because the SPPF is a private entity not liable under 42 U.S.C. § 1983 and Magee has not alleged facts supporting her conclusory allegation that defendants acted under "color of law" or that the SPPF acted in concert with public officials, Magee's proposed Section 1983 claim against the SPPF could not survive a Rule 12(b)(6) motion to dismiss." *Id.*

The Court's reasoning in *Magee* applies here—the Amended Complaint has not alleged facts supporting Plaintiff Tirado's conclusory allegation that Defendant Kroll acted under "color of law" or that he or the POFM acted in concert with public officials. Plaintiff Tirado has failed to allege *facts* that Defendant Kroll "acted in concert" with the City of Minneapolis or any officer. The general allegation that Defendant Kroll "influenced' Department policy" is inadequate as a matter of law. A single email to Defendant Arradondo is insufficient to prove a civil conspiracy. *Magee*, 747 F.3d at 537 (citing *Mershon v. Beasley,* 994 F.2d 449 (8th Cir. 1993) ("contacts, by themselves and without more" do not allow the inference of "any mutual understanding" in a § 1983 action)).

The email speaks for itself, and its plain language contradicts Plaintiff's allegation that Defendant Kroll "demand[ed] that they loosen what [Defendant Kroll] termed 'restrictions on use of …less lethal' force, and communicated that rank-and-file officers

19

had 'lost faith in [Department] leadership.'" *Id.* To the contrary, Defendant Kroll's email to Defendant Arradondo shows a Union President communicating with the employer about "Several Issues" affecting the workplace. Amended Complaint ¶ 118. There is no offer to conspire or have a meeting of the minds and there is absolutely no request to deprive Plaintiff Tirado of her civil rights. The email merely reiterates issues previously raised by Defendant Arradondo at a press conference. *Id.* If anything, the email demonstrates the adversarial relationship between the City and Defendant Kroll in his role as President of the POFM.

Plaintiff fails to provide evidence or allegations of "a meeting of the minds where both the Department [or its police officers] and [Kroll] jointly agreed to violate [Plaintiff's] constitutional rights." *Magee*, 957 F.Supp.2d at 1058. Like *Magee*, Plaintiff's complaint contains only vague and general legal conclusions that Defendant Kroll conspired to violate Plaintiff's rights. The Court is not bound to accept legal conclusions in a pleading, and Plaintiff cannot overcome a motion to dismiss. *Id.* (citing *Farm Credit Servs. of Am. v. Am. State Bank,* 339 F.3d 764, 767 (8th Cir. 2003) (holding that courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations")); *see also Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001) ("Other than the appellant's bare allegations, the record is devoid of any evidence substantiating a claim of conspiracy"). The record contains no *factual* allegations to support Plaintiff's claim of civil conspiracy against Defendant Kroll. Without additional facts, Plaintiff has not

20

"'nudged [her] claims' of retaliation 'across the line from conceivable to plausible'" and the motion to dismiss should be granted.

### C. Defendant Kroll was not present nor supervising any Minneapolis Police Officers at the time of Plaintiff's alleged injuries

Plaintiff does not and cannot plead that Defendant Kroll inflicted harm upon Plaintiff because he was neither present nor working as a Police Officer at the time of Plaintiff's alleged injuries. Likewise, Plaintiff cannot plead any facts that Defendant Kroll was supervising employees in the discharge of official duties because he was not working as an MPD Lieutenant at the time of Plaintiff's alleged injuries. Because there is no allegation that Defendant Kroll used force against Plaintiffs and because he was not working as an MPD Lieutenant at the time of Plaintiffs' alleged injuries, Plaintiffs cannot plead any facts that Defendant Kroll was supervising employees in the discharge of official duties. The Supreme Court has ruled that defendants "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic." *Iqbal*, 556 U.S. at 683.

As a matter of law, Defendant Kroll cannot be liable for the conduct of a subordinate because "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676 (internal citation omitted) (emphasis in original). "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly

employed by or under him, in the discharge of his official duties" *Id.* (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888)).

As noted previously, Defendant Kroll is a private actor. The Amended Complaint alleges that Defendant Kroll has *"de facto"* control over the Minneapolis Police Department. Plaintiff proffers no factual allegation to support this generalized allegation. This Court has previously held that " unwritten policy must be evaluated under the standards used to analyze the sufficiency of a *Monell* custom claim." *Lollie v. Johnson*, 2015 WL 3407931 (D. Minn. May 27, 2015). The Supreme Court has rejected claims based upon *"de facto policymaker"* allegations. *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ("Nor do we believe that we have left a 'gaping hole'" in § 1983 that needs to be filled with the vague concept of '*de facto* final policymaking authority.' Except perhaps as a step towards overruling *Monell* and adopting the doctrine of *respondeat superior,* ad hoc searches for officials possessing such '*de facto*' authority would serve primarily to foster needless unpredictability in the application of § 1983.) (internal citation omitted). Like *Praprotnik* observed, allowing Plaintiff's claim of *"de facto"* policymaking authority would create needless unpredictability in the application of § 1983. Plaintiff's claims against Defendant Kroll are based in neither law nor fact and should be dismissed.

> 1. <u>No facts have been plead or can be plead to create liability against Defendant Kroll.</u>

Defendant Kroll is not alleged to have done anything beyond performing his duties as the President of the POFM. None of his alleged actions included an explicit or implicit

call for violence against any one or any entity. The remainder of the allegations are towards Defendants and Municipal Defendants. There are no facts pled nor any facts which can be pled to show that Defendant Kroll engaged in any act towards Plaintiff that creates § 1983 liability to Defendant Kroll.  Plaintiff's claims against Defendant Kroll do not go beyond mere averments or conclusory statements. Defendant Kroll's one-way exercise of free speech does not a civil conspiracy make. The Complaint fails to allege any facts that support any claim against Defendant Kroll and it should be dismissed.

Plaintiff named John Does 1-4, in their individual and official capacities, the City of Minneapolis, and Minneapolis Police Chief Medaria Arradondo, in his official capacity, as Defendants in this case. There is no benefit or necessity to name Defendant Kroll, especially considering the absence of any evidence of a conspiracy. The only reason to name Defendant Kroll is to garner attention from the media and/or to harass Defendant Kroll. There is no legal basis for the claims against Defendant Kroll and he should be dismissed from this lawsuit.

## II.    DEFENDANT KROLL'S SPEECH IS PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.

"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled" by the Supreme Court. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). This constitutional safeguard "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Id.* The Supreme Court has expressly held that "debate on public issues should

be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. *Id* at 270-271 (citing *Terminiello v. Chicago*, 337 U.S. 1 (1949) and *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)).

As the President of the POFM, Defendant Kroll is an outspoken advocate for the union and its members. The letter referenced in the Complaint was sent by Defendant Kroll, as POFM President, to POFM members. The letter speaks for itself. Unlike Titus, who advocated for SPPD police officers to boycott Hamline University, Defendant Kroll did not advocate for officers to do anything, and particularly, in the context of this lawsuit, to harm protesters or members of the media. Defendant Kroll simply voiced his support for POFM members in the face of protests and riots following the death of George Floyd—clearly a matter of significant public concern.

As a private citizen and elected President of a Union, Defendant Kroll's speech is highly protected by the First Amendment of the United States Constitution. Speech on matters of public concern is at the heart of the First Amendment's protection. *Snyder v. Phelps*, 562 U.S. 443 (2011). Unions can also speak out on controversial subjects including "climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions." *Janus v. American Federation of State, County, and Mun. Employees, Council 31*, 138 S.Ct. 2448, 2466 (2018). "These are sensitive political topics, and they are undoubtedly matters of profound 'value and concern to the public.' *Id.* (quoting *Snyder*, 562 U.S. at 453). When Unions engage in such speech, it "occupies

the *highest rung of the hierarchy of First Amendment values*" and merits "*special protection*." *Janus*, 138 S.Ct. at 2448 (quoting *Snyder*, 562 U.S. 443, 452 (2011)) (emphasis added).

The first six pages of Plaintiff's Complaint describes in detail the matters of public concern that caused "Ms. Tirado, like many journalists across the country, [to rush] to Minneapolis to cover the civil uprisings." Complaint, p. 4. Law enforcement's actions in response to the violent protests and riots that rocked the Twin Cities and caused an unprecedented activation of the *entire* Minnesota National Guard by the Governor certainly is a matter of public concern.

Accordingly, here, like *Janus*, "the union speech at issue in this case is overwhelmingly of substantial public concern." 138 S.Ct. at 2447. Likewise, Defendant Kroll's commentary about the hard work that the members of POFM engaged in, which went unrecognized by elected officials in the City of Minneapolis, was, and is, of substantial public concern.  Additionally, Defendant Kroll's protected speech referenced in paragraph 41 of the complaint regarded Police Officer use of force incidents and the rise in Police Officers' Post Traumatic Stress Disorder diagnoses in general. Both use of force and PTSD are of substantial public concern.

As such, Defendant Kroll's speech was not on behalf of the City of Minneapolis or the Minneapolis Police Department. "[I]f the union's speech is really the employer's speech, then the employer could dictate what the union says. Unions, we trust, would be appalled by such a suggestion." *Janus*, 138 S.Ct. at 2475.

25

Plaintiff does not allege nor can she reasonably allege that Defendant Kroll's speech falls within one of the extremely narrow exceptions to First Amendment protection such as defamation or incitement to violence. To summarize Plaintiff's claim against Defendant Kroll: she doesn't like him or what he says.  Fortunately, the drafters of the Bill of Rights recognized that disliking an individual does not create a valid cause of action.  The First Amendment was enacted to expressly protect an individual's speech and is designed to preclude lawsuits such as this one. The constitutional protection does not turn upon "the truth, popularity, or social utility of the ideas and beliefs which are offered." *N.A.A.C.P. v. Button*, 371 U.S. 415, 445 (1963). The speech in which Defendant Kroll engaged in, "the advocacy of a politically controversial viewpoint-is the essence of First Amendment expression." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347 (1995) (citing  *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, (1992); *Lovell v. City of Griffin,* 303 U.S. 444 (1938)). Like *McIntyre*, the speech took place during a time with controversial actions by rioters in response to actions of POFM's members which "only strengthens the protection afforded to [Defendant Kroll's] expression: Urgent, important, and effective speech can be no less protected than impotent speech, lest the right to speak be relegated to those instances when it is least needed." *Id.* (citing *Terminiello v. Chicago,* 337 U.S. 1, 4, (1949)).

Even though the Supreme Court has rejected similar lawsuits, Plaintiff asks this Court to create "a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law." *New York Times*, 376 U.S.

at 278 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). "The fear of damage awards under a rule such as that invoked by the [Plaintiff] here may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times,* 376 U.S. at 277 ((citing *City of Chicago v. Tribune Co.,* 139 N.E. 86, 90 (Ill. 1923)).

To allow this case to move forward would have a significant chilling effect on Unions' and its elected union officials to engage in speech on matters of public concern. The ironic outcome is that it would likely be turned against parties like the Plaintiff, as a member of the media. It would decimate the protections of the First Amendment and create a deluge in litigation based solely on the content of a Defendant's speech concerning a matter of clear public concern.  Plaintiff has not cited to any Court that has interpreted 42 U.S.C. § 1983 to create liability based upon the content of a Defendant's speech—especially when that speech is from a union official on a matter of significant public concern.  Such a claim turns the First Amendment upon its head.

The irony that this lawsuit comes from a member of the media and the ACLU, traditional stalwarts of First Amendment protections, against Defendant Kroll based solely upon Defendant Kroll's protected speech cannot be lost. The case against Defendant Kroll should be dismissed.

**CONCLUSION**

Plaintiff's claims against Defendant Kroll do not withstand any level of scrutiny. In order to survive, Plaintiff must prove that 42 U.S.C.  §1983 creates a content-based restriction that will somehow survive an exacting scrutiny analysis.  However, the

Supreme Court has recognized Union speech on matters of public concern receive the highest level of protection. *Janus*, 138 S.Ct. at 2448 (quoting *Snyder*, 562 U.S. at 443).

Plaintiff's allegation against Defendant Kroll is based upon her dislike of, or disagreement with, the content of his speech. To allow such a claim to go forward would destroy the fundamental protections of the First Amendment. The Complaint does not allege that Defendant Kroll was present at the time of Plaintiff's alleged injury nor that he held any role in law enforcement at the time of Plaintiff's alleged injury. Because Plaintiff's claims against Defendant Kroll lack any factual basis, they should be dismissed.

Dated: August 24, 2020

**KELLY & LEMMONS, P.A.**

*/s/ Kevin M. Beck*
Joseph A. Kelly (#389356)
Kevin M. Beck (#389072)
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Minneapolis*
*Police Lieutenant Robert Kroll*