UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Linda Tirado,

                Plaintiffs,

v.

City of Minneapolis; Minneapolis Chief
of Police Medaria Arradondo *in his
official capacity*; Robert Kroll, *in his
individual capacity*; and John Does 1-4,
*in their official and individual capacities*,

                Defendants.

Case No:    20-CV-01338 (JRT/ECW)

**DEFENDANT ROBERT KROLL'S
REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT
PURSUANT TO RULE 12(B)(6)**

## INTRODUCTION AND BACKGROUND

Plaintiff's Amended Complaint should be dismissed because there is no plausible evidence which might be produced, consistent with Plaintiff's theories, to grant the relief demanded. Plaintiff, like many, does not understand how Unions function. Every Police Officer between the rank of Patrol Officer and Lieutenant in the Minneapolis Police Department ("MPD") is a member of the Police Officers' Federation of Minneapolis ("POFM"). (See Kelly Aff. Ex. 1) As the President of POFM, Defendant Robert Kroll's ("Defendant Kroll") responsibility is to engage with POFM members and relay the concerns of the members to MPD leadership. Defendant Kroll, however, is not an MPD policy maker nor does he have any control over discipline proposed or imposed by MPD

1

leadership upon POFM's membership.  The only exception is that, pursuant to Minnesota Statutes Chapter 179A[1] and the Collective Bargaining Agreement[2] between the City of Minneapolis and POFM, POFM may challenge discipline proposed by MPD before a neutral arbitrator who has ultimate authority to uphold, modify, or reverse disciplinary decisions by MPD within the framework of the bargained for Collective Bargaining Agreement.

## ARGUMENT

Plaintiff's Amended Complaint fails to meet the minimum threshold to properly plead a civil conspiracy claim and should be dismissed.  Plaintiff relies upon a theory of *de facto* control/policy making that was expressly rejected by *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), but failed to address the prohibition in her response memorandum opposing dismissal.  Plaintiff's Amended Complaint fails to include any factual allegation to support a meeting of the minds and fails to allege an overt act to further the alleged conspiracy.  Because the Amended Complaint fails to allege plausible facts supporting her civil conspiracy claim the Complaint against Defendant Kroll should be dismissed.

## I.  PLAINTIFF'S COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT HER CLAIM.

---

[1] Minn. Stat. §179A.20, subd. 4: "(a) All contracts must include a grievance procedure providing for compulsory binding arbitration of grievances including all written disciplinary actions. If the parties cannot agree on the grievance procedure, they are subject to the grievance procedure promulgated by the commissioner under section 179A.04, subdivision 3, clause (h). (b) Notwithstanding any home rule charter to the contrary, after the probationary period of employment, any disciplinary action is subject to the grievance procedure and compulsory binding arbitration."

[2] Kelly Aff. Ex. 1, Articles 11 and 12,  pp. 7-13.

Even assuming every *factual* allegation in the complaint as true, Plaintiff failed to properly plead a civil conspiracy and should be dismissed.  To prove a § 1983 conspiracy claim, [the plaintiff] must prove: (1) that the defendants conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured him." *Holmes v.* Slay, 895 F3d 993, 1001 (8th Cir. 2018) quoting *Bonenberger v. St. Louis. Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016).   "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.*  Here, the Plaintiff has "present[ed] no specific material facts, circumstantial or otherwise, that [Kroll and the City of Minneapolis or its Officers] formed an agreement to violate [plaintiff's] constitutional rights." *Reasonover v. City of St. Louis County, Mo.,* 447 F.3d 569, 582 (8th Cir. 2006); see also *Livers v. Schenck*, 700 F.3d 340, 361–62 (8th Cir. 2012) (explaining that mere joint pursuit of a criminal investigation is not enough to constitute an unlawful conspiracy; there must be evidence "of concerted activity toward an unlawful objective" (quotation omitted)).  A conspiracy claim "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).  Plaintiffs "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding[.]'" *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

*A. There was no meeting of the minds regarding Plaintiff or any other member of the media.*

The factual allegations in Plaintiff's Amended Complaint, even if true, do not directly or indirectly suggest a meeting of the minds between any of the alleged co-conspirators. Plaintiff offers only the conclusory allegations that Defendant Kroll conspired with the City, MPD, and/or officers of MPD to vindicate anti-press views by depriving Plaintiff of her rights. (*See* ECF Doc. 33, pp. 37-38.). These allegations, however, amount to no more than a recitation of an element of a conspiracy claim, and, consequently, fail to meet basic pleading requirements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that conclusory allegations are insufficient to withstand Rule 12 motion); *Spencer v. Federal Prison Camp Duluth*, 2016 WL 4942037, at *30 (D. Minn. 2016) (citing to *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988)) ("Conclusory allegations [for a conspiracy claim] do not suffice."); *Murrin v. Fischer*, 2008 WL 540857, at *23 (D. Minn. 2008) (citing to *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)) ("[W]here a plaintiff offers only conclusory allegations of a conspiracy against a party, the claim is adjudged to have been insufficiently pled, and is subject to dismissal.")

Plaintiff's claim against Defendant Kroll is based solely upon Defendant Kroll's statements as the President of POFM.  Plaintiff rests exclusively upon an email sent by Defendant Kroll, as Union President, to the MPD leadership expressing POFM's concerns.  Plaintiff's attempts to portray this email, sent "just hours before Minneapolis

4

Police shot Ms. Tirado," as giving "tactical input" to senior Department officials and advocating for more aggressive use of less-lethal munitions fails. (*See* ECF Doc. 49 p. 43[3].) A plain review of the correspondence contradicts Plaintiff's portrayal of the communication. The email discusses a number of issues, including reiterating topics brought up at a press conference held earlier in the day. *Id*. The only possible "tactical input" is the opinion statement "[a]t some point community engagement needs to end and law enforcement needs to take place." *Id*. Such a statement is, at most, analogous to the jint pursuit of a criminal investigation rejected by *Livers*. Plaintiff's allegation that this was somehow advocating for MPD Officers to violate Plaintiff's rights riots is absurd. Importantly, this "tactical input," does not even provide an inference of a meeting of the minds toward an unlawful objective. Finally, the lack of any act by a co-conspirator in response to the alleged "tactical input" is fatal to Plaintiff's civil conspiracy claim. Because there is no alleged meeting of the minds and the City took no action to further such conspiracy, Plaintiff failed to properly plead a civil conspiracy and the Complaint should be dismissed.

The fact that Kroll's email set forth his opinion of how the situation should be handled is insufficient to show that there was an agreement between Defendant Kroll and a state actor. The mere offering of suggestions does not qualify as a conspiratorial "meeting of the minds." *See Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn.

---

[3] At no point in Defendant Kroll's email to MPD leadership was there any advocacy for "more aggressive use of less-lethal munitions. See KSTP, available at https://kstp.com/news/minneapolis-police-union-blames-failed-leadership-for-riots-violence-june-23-2020/5769384/. ("The officers have lost faith in leadership that appears handcuffed by political power that despises us. That was very evident with numerous examples by several at today's press conference. Examples include no arrests, no mobile booking stations, restrictions on use of gas and less lethal. At some point community engagement needs to end and law enforcement needs to take place.")

2016) (dismissing conspiracy claim alleging that a prosecutor's "advice" led county officials to keep plaintiff detained notwithstanding a court order requiring her release because the allegations did not include "specific facts tending to show a meeting of the minds among the alleged conspirators" and, at most, suggested that the parties "acted in a manner that was consistent with the existence of a conspiracy." ) Again, the complaint does not plead any facts showing that the City Defendants agreed to, complied with, acted upon, or even responded to Kroll's purported tactical "input."

The mere allegation that Kroll holds significant power or influence over officers in the MPD is immaterial to a determination of whether the City Defendants – or more specifically, the John Does – actually agreed to conspire to deprive Plaintiffs or others of their constitutional rights during the recent George Floyd protests. *See Magee v. Trustees of the Hamline University, Minn.*, 957 F.Supp.2d 1047, 1057 (D. Minn. 2013) ("Magee alleges generally that Titus was able to influence police policy through his position as an officer and president of the [St. Paul Police Federation]. That Titus may have been able to influence policy says nothing about whether Titus did so with respect to the present allegations.")(internal citation omitted).

Plaintiffs' conspiracy claim is also erroneously premised on the notion that the City's mere awareness of Kroll's suggestions can be interpreted as having a conspiratorial meaning. In *Manis v. Sterling*, 862 F.2d 679 (8th Cir. 1988), the Eighth Circuit rejected the notion that knowledge of another's purportedly wrongful conduct gives rise to a conspiracy. There, the plaintiff alleged that his attorney conspired with

6

state court judges to delay his post-conviction relief. *Id*. at 681. In support of that claim, the plaintiff alleged the state court judges knew his attorney was not vigorously prosecuting his post-convictions actions yet did nothing to rectify the situation. *Id.* This failed to satisfy the requirement that conspiracy allegations "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Id*. The Eighth Circuit held that the state court judges' purported knowledge of the attorney's dilatory efforts failed to support an inference that the state court judges "had reached any agreement to delay or hinder the adjudication of [plaintiff's] state post-conviction lawsuits." *Id*. Likewise, here, there is a gap too wide to hurdle between allegations of Defendant Kroll's one-sided demands and the speculative assumption that City Defendants agreed to a course of action to deprive members of the press of their constitutional rights.

Additionally, Plaintiff offer no explanation of *how* the City Defendants purportedly acted in concert with Defendant Kroll. Simply put, the Complaint is devoid of any specific, material facts tending to show that the City Defendants in any manner agreed to the "tactical input", let alone an actual plan to deprive the press of their constitutional rights. Plaintiff's allegation that Defendant Kroll reached out to Senator Gazelka with his plan underscores that that he did not receive any willing listeners at the City of Minneapolis. If the City of Minneapolis had agreed to Defendant Kroll's suggestions, it would have been positioned to enact the suggestion itself. That Defendant Kroll went outside the MPD to gain support for his "tactical input" proves that he

received no such support from MPD command staff. Further showing the implausibility of Plaintiff's conspiracy theory, Plaintiff specifically, and extensively, plead a history of disagreement between the City Defendants and Defendant Kroll. That is not surprising given Defendant Kroll's position as President of POFM. Indeed, Plaintiff notes that Defendant Kroll caused the Police Officers Federation to offer to provide and pay for so-called warrior training to MPD officers after that same training had been banned by the City Defendants. This labor discord makes any suggestion of a mutual understanding or conspiracy implausible, and therefore insufficient on the face of the complaint. The Complaint should be dismissed

B. *Allegations of civil rights violations prior to Defendant Kroll's "tactical input" proves the absence of a civil conspiracy.*

Plaintiff's complaint is inconsistent in its application of factual allegations.  For instance, it contains multiple examples of violations of the rights of media occurring *before* Defendant Kroll's May 29 email, but it also alleges that Defendant Kroll's "tactical input"…"just hours before Minneapolis Police shot Ms. Tirado" is evidence of a civil conspiracy. (*See* ECF Doc. 33. ¶118.) The correlation implied in Plaintiff's complaint is not sufficiently supported by facts to render it plausible. This type of conspiracy allegation – that the parties communicated and then something adverse happened to Plaintiff – was found insufficient in *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010). In that case, Lawrence sued her ex-boyfriend, who was a Minneapolis Police Officer, and two St. Paul Police Officers, alleging that they had

conspired to retaliate against her for exercising her First Amendment rights, by towing her car and having her blood-alcohol level tested, after she accused her ex-boyfriend of assaulting her. *Id.* at 1043-44. However, the allegation of conspiracy was found insufficient on the face of the complaint because it only alleged that: 1) the ex-boyfriend and the St. Paul Police Officer had a conversation out of Lawrence's hearing; and 2) after that conversation Lawrence's car was towed and she was brought to the hospital for a blood-alcohol test. *Id.* at 1050.

This Court found *Lawrence* to be analogous to the situation the Supreme Court rejected in *Twombly*. *Id.* at 1050- 51 (citing *Twombly*, 550 U.S. at 556-57). "[A]lleging that two people had the *opportunity* to conspire—i.e., that they could have met with each other, or called each other, or e-mailed each other—is obviously not sufficient to 'nudge[ ]' a conspiracy claim 'across the line from conceivable to plausible.'" *Id.* at 1050 (quoting *Twombly*, 550 U.S. at 570). Nor does it suffice that adverse action against Lawrence followed. Correlation is not causation as noted by the Court: "It is certainly possible that [the St. Paul officers] had Lawrence's car towed and blood tested because they had entered into a conspiracy with [the ex-boyfriend]. But it is also possible that they acted on their own to protect a fellow police officer—or that they had entirely legitimate reasons for their actions." *Id.* at 1051.

Plaintiff's complaint suffers from the same flaw as *Lawrence*. Plaintiff asks this Court to draw the conclusion that a conspiracy exists merely because Plaintiff was injured after Defendant Kroll sent an email. As previously stated, the content of

Defendant Kroll's email mentions nothing about journalists, let alone this particular Plaintiff. Defendant Kroll's email does not advocate for changes in use of less lethal munitions, most importantly, it does not advocate for any unlawful act or purpose. To the contrary, Defendant Kroll's email requests responses to a number of questions and concludes by saying "at some point community engagement needs to end and law enforcement needs to take place."[4]

In alleging proof of the completed conspiracy, Plaintiff argues that MPD and its Officers agreed to act on Kroll's input, specifically citing to paragraphs 86-106 of Plaintiff's complaint. (*See* ECF Doc 49 at p. 44.) However, Plaintiff's claims of the "agreement" to act on Kroll's input is illogical because this alleged agreement took place *before* Kroll's alleged input. The alleged violations cited by Plaintiffs began May 26, 2020. Defendant Kroll's alleged "input" took place several days after the actions by MPD cited by Plaintiffs as evidence of the conspiracy. The same actions cited as evidence of the conspiracy between Defendant Kroll and MPD are the very same actions cited in support of its *Monell* claim against the City of Minneapolis. This inconsistent logic supports dismissal of the claim against Defendant Kroll.

As previously argued by the City of Minneapolis, there was no change in policy. Significantly, there is no alleged change in actions by Defendant City or its Officers after Defendant Kroll sent the email to MPD leadership. Plaintiff claims that "[t]he absence of an official policy change does not make allegations of an illegal conspiracy any less

---

[4] KSTP, available at https://kstp.com/news/minneapolis-police-union-blames-failed-leadership-for-riots-violence-june-23-2020/5769384/

plausible on their face" is incorrect. (*Id.* at 48.)  It does, in fact, make the allegations of an illegal conspiracy implausible. The absence of any action by the City demonstrates the lack of an agreement to conspire.  According to Plaintiff's own Complaint and Memorandum, there was a pattern of targeting media members days *before* Defendant Kroll's email to MPD leadership.  Plaintiff alleges that the targeting of media members *continued* by MPD officers ultimately striking Plaintiff with a 40 mm less lethal round. Plaintiff's Complaint and Memorandum prove that there was no change in MPD behavior after Defendant Kroll's email to MPD Leadership.  The lack of any change by MPD Officers responding to the civil unrest *after* Defendant Kroll's email to MPD leadership defeats Plaintiff's conspiracy claim on its face.  Not only has Plaintiff failed to plead an agreement to act, Defendant failed to plead facts supporting an "an overt act in furtherance of the conspiracy."  *Holmes*, 895 F3d at 1001.  Plaintiff's facts supporting her *Monell* claim, all which took place prior to Defendant Kroll's alleged "tactical input," are the same facts that facially invalidate Plaintiff's civil conspiracy claim.

*C. The Supreme Court rejected liability based upon de facto control and policy making authority.*

Plaintiff's responsive memorandum ignored the Supreme Court's prohibition on *de facto* control liability and, instead, relies on two cases to justify liability based upon *de facto* control over the Department: *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) and *Giron v. City of Alexander*, 693 F.Supp. 2d 904, 942-943 (E.D. Ark. 2010).   Plaintiff's citations are misleading.  Most glaring is Plaintiff's falsifying *Giron*'s holding.  (*See* ECF

Doc. 49 at 46.) *Giron* involved multiple police officers admittedly targeting Hispanic motorists in an effort to cite Hispanic citizens and tow their vehicles. *See Giron*, 693 F.Supp. 2d at 912-932. The City of Alexander received specific complaints regarding Officer Leath's targeting of Hispanics. *Id* at 942-943. The City and Chief of Police ignored those complaints, in part, because the City financially benefited from each car that was towed. *Id.* In fact, the Chief of Police gave Officer Leath complete discretion as to whether a vehicle should be towed. *Id.* at 913. Officer Leath was then promoted by the Chief and put in charge of training, including training on racial profiling *Id* at 933. The Chief considered Leath to be the most knowledgeable officer in the Department and the Court found that the Chief had *delegated day to day control of the Department to Officer Leath*. *Id* at 932. The phrase "*de facto*" shows up just once in the fifty-six page decision, and was not used to find the City liable; rather it was to find the Chief of Police *individually* liable for Officer Leath's actions. *Id* at 942. Notably, the District Court Judge in *Giron* acknowledged that imposing supervisory liability may not be consistent with the then recent decision in *Ashcroft v. Iqbal*. *Id*.

Likewise, Plaintiff's reliance on *Smith v. Bacon*, 699 F.2d 434 (8th Cir. 1983) defeats Plaintiff's own argument. *Bacon* requires that a plaintiff must "at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a *mutual understanding*.'" *Id* 699 F.2d at 436 quoting *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981) (emphasis added.) Plaintiff's complaint here fails to identify the "mutual understanding" of the conspiracy. In her Response memorandum, Plaintiff claims the

understanding is "Kroll's proposed policies would be enacted." (See ECF Doc. 49 at 46.) However, assuming *arguendo*, Defendant Kroll had policymaking authority, creation of a policy does not create a civil conspiracy. More importantly, Plaintiff's complaint is devoid of what "Kroll's proposed policies" actually are. Plaintiff's complaint contains no allegation of any policy proposed by Defendant Kroll or enacted by the City.

Plaintiff cites to previous Minneapolis official's opinions of POFM to support her claim against Defendant Kroll. Ironically, those include former MPD Chief Harteau who, Mayor Hodges said in demanding Harteau's resignation, "I've lost confidence in the chief's ability to lead us further" and that "it is clear that she has lost the confidence of the people of Minneapolis as well."[5] The same former chief, who now claims the POFM had too much influence over the department's culture, attempted to appoint the previous POFM President, John Delmonico, as the 4th Precinct Inspector immediately after his term as POFM President ended.[6] Even considering others opinions of Defendant Kroll, none allege even an inference of policymaking authority let alone a policy or an agreement to violate the civil rights of the Plaintiff or other members of the media. The Complaint should be dismissed.

---

[5] Mitch Smith, *Minneapolis Police Chief Forced Out After Fatal Shooting of Australian Woman,* (July 21, 2017) available at https://www.nytimes.com/2017/07/21/us/minneapolis-police-chief-resigns-days-after-officer-fatally-shot-a-woman.html.

[6] Libor Jany and Karen Zamora, *Minneapolis mayor rejects police chief's choice to lead Fourth Precinct,* (April 27, 2017)
 https://www.startribune.com/minneapolis-police-chief-announces-two-key-leadership-promotions/420519143/

## CONCLUSION

Plaintiff's claim against Defendant Kroll is based upon a tin-foil-hat conspiracy rather than a factual allegation of civil conspiracy. There is not even an inkling of an allegation or an inference of a meeting of the minds. Certainly, there are no facts pled with sufficient specificity to support a claim of a conspiracy between Defendant Kroll and others to violate anyone's rights let alone this Plaintiff's civil rights. Because there are no facts pled in support of a civil conspiracy nor any reasonable inference of a civil conspiracy, the case should be dismissed.

Dated: October 19, 2020

**KELLY & LEMMONS, P.A.**

*/s/ Joseph A. Kelly*
Joseph A. Kelly (#389356)
Kevin M. Beck (#389072)
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Robert Kroll*

14