UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Linda Tirado, | Case No. 20-cv-01338 (JRT-ECW) |
| Plaintiff, | |
| vs. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY DEFENDANTS CITY OF MINNEAPOLIS AND MEDARIA ARRADONDO** |
| City of Minneapolis; Minneapolis Chief of Police, Medaria Arradondo, *in his official capacity*; Robert Kroll, *in his individual capacity*; and Minneapolis Police Department Officers John Does 1-4, *in their official and individual capacities*, | |
| Defendants. | |

_____

Plaintiff will have her day in Court to challenge the John Does' alleged use of force. But Plaintiff's allegations are insufficient to draw the City Defendants into this suit on the basis of a *Monell* or conspiracy claim.

## I. PLAINTIFF'S *MONELL* FAILS AS A MATTER OF LAW

To maintain a custom claim, Plaintiff must plausibly plead a "continuing, widespread, persistent pattern of unconstitutional misconduct" and that the City had notice of the pattern but was deliberately indifferent to or tacitly authorized such conduct. *Ware v. Jackson Cty*, 150 F.3d 873, 880 (8th Cir. 1998). The timeframe for and number of alleged incidents of unlawful conduct each

independently render Plaintiff's *Monell* claim insufficient as a matter of law. So too does Plaintiff's failure to sufficiently plead deliberate indifference.

**A.    There was no "continuing" and "persistent" pattern of unlawful uses of projectiles to which the City was deliberately indifferent.**

    1.    <u>Only incidents before May 30, 2020, can be considered in assessing notice and deliberate indifference.</u>

Plaintiff concedes that post-incident wrongful conduct cannot be used to establish that a defendant was on notice of or deliberately indifferent to an unlawful pattern at the time of a plaintiff's earlier incident. (ECF 49 at 31); *Connick v. Thompson*, 563 U.S. 51, 63 (2011).  Thus, any allegations of unlawful uses of projectiles after Plaintiff's incident at 12:34 a.m. on May 30, 2020, are immaterial to the elements of notice and deliberate indifference.

    2.    <u>The amended complaint is premised exclusively on a two-night period from May 26 to May 27, 2020.</u>

Plaintiff concedes that the 2002 University of Minnesota riot is too remote in time to establish a custom of unlawful conduct.  Thus, the first alleged incident depicting a custom of unlawful conduct against the press arose at 8:00 p.m. on May 26, 2020, (ECF 45 at ¶88) and the last incident before Plaintiff's alleged injury occurred at 11:32 p.m. on May 27, 2020.  (*Id.* at ¶92, n.24.)

3. **Even if the Court considers the allegations from a separate lawsuit, the relevant timeframe for assessing notice and deliberate indifference is limited to May 26-29, 2020.**

Apparently recognizing that the timeframe alleged in her amended complaint is insufficient to constitute a "continuing" and "persistent" pattern, Plaintiff asks the Court to assume additional incidents alleged in *Goyette v. City of Minneapolis, et. al.* in deciding this motion. Citing to two New York cases, Plaintiff contends that courts may consider other cases in determining whether a plaintiff has met their pleading burden on a *Monell* claim. Those cases, however, involve instances where a court took notice of other lawsuits that were explicitly alleged in the plaintiff's complaint. Plaintiff's amended complaint does not contain any allegations referencing the *Goyette* lawsuit (ECF 33). The Court should reject Plaintiff's late attempt to remedy her deficient pleading with that of another.

Even if the Court allows Plaintiff to bolster her *Monell* claim with the unpled *Goyette* lawsuit, the cited allegations only add a handful of incidents similar to Plaintiff's, most of which occur contemporaneous with or after Plaintiff's injury. (ECF 49 at 30 (citing to Second Am. Compl. at ¶¶57-59 (contemporaneous), 68, 73, 87-88, 12-121, 125-128 (after), 84-85 (unrelated).)

4. Plaintiff's reliance on the unpublished *White v. Jackson* does not displace controlling case law requiring a "continuing" and "persistent" pattern to plead a plausible custom claim.

Plaintiff fails to plausibly plead a "continuing" and "persistent pattern of unconstitutional misconduct" by MPD officers. *Ware,* 150 F.3d at 880. Under Eighth Circuit precedent, continuing and persistent means a pattern "so 'permanent and well-settled' as to have the effect and force of law." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff's opposition does not rebut or even take note of *Jane Doe.*

Setting aside the *Goyette* allegations, Plaintiff pleads a two-night period on May 26-27. Plaintiff asks the Court to disregard the fact that her amended complaint does not allege any unlawful uses of projectiles on May 28-29. Plaintiff cites to *Ware v. Jackson*, as holding that a gap of three years between correctional officers' misconduct is not too far apart to render them isolated incidents. 150 F.3d at 881-82. But *Ware* bears no resemblance to the pattern alleged by Plaintiff. In *Ware*, an inmate alleged she was raped in 1993 by a correctional officer whose sexual misconduct "spanned five months". *Id.* at 876. The lawsuit alleged that multiple other correctional officers engaged in multiple incidences of sexual misconduct in 1988, 1989, 1990, and 1993. These allegations stand in stark contrast to Plaintiff's allegation. Plaintiff pleads a "single *pattern* of

misconduct" consisting of an unrepeated five-night period punctuated by two nights of inactivity. (ECF 49 at 31.)

Assuming the *Goyette* allegations, Plaintiff pleads a four-night period from May 26-29. Plaintiff is allegedly injured just after midnight on May 30. Then, there is a two-night period from May 30-31. This alleged time period is neither "continuing" and "persistent" nor "permanent and well-settled."

Plaintiff erroneously relies on *White v. Jackson*, 2015 WL 1189963 (E.D. Mo. Mar. 16, 2015), arguing that the plaintiffs' custom claim survived a motion to dismiss though it was based on a three-day period of civil unrest. Plaintiff reads too much into this unpublished decision.

First, the issues raised by the City on this motion to dismiss were not presented to the *White* court. As the Plaintiff puts it, the City argued that the amended complaint alleged incidents "too concentrated, or too close in time" to Plaintiff's incident to establish a pattern. (ECF 49 at 27.) More specifically, the City argued that the period of time between the 8:00 p.m. incident on May 26 and the 11:32 p.m. incident on May 27 cannot legally satisfy the Eighth Circuit's requirement that a pattern must be "continuing" and "persistent" to be actionable as a custom. And, the same problem exists even if the *Goyette* incidents are considered.

On the motion to dismiss in *White*, however, the defendants did not argue that the allegedly unlawful uses of force were too concentrated or too close in time to the other plaintiffs' incidences and, in fact, did not appear to make any reference to the timing of the events alleged in the plaintiffs' complaint. *See e.g.*, *White*, No. 14-CV-01490, ECF Doc. 24 (Mem. of Law in Supp. Mot. to Dismiss). Without having been presented with those issues, the *White* decision cannot properly be viewed as having issued a substantive decision about the temporal period needed to establish a "continuing" and "persistent" pattern. *Webster v. Fall*, 266 U.S. 507, 511 (1925) (questions not raised or ruled upon cannot constitute precedent).

Second, nearly four years after *White*, the Eastern District of Missouri squarely rejected *White's* premise in the published decision of *Burbridge v. City of St. Louis, Missouri*, 430 F.Supp.3d 595, 620 (E.D. Mo. 2019). In *Burbridge*, documentary filmmakers alleged that officers violated their civil rights as they documented the last night of a weekend-long protest that erupted after an officer was found not guilty of criminal charges related to a fatal shooting. *Id.* at 604. The complaint alleged the existence of an unlawful custom "so pervasive" that it deprived the filmmakers' of the right to be free from excessive force. *Id.* at 619. The court acknowledged that the filmmakers proffered "numerous other incidents" of officers pepper-spraying protestors during the September 15-17

protest.  *Id*.  Nonetheless, the court dismissed plaintiffs' custom claim because multiple incidences of misconduct may establish the existence of a custom only if they "occurred over a course of time sufficiently long enough to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials."  *Id*. at 619-20.  The court held that the three-night weekend was insufficient to establish the existence of a custom.  *Id*.  Contrary to Plaintiff's assertion, this decision did not turn on whether the city had notice of the numerous other incidents.  The court explained, "even if evidence of notice existed, the September 15-17 incidents are simply too close in time to the [plaintiffs'] arrest to show 'deliberate indifference' or 'tacit authorization.'"  *Id*. at 620.

    5.  <u>Plaintiff's attempt to distinguish caselaw on procedural grounds is meritless because Plaintiff concedes her claim is based on a known single period of time.</u>

Plaintiff asks the Court to disregard multiple cases cited by the City because they were resolved on summary judgment.  Plaintiff contends that she only needs to allege enough facts to raise a reasonable expectation that proof will be forthcoming in discovery.  The promise of discovery here is a red herring.

Plaintiff does not contend that she will discover additional incidents of unlawful conduct before May 26 or after May 31.  Plaintiff concedes that her claim is limited to this and only this timeframe.  Plaintiff alleges "a single *pattern*

of misconduct, by a single police department, in response to a single period of civil unrest" from "May 26 and May 31." (ECF 49 at 27, 31.) More specifically, she newly argues that the pattern of misconduct was a "*nightly*" pattern. (*Id.* at 36.)

Given this known period, the question is properly posed to the Court on this motion to dismiss: As a matter of law, can allegations of misconduct on the nights of May 26-29 be considered a "continuing" and "persistent" pattern of unlawful conduct such that the City's alleged failure to remedy the pattern by 12:34 a.m. on May 30, constitutes deliberate indifference and, thus, the moving force behind Plaintiff's alleged injury? The answer is no.

The asserted timeframe is isolated, not "continuing" or "persistent." Other than the unpublished *White* case, Plaintiff does not identify any case that found a continuing and persistent pattern based on a five-night or less period. *Burbridge* rejects such a finding.

Additionally, Plaintiff's misreading of *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) offers no support. In *Pembaur*, deputies were unable to serve legal documents on witnesses to compel their appearance at contempt proceedings because they had sheltered themselves behind the locked door of a clinic. *Id.* at 472-73. Unsure what to do, the deputies contacted the county prosecutors. County prosecutors instructed the deputies to "go in and get [the witnesses]". *Id.*

As authorized, the deputies forcibly entered the door and proceeded to detain the purported witnesses. *Id*. at 473. The clinic owner sued, alleging that the warrantless entry was conducted pursuant to an official policy. *Id*. at 474-75.

The *Pembaur* Court explained that municipal liability only attaches under Section 1983 if unconstitutional conduct occurs pursuant to an official policy. *Id*. at 479. Official policy may arise from unwritten understandings "that are intended to, and do, establish fixed plans of action to be followed under similar circumstances *consistently* and *over time*." *Id*. at 480-81 (emphasis added). Or, official policy may arise "from a course of action tailored to a particular situation and not intended to control decisions in later situations" if the "decision to adopt that particular course of action is properly made by that government's authorized decisionmakers". *Id*. at 481. Because the deputies entered the clinic at the express direction of county prosecutors, final decisionmakers under the circumstances, the plaintiff could proceed with his *Monell* claim based on the tailored course of action. *Id*. at 484-85. The Court identified two other examples of tailored courses of action that could amount to an official policy – both legislative decisions by a city council. *Id*. at 480-81.

Unlike the plaintiff in *Pembaur*, Plaintiff's claim is not based on a tailored course of action adopted by the City's final, authorized decisionmaker. Plaintiff does not allege that Chief Arradondo, or a final authorized decisionmaker,

ordered officers to unlawfully use projectiles against the press. Plaintiff instead asserts that the City was deliberately indifferent because it "failed to correct" unlawful conduct by officers that suddenly arose on the night of May 26 and then ceased entirely on May 31. (ECF 49 at 22.) This does not satisfy *Pembaur's* recognition that, absent express authorization by an authorized, final policy maker, an unwritten understanding must arise from "establish fixed plans of action to be followed under similar circumstances consistently and over time" in order to be actionable. 475 U.S. at 480-81.

**B.     The amended complaint does not plead a "widespread" pattern of unlawful uses of projectiles.**

   1.     <u>Only similar incidents may be used to establish a pattern.</u>

Plaintiff contends that the City's motion unduly constrains her *Monell* claim by describing it as involving a pattern of misuses of projectiles. Plaintiff asserts that her claim is also based on unjustified arrests, retaliatory actions and other types of force. (ECF 49 at 28, n. 21.) But Plaintiff claims no other retaliatory action than being struck with projectiles. In this jurisdiction, a plaintiff cannot prevail "unless there is a municipal policy or custom of failing to act on earlier *similar* complaints of unconstitutional conduct." *Ratliff v. City of Columbia*, 1999 WL 1143752, at *1 (8th Cir. 1999) (emphasis added) (eight earlier unrelated complaints of misconduct were "insufficient as a matter of law to show a

persistent pattern of unconstitutional misconduct"); *Mettler v. Whitledge*, 165 F.3d 1197, 1205-05 (8th Cir. 1999).

2. <u>What Plaintiff describes as an "exercise in counting incidents" is actually adherence to controlling caselaw requiring a "widespread" pattern.</u>

Plaintiff must plead a "widespread" pattern of targeting members of the press with unconstitutional uses of projectiles to maintain her custom claim. Although the Eighth Circuit has not directly addressed the "quantum" of conduct necessary to establish "widespread" conduct, it has "held that isolated incidents do not suffice and that evidence of 'many' incidents does establish liability." *Burbridge*, 430 F.Supp.3d at 620 (citing to *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991); *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987)).

Plaintiff does not plead a "widespread" pattern. In total, even assuming the *Goyette* allegations, Plaintiff identifies only twelve incidences involving projectiles – one of which did not involve a member of the press and five of which occurred on the same day or after Plaintiff's incident.  (ECF 33 at ¶¶88-89) (two incidents on May 26), ¶¶91-92 (three incidents on May 27), ¶¶99-101 (three incidents on May 30); ECF 49 at 30 (citing to Goyette Second Am. Compl. at ¶¶121 (May 28 incident); ¶¶57-58 (May 29 incident); ¶¶68, 125 (two May 30 incidences).)  This sum does not comport with a widespread pattern.  *Mettler*, 165

F.3d at 1204 (fifteen citizen complaints against deputies insufficient to establish an unofficial custom); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018)(citing favorably to *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) as concluding that eleven incidents of police misconduct were insufficient to establish an unconstitutional pattern).

Plaintiff asserts that *Mettler*, *Brewington* and *Pineda* do not set *per se* rules and offer little guidance because they were decided at summary judgment. However, these cases establish that eleven to fifteen prior complaints did not satisfy the "many" threshold set forth by the Eighth Circuit. And, unlike other plaintiffs at the pleading stage that "may not be privy to the facts necessary to accurately describe" a custom, there is little reason to believe that the extent of alleged misconduct against the press is presently unknown. *See Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F.Supp.3d 842, 867 (D. Minn. 2015). According to Plaintiff, social media postings and the Press Freedom Tracker document such complaints. It is hard to imagine any group better equipped to publicize perceived instances of misconduct than the press. Yet with the five collective bites-at-the-apple contained in Plaintiff's amended complaint and *Goyette*'s second amended complaint, only twelve incidences of projectile uses against the press are identified. But for *Sagehorn,* Plaintiff does not identify any case finding a custom claim premised on the number of incidences pled by Plaintiff.

## C.    The City was not deliberately indifferent.

The amended complaint does not plausibly plead that the City was deliberately indifferent to a continuing, widespread, persistent pattern of unlawful uses of projectiles.    Plaintiff's opposition whittles down to a request that the Court infer deliberate indifference because the City allegedly failed to take corrective action fast enough, i.e. before Plaintiff was injured.    Her suggestion is inconsistent with the "rigorous standards of culpability and causation [that] must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan Cty*, 520 U.S. at 405.

Plaintiff asks this Court to conclude that the City was deliberately indifferent because essentially, it delayed taking action.[1]    Yet "[m]ere delay" cannot establish "actionable deliberate indifference."    *Hoekstra By and Through Hoekstra v. Indep. Sch. Dist. No. 283, St. Louis Park, Minn.*, 916 F.Supp. 941, 947 (D. Minn. 1996); *Helseth v. Burch*, 109 F.Supp.2d 1066, 1079 (D. Minn. 2000) (that the city "ultimately responded" to alleged incidents is "not indicative of indifference").    Indeed, Plaintiff does not identify any case that would allow the

---

[1] Plaintiff is not alleging that the City *never* took corrective action, or that discovery will show continued inaction.    As noted in Judge Wright's publicly filed Order Denying Plaintiffs' Motion for a Temporary Restraining Order: "The Minneapolis City Council voluntarily entered into a TRO with the Minnesota Department of Human Rights that accelerates the review of officer conduct and requires the Chief of Police or his designee to expressly authorize any use of crowd-control weapons, such as chemical agents and marking rounds, during protests and demonstrations." *Goyette*, 20-CV-01302, ECF 35 at 10.

Court to infer deliberate indifference based on mere delay in taking corrective action.

In fact, the cases cited by Plaintiff confirm that she failed to plead deliberate indifference. For example, Plaintiff selectively quotes from *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) to suggest that deliberate indifference could be inferred from a "standard operating procedure" of unlawful uses of force. As that decision explains immediately before the portion quoted by Plaintiff, however, culpability for inaction arises "by acquiescence in a *longstanding* practice or custom which constitutes 'standard operating procedure' of the local governmental entity.'" *Id.* at 737 (emphasis added). Plaintiff does not allege acquiescence to a longstanding custom, she alleges that the City did not take corrective action in a matter of a few nights.

Plaintiff cites to *Bd. of Cty Com'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397 (1997) for the proposition that deliberate indifference can be inferred where existing policies did not prevent constitutional violations and a "new program" was called for. But *Bryan County* involved a failure to train claim, not a custom claim. And, even in the context of the training claim, the Court made clear that municipal liability would only attach based on a longer-term showing of constitutional violations stemming from deliberate decision-making. A deficient training program is one "necessarily *intended* to apply *over time* to multiple

employees." *Id.* at 407 (emphasis added). "If a program does not prevent constitutional violations, municipal decisionmakers may *eventually* be put on notice that a new program is called for." *Id.* (emphasis added). This case can hardly be seen as offering support for Plaintiff's assertion that a failure to correct misconduct within a few nights amounts to deliberate indifference.

Likewise, *Connick v. Thompson*, 563 U.S. 51 (2011) offers no support for the Plaintiff's contention. Plaintiff cites to *Connick* for the proposition that deliberate indifference may be based on a "policy of inaction." *Id.* at 61-62. But a failure to correct misconduct within a few nights does not amount to a "policy of inaction." "[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994); *Follis v. Minnesota Atty. Gen.*, 2010 WL 3399674, at *10 (D. Minn. 2010). That the City purportedly failed to correct conduct that sprung up on the evening of May 26 in the midst of massive civil unrest, and went uncorrected until Plaintiff's May 30, 12:34 a.m. incident, less than four nights later, cannot legally be considered permanent and well-settled inaction or laxness.

The two remaining cases cited by Plaintiff direct the same result: only a purported failure to remedy long-term, widespread misconduct amounts to deliberate indifference. *Reynold v. Giuliani*, provides that a custom claim can be satisfied if a local government "does nothing" in the face of a "pattern of

misconduct" but confirms that the pattern must be "sufficiently persistent or widespread as to acquire the force of law." 506 F.3d 183, 192 (2d Cir. 2007). Plaintiff improperly truncates the court's reasoning in *Brown v. City of Ft. Lauderdale,* to remove essential context – it is only a failure to stop a "widespread practice" that is a "permanent and well-settled practice" that may amount to deliberate indifference. 923 F.2d 1474, 1481 (11th Cir. 1991). This is the entire sentence that the Plaintiff abridged: "*In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.*" *Id.* (emphasis added).

Even if the Court accepts Plaintiff's interpretation that the 96-hour period demonstrates a "continuing, widespread, and persistent" pattern, a failure to respond within that limited time cannot fairly be described as deliberate indifference. Plaintiff implores the Court to conduct a "context-specific" analysis and apply "common sense" while assessing the plausibility of the amended complaint. (ECF 49 at 26, 39.) Plaintiff then proceeds to take the utterly illogical stance that the City must have been deliberately indifferent because it otherwise would have "decided what to do about it" during the "unprecedented emergency" that exhausted all of the City's resources. (*Id.* at 39; ECF 33 at ¶14, n. 5 (citing to Executive Order 20-64).) That the City was focused on ending the "[d]estructive and dangerous activity" including looting, arson and "senseless

violence [that] tears at the fabric of our society" does not equate to deliberate indifference to the allegedly wrongful conduct alleged by Plaintiff. (ECF 33 at ¶25, n. 7) (citing to Executive Order 20-65.)

## II. PLAINTIFF'S CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

Plaintiff's amended complaint fails to plausibly plead a conspiracy claim. Plaintiff asserts that the City and Mr. Kroll conspired to crackdown on journalists who covered civil unrest in Minneapolis. This imaginative theory finds no support in reality or Plaintiff's amended complaint.

To begin, Plaintiff failed to plead an agreement between the City and Mr. Kroll. Plaintiff's opposition offers the Court six bullet points purporting to make this showing. The first through fifth bullets reference allegations in the amended complaint that either purport to describe Mr. Kroll's influence or one-sided input to the City, affirmatively plead disagreement between Mr. Kroll and the City, or make no mention of the City at all. (ECF 49 at 44.) None of these paragraphs plead "with particularity and specifically demonstrate with material facts that" the City and Mr. Kroll "reached an agreement." *Bonenberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016).

In the sixth bullet point, Plaintiff states that the "Department and its officers in fact agreed to act on Kroll's input, as evidence[d] by violence against the press" during the protests. (ECF 49 at 44 (citing to ¶¶86-106)). But

paragraphs 86 to 106 of the amended complaint are just the Plaintiff's *Monell* allegations. They make no reference to Mr. Kroll whatsoever. They certainly do not contain any "specific facts tending to show a 'meeting of the minds'" between the City and Mr. Kroll. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Plaintiff improperly asks this Court to infer that, because she alleged that unconstitutional conduct occurred after Mr. Kroll sent an email, the conduct must have resulted from an agreement with Mr. Kroll. But this is insufficient to plead an agreement to violate constitutional rights. *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010) (that defendants communicated and then one defendant took adverse action toward plaintiff is insufficient to plead a conspiracy).

Plaintiff attempts to distinguish *Shimota* and *Magee v. Trustee of Hamline Univ.*, 957 F.Supp.2d 1047 (D. Minn. 2013) on the grounds that Mr. Kroll held influence over officers and the City's reform efforts. But Mr. Kroll's purported influence is a not a cure-all that can fill the chasms in Plaintiff's conspiracy theory. Mutual understanding, not influence, is the crux of an agreement. Plaintiff cites to *Giron v. City of Alexander*, 693 F.Supp.2d 904, 942-43 (E.D. Ark. 2010) because it uses the phrase "de facto control," but it is not a conspiracy claim. As such, it does not disrupt the conclusion in *Boone v. PCL Const. Services, Inc.*, 2005 WL 1843354 (D. Minn. Aug. 2, 2005) that knowledge, or even approval,

of another party's wrongful conduct is insufficient to establish a "meeting of the minds."

Shimota and Magee remain on-point precedent. Regardless of the speaker's level of influence, Shimota provides that the offering of "advice" is not a "specific fact tending to show a meeting of the minds among" alleged conspirators. 2016 WL 1254240 at *10. Likewise, Magee granted a motion to dismiss based on one-sided demands. According to Plaintiff, although the plaintiff in Magee alleged a close relationship between the defendant-union president and the chief of police, her conspiracy claim was dismissed because she "did not also allege any special control over the police department or its policies." (ECF 49 at 45.) This is Plaintiff's own invention. Magee does not suggest in any way that a defendant's so-called special control would suffice to establish a meeting of the minds with an unwilling participant. 957 F.Supp.2d 1047. To the contrary, the Magee opinion makes clear that the existence of even a close, friendly relationship between union and police department leadership only suggests an opportunity to conspire, which is insufficient to plead a conspiracy claim. Id. at 1058. Plaintiff, with an amended complaint that only alleges discord and disagreement between the City and Mr. Kroll, does not plausibly plead a meeting of the minds.

Next, Plaintiff did not sufficiently plead the existence of an agreement designed to deprive the press of their constitutional rights, or to reach any other

unlawful objective. Plaintiff claims Mr. Kroll demanded that the MPD loosen "restrictions" on the use of less-lethal force. The Court should not speculate that Mr. Kroll's request for modification equates to an instruction that officers should unlawfully use projectiles against members of the press, particularly where the referenced statement doesn't even mention the press. Moreover, Plaintiff does not plead any facts showing that Mr. Kroll's input was of consequence. To the contrary, Plaintiff's reference to the *Goyette* lawsuit confirms that the City has, if anything, exerted greater restrictions on the use of projectiles.

For the foregoing reasons, the City respectfully requests that the Court dismiss Count IV and Chief Arradondo entirely from this suit.

Dated: October 19, 2020

JAMES R. ROWADER, JR.
City Attorney
By */s Kristin R. Sarff*
KRISTIN R. SARFF (0388003)
SHARDA ENSLIN (0389370)
HEATHER ROBERTSON (0390470)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-3919
kristin.sarff@minneapolismn.gov
sharda.enslin@minneapolismn.gov
heather.robertson@minneapolismn.gov

*Attorneys for City of Minneapolis and
Medaria Arradondo*