## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linda Tirado,

        Plaintiff,

    v.

City of Minneapolis; Minneapolis Chief of
Police Medaria Arradondo, *in his official
capacity*; Robert Kroll, *in his individual
capacity*; and Minneapolis Police
Department Officers John Does 1-4, *in
their official and individual capacities*,

        Defendants.

Case No. 20-cv-01338 (JRT-ECW)

**ORDER FOR
ESI PROTOCOL**

    This case is before the Court on the Stipulation for ESI Protocol (Dkt. 77). Having considered the Stipulation and for good cause shown, IT IS ORDERED that the following protocol shall govern electronically stored information.

1.    All Parties are bound by and subject to the terms of this Protocol.

2.    <u>Definitions</u>.

    a.    "Discovery Material" is defined as all products of discovery and all information derived therefrom, including, but not limited to, documents, objects and things, , interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party, including third parties, in the above-captioned matter.

    b.    Plaintiff and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

    c.    "Plaintiff" as used herein shall mean Linda Tirado.

d.     "Defendants" as used herein shall mean the City Defendants, Robert Kroll, and Minneapolis Police Department Officers John Does 1-4.

3.     <u>Cooperation</u>.  The Parties shall conduct discovery in a cooperative manner, including, without limitation, by drafting reasonable discovery requests and responses and by meeting and conferring in good faith on topics such as identification of key custodians, potentially relevant data sources, search methodologies, search terms, search refinement, and such other issues as may arise during the course of discovery.

4.     <u>Requests for Production of Documents</u>.  Without waiving any rights under any applicable rules or law, the Parties agree to meet and confer in good faith regarding requests for production seeking ESI, including the number of key custodians, search terms and the time frame for production.  Absent an order from the Court upon a showing of good cause, a Party from whom ESI has been requested shall not be required to search for responsive ESI from sources that are not reasonably accessible without undue burden or cost.

5.     <u>Search/Analysis Methodology</u>.

a.     The Parties may agree to employ one or more search methodologies for the collection and/or analysis of Discovery Material, including, to the extent agreed by the parties, the use of advanced search, retrieval, and analytics technologies, to identify potentially relevant ESI.  The Parties will meet and confer and attempt in good faith to reach agreement regarding considerations relating to search methodology, including but not limited to the below:

i.   The method of searching and, if applicable, the words, terms, and phrases to be searched;

ii.  The identities and numbers of custodians for each side from whom ESI will be collected and searched; and

iii. The locations of data sources for each such custodian from which ESI will be collected and searched.

b.     Once a final search protocol has been agreed to and executed, a Party may, in good faith, seek to expand or narrow the scope of the search.  Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion or limitation.  If the Parties cannot reach agreement, any dispute shall be presented to the Court by motion practice or, if agreed to by the Parties, by informal resolution.

c.     Nothing in this agreement, including any provisions related to the use or non-use of Search Terms or Searching Syntax, shall excuse a party from producing documents (including electronic files) it knows to be responsive.

6.     Deduplication.  The Parties may make reasonable efforts to deduplicate ESI.  ESI may be deduplicated vertically within each custodian or horizontally across custodians.  ESI will be considered duplicative if it has the same content excluding metadata.  For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians.  If attached documents are duplicates but the documents to which they are attached are not, neither they nor the documents to which they were attached will be deduplicated.  The requesting Party may in good faith request additional metadata for particular documents that have been deduplicated.  The producing Party agrees to meet and confer in good faith about what, if any, additional metadata will be produced for those identified documents.

7.     Privilege Logs and Redaction.

a.     Email Thread:  An email thread appearing in a single document or document family may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

b.     Documents That Need Not to Be Logged on Privilege Log. The following documents need not be included on a privilege log:

1.  Privileged documents or documents subject to the work product protection created by counsel, at the instruction of counsel, or after commencement of the action;

2.  Communications solely between trial counsel and its client;

3.  Internal communications within a law firm or within the Minneapolis City Attorney's Office; or

4.  Any documents generated or communications undertaken in compliance with the duty to preserve information for this action.

c.     Dispute Resolution.  After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission of any issue to the Court, the Party disputing a claim of privilege shall provide in writing the identification (by Bates number) of the documents for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged.  Within thirty days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support).  The Parties will then meet and confer in good faith as to the claims of privilege.  If agreement has not been reached after thirty days, any Party may thereafter submit a motion with the Court for a determination as to privilege.

8.     Production Format for ESI.

a.     Default Production.  The default production for video recordings, audio recordings, photographs, Excel spreadsheets and PowerPoint Presentations (which shall include all comments, hidden slides, speakers' notes, and similar data) shall be in native format.  "Native format" means and refers to the format of ESI in which it was generated and/or used by the producing party in the usual course of its business and in its regularly conducted activities.  Upon a showing of good cause, a party may request that photographs that have already been produced prior to the entry of this ESI protocol be re-produced in native format.

b.     Color Copies. Production of photographs or images shall be in color.

c.     General Provisions.  Unless the Parties agree to a different format other than that described in this Section 8, documents originally collected as electronic files will be converted to either PDF format or Group IV *.tiff image files at 300 dpi or greater at the election of the party requesting the production as noted in the discovery requests.  Original document orientation will be maintained (*i.e.*, portrait to portrait and landscape to landscape) except for spreadsheets, which will be produced in accordance with paragraph 8(f), *infra*.  Each .tiff file will be assigned a unique name matching the Bates number of the corresponding page.  Separate folders will not be created for each document.  After such production pursuant to this  is complete, a Party must demonstrate a particularized need for production of electronic documents in any other format, except for those document which are default produced in native format in accordance with paragraph 8(a), *supra*.

d.     With the exception of large files such as body worn camera footage and large PowerPoint presentations with embedded videos, all productions made by either party (whether in .tiff or PDF format) shall have corresponding files in IMAGES/NATIVES/TEXT/DATA folders. All production volumes, including those containing large files such as body worn camera footage and large PowerPoint presentations with embedded videos, should be compressed in .zip files for transmission to the other party.  The .zip files for large files may be in multiple smaller volumes.  Should there be file transfer site size limitations, Sidley Austin's share site can be used to transfer all productions.

e.     Document Text.  If electronic files do not contain text that is redacted in connection with the assertion of a privilege or other protection from disclosure, then the entire document text will be produced as follows: (i) on a document level basis; (ii) named for the beginning Bates number; (iii) in a separate  Text folder with sub-folders so each folder holds 1000 *.txt files; Redacted documents will be

OCR'd and all such OCR text will be Unicode-compliant (UTF-8).  This paragraph shall not be construed to as to require a transcript of video recordings or audio recordings.

       f.    <u>Document Text</u>.  If electronic files do not contain text that is redacted in connection with the assertion of a privilege or other protection from disclosure, then the entire document text will be produced as follows: (i) on a document level basis; (ii) named for the beginning Bates number; (iii) in a separate Text folder with sub-folders so each folder holds 1000 *.txt files; Redacted documents will be OCR'd and all such OCR text will be Unicode-compliant (UTF-8).  This paragraph shall not be construed to as to require a transcript of video recordings or audio recordings.

       g.    <u>Parent-Child Relationships and Embedded Documents</u>. Parent-child relationships (the association between emails and attachments) will be preserved.  Email attachments will be consecutively produced with the parent email record. Embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded.  "Embedded files" shall be construed to mean files kept in the ordinary course of business and shall not include .PNG or .GIF files that appear in footers or signature blocks.

       h.    <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file was processed.

       i.    <u>Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be processed to PDFs or *.tiff  images showing tracked changes and comments. The requesting Party may make reasonable and good faith requests for particular word processing files to be produced in native format.

       j.    <u>Spreadsheet Files</u>.  All spreadsheet files, including without limitation Microsoft Excel files (*.xls and *.xlsx) will be produced in native format, with each file named per the BEGBATES value of the document, with the appropriate extension based upon the original file. Natively produced documents will be accompanied by a *.tiff or PDF image slipsheet indicating that the document was produced natively. The path to the native file will be referenced in the NativeLink field described below.  To the extent a spreadsheet file contains redactions, parties shall produce such files in a manner that displays the contents thereof in a nature both legible and consistent with how such files are displayed in the ordinary course of business.  If such files are incapable of being so produced as *.tiff images or PDF images, such files shall be produced in native format.

k.    <u>Database Records</u>.  To the extent that any Party requests information that is stored in a database or database management system, such information will be produced by querying the database for discoverable information and generating a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party.  The Parties will meet and confer regarding the proper mode of production of any database or database management system.

l.    <u>Non-Standard Files</u>.  Non-standard electronic files, include, but are not limited to, source code, transactional data, database files, and proprietary applications not publicly available.  The Parties agree to meet and confer in good faith and reach an agreement concerning a reasonable production format for such files.

m.    <u>Cellular Phone ESI</u>.  When a request is made through discovery for text messages  or other information which is found in a party's cellular phone, the parties shall meet and confer to a separate and specific protocol for the searching of cell phone data, including the type of data to be retrieved and the search and production methods.

n.    <u>Social Media ESI</u>.  To the extent that applicable metadata (as outlined in the table from paragraph 8(p)) on a party's social media post or account is within the party's possession and control, the party will produce all metadata without applying any privacy or data viewing limitations available from the social media account or platform.

o.    <u>Bates Numbering</u>.  Files will be named according to the Bates number of the corresponding *.tiff image or first page of the PDF or native file.  The Bates number will:

i.    be consistent across the production; and

ii.    be numerically sequential within a given document.

Attachments to documents will be assigned identification numbers that directly follow the identification numbers on the documents to which they were attached. If an identification number or set of identification numbers is skipped, the skipped number or set of numbers will be noted.  In addition, wherever possible, each *.tiff or PDF image will have its assigned identification number electronically "burned" onto the image.

p.    <u>Load File Formats</u>.  ESI will be produced in Concordance load file format.  Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

    q. <u>Metadata to be Produced</u>.  For all documents collected, the following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing. The term "Scanned Collections" refers to all documents that are in hard copy form at the time of their collection.   The term "Email and E-Doc Collections" refers to all documents that are in electronic form at the time of their collection.  Metadata fields shall not be produced for Email Collections and E-Doc Collections where documents within those collections are redacted and when the provision of the corresponding metadata fields to those redactions would be detrimental to the preservation of privileged information.

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| BEGBATES [Key Value] | ABC 000001 | Yes | Yes | First Bates number of email/doc |
| ENDBATES | ABC 000008 | Yes | Yes | Last Bates number of email/doc |
| BEGATTACH | ABC 000009 | Yes | Yes | First Bates number of attachment(s) |
| ENDATTACH | ABC 000015 | Yes | Yes | Last Bates number of attachment(s) |
| CUSTODIAN | John Beech | Yes | Yes | Custodian of the document |
| ALL_CUSTODIAN | | | | All custodians of the document *only if* a Producing Party elects to de-duplicate across custodians |
| FROM | John Beech | N/A | Yes | For email |
| TO | Janice Birch | N/A | Yes | For email |
| CC | Frank Maple | N/A | Yes | For email |
| BCC | John Oakwood | N/A | Yes | For email |
| SUBJECT | Changes to Access Database | N/A | Yes | Subject of the email |
| TITLE | Changes to Access Database | N/A | Yes | Title of the E-Doc |
| DATE_SENT | 10/10/2005 | N/A | Yes | Date the email was sent |
| TIME_SENT | 07:05 PM | N/A | Yes | Time the email was sent |
| FILE_NAME | File.doc | N/A | Yes | File name |
| FILE_EXTEN | MSG(email) DOC (attachment – ex. Word document) | N/A | Yes | The file extension will vary depending if the original document is a parent email or a child attachment or a loose E-Doc |

| AUTHOR | John Beech | N/A | Yes | Attachment or loose E-Doc Metadata; Author of the original native file. |
| DATE_CREATED (C) | 10/08/2005 | N/A | Yes | For attachment or loose E-Doc – in properties. For scanned collections this is the date of document. |
| DATE_MOD (M) | 10/09/2005 | N/A | Yes | For attachment or loose E-Doc – in properties |
| PRINTED DATE | 10/10/2005 | N/A | Yes | Attachment or loose E-Doc metadata. Latest print date for native file. |
| FILE_SIZE | 32604160 | N/A | Yes | Size of file |
| PATH | C:\MYDOCUMENTS\DOEJ | N/A | Yes | Path where attachment or local where local file was stored. |
| FULLTEXT | Fulltext\001\001\ ABC 000001.txt | Yes | Yes | Text of the email or attachment or loose E-Doc |
| NativeLink | Natives\001\001\ ABC 000001.XLS | N/A | Yes | Path where Native file is located on production delivery media |
| REDACTED | Yes | N/A | Yes | If document has been redacted |
| TIME ZONE PRODUCED | Pacific Date Time (PDT-7000) | N/A | Yes | Time zone in which document was produced |

9.      <u>Production Format for Scanned Collection Documents</u>.  Scanned collection documents (those that exist in hard copy form at the time of their collection) will be produced by scanning and OCRing the documents and producing them as follows:

    a.  <u>Photographs</u>

       i.  Photographs should be in color single-page Group IV TIF images or PDFs grouped by document.

      ii.  Files should be named to match the image key plus the *.tiff or PDF extension

    iii.  LZW compression should not be used for any image files.

      v.  There should be no more than 1,000 image files per directory unless necessary to prevent a document splitting across a directory.

    b.  <u>OCR</u>

       i.  OCR should be performed on a document level and provided in document-level text files.  OCR should not be delivered in the data load file or other delimited text file.

      ii.  OCR text files should be named to match the Bates number of the first page of the document to which the OCR text corresponds.

    iii.  A load file containing the first Bates number and the path to the corresponding document-level text file should be provided in the following format: ABC000001, ABC001\OCR\00\00\ ABC000001.txt. (A space exists between the comma and the full path).

    c.  <u>Image/Data Load Files</u>

       i.  An Opticon (*.opt) should be provided.

      ii.  A text file containing the beginning and ending Bates number of each document will be provided with each production.

    iii.  Unless other delimiters are specified, any fielded data provided in a text file should use the Concordance default delimiters or the pipe (|) as the field separator and the caret (^) as the quote character.  The semi-colon (;) should be used as the multi-entry separator.

iv.  Any delimited text file containing fielded data should
     contain in the first line a list of the fields provided in
     the order in which they are provided in the file.

v.  Paragraph 9(c) shall not apply to large files such as
    body worn camera footage and large PowerPoint
    presentations with embedded videos.

10.   Third Parties.  A Party that issues a third party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and request that the third party produce documents in accordance with the specifications set forth herein.  The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties.  No party shall be required to reformat or re-Bates stamp any documents or data produced by a third party in this litigation.  In the event that a third party produces documents without Bates numbers, then the Party who sought discovery from the third party shall produce the reproduction or production with a unique bates number in accordance with Paragraph 8(k) above.  Nothing in this Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

11.   Encryption.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

12.   Prioritized Searching.

a.   Data Sources that are Reasonably Accessible:  The Parties agree that any search for relevant and discoverable documents shall initially involve searching for such documents in data sources within which such documents are likely to be most readily accessible.  All active sources, such as document management and hosted sources, are presumed to be reasonably accessible.

b.   Data Sources that are Not Reasonably Accessible:  Data sources that are not reasonably accessible because of undue burden or cost shall not be searched until the search(es) described in the preceding subparagraph have been completed.  Requests for information expected to be found in data sources identified as not reasonably accessible because of undue burden or cost must be narrowly focused with factual bases supporting them.

13.   Use of Natively Produced Documents:  Should any document produced in native format be printed to a *.tiff image or PDF image to be used at any hearing or deposition, the Bates number and any applicable confidentiality designation shall be placed on each page of the document in *.tiff or PDF format.  Both the Bates

number for the *.tiff image or PDF image will also be placed on the first page of the document for identification purposes.

14.     <u>Non-Waiver</u>.  The mere production of ESI in this litigation will not itself constitute a waiver for any purpose.  Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or data.  All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

15.     <u>Confidential Information</u>.  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Attorneys' Eyes Only under the Protective Order.

16.     <u>Inadvertent Disclosure</u>. Nothing herein shall contradict the Parties' rights and obligations with respect to the inadvertent disclosure of a protected document under the Protective Order.

a.     <u>Preservation of Discoverable Information</u>.  Each Party has an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.  The Parties are not required to modify or suspend, on a going forward basis, the procedures used by them in the ordinary course of business to back up and archive data, including backup media rotation procedures.  The Parties have not taken, and are not required to take any backup tapes out of ordinary rotation.

b.     Absent a showing of good cause by the requesting Party, the categories of ESI identified below need not be preserved.

1. Deleted, slack, fragmented, or other data only accessible by use of computer forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, browser history, file or memory cache, cookies, and other similar data.

4. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network, such as date last opened or printed.

5. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

6. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

7. Logs of calls made from mobile devices, cell phones, smartphones, or blackberries.

8. Operating system files, executable files, server, system or network logs.

17.     <u>This Stipulation and Protocol May Be Modified For Good Cause</u>.  If any formatting requirements or other specifications agreed to in this Protocol are later determined by the producing party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet and confer in order to attempt to agree upon appropriate modifications to the Protocol before presenting any such issue to the Court. If the parties cannot resolve their disagreements regarding modifications, they agree to submit the dispute to the Court in the manner provided by the Federal Rules of Civil Procedure, the local rules of the Court for discovery disputes, and the scheduling order in this case or, if the parties agree to do so, by informal presentation to the Magistrate Judge.

Dated: May 3, 2021                    *s/Elizabeth Cowan Wright*
                                      ELIZABETH COWAN WRIGHT
                                      United States Magistrate Judge