## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linda Tirado,

    Plaintiff,

vs.

City of Minneapolis; Minneapolis Chief
of Police Medaria Arradondo, *in his
official capacity*; Robert Kroll, *in his
individual capacity*; and Minneapolis
Police Department Officers John Does
1-4, *in their official and individual
capacities*,

    Defendants.

Case No. 20-CV-01338 (JRT-JFD)

**PLAINTIFF'S MOTION TO AMEND
SCHEDULING ORDER**

Pursuant to D. Minn. LR 16.3, Plaintiff Linda Tirado respectfully moves to modify the Scheduling Order, ECF No. 96, to allow additional time to complete discovery and to amend the Complaint to add additional parties, *see* Proposed Amended Schedule, *infra*. As explained below, good cause for the proposed modifications exists because Defendant City of Minneapolis has delayed the discovery that Ms. Tirado needs to identify the police officers responsible for shooting her with a 40mm projectile during the May 2020 George Floyd protests.[1]

---

[1] Pursuant to D. Minn. LR 7.1(a)(1), undersigned counsel certifies that counsel for Ms. Tirado met and conferred with counsel for Defendants, and the parties were unable to agree on this motion.

1

I.     **Background & Discovery to Date**

At the height of the May 2020 George Floyd protests, Ms. Tirado was photographing protestors and police when officers of the Minneapolis Police Department shot her in the face with a "less-lethal" 40mm foam bullet. Blinded in one eye, Ms. Tirado subsequently brought this action under 42 U.S.C. § 1983 and Minnesota common law against the defendants she was able to identify at the time—the City itself, Chief of Police Medaria Arradondo, and Robert Kroll (then president of the Police Officers Federation of Minneapolis and a lieutenant in the Minneapolis Police Department). Ms. Tirado also named, as John Does 1-4, the individual officers responsible for shooting her (the "Officer Defendants"). Identifying the Officer Defendants, and naming them in an amended complaint, has been a primary focus of discovery to date.

The parties have to date engaged in substantial written and oral discovery, including an exchange of initial disclosures and multiple rounds of requests for production and interrogatories. In particular, Ms. Tirado's counsel has reviewed close to 15,000 pages of documents and 70 hours of body-worn camera footage produced by the City. Those materials have been used to identify Minneapolis police officers who were present or nearby at or about the time Ms. Tirado was shot. Five such officers have been deposed to date, with at least one more critical deposition—of former officer Tyrone Barze—not yet accomplished. Ms. Tirado

has been unable, however, to amend her complaint to identify the Officer Defendants. Under the current Scheduling Order, her last day to do so is December 3, 2021.

## II.   Good Cause Exists to Extend the Scheduling Order

The Court should extend Ms. Tirado's time to identify and name the Officer Defendants because the City has delayed or failed to produce crucial discovery. As a result, under the current Scheduling Order, Ms. Tirado's time to name additional parties will run out before she can complete the basic discovery needed to make an identification. Two delays in particular establish good cause to modify the Scheduling Order.

**<u>First</u>**, the City was responsible for a substantial delay in scheduling the deposition of Tyrone Barze, a now-former Minneapolis police officer whose body-worn camera captured video of Ms. Tirado moments before she was shot. Mr. Barze was identified in the City's initial disclosures as a City employee who could be contacted through the City's counsel. Based on that representation—which the City never supplemented or otherwise revised—on August 5, 2021, Ms. Tirado's counsel served counsel for the City with a subpoena to Mr. Barze, specifically inquiring whether the City Attorney's office was authorized to accept it on his behalf.

For weeks thereafter, Ms. Tirado's counsel repeatedly inquired as to when Mr. Barze—still believed to be a represented City employee—could be deposed. The City conspicuously failed to notify Ms. Tirado's counsel that this was no longer the case. Just the opposite—counsel referred to Mr. Barze as one of "the officers" to whom she would reach out regarding a deposition. *See* Ex. A. And over the next several weeks, counsel continually represented that she was in the process of scheduling Mr. Barze's deposition—without disclosing that he was no longer a City employee. *See* Ex. B ("I have *not yet been able to confirm* Tyrone Barze's availability . . . ."), Ex. C ("I am *still working on scheduling* the . . . deposition[] for Tyrone Barze . . . ."); Ex. D ("I *do not have availability* for Tyrone Barze . . . right now.") (all emphases added).

It was only on September 29, 2021—*nearly two months* after counsel for Ms. Tirado first served a subpoena for Mr. Barze's deposition—that counsel for the City disclosed two crucial points. First, the City revealed that contrary to its initial disclosures, Mr. Barze was no longer employed by the Minneapolis Police Department. Second, counsel for the City admitted that despite her repeated representations that she was actively engaged in scheduling Mr. Barze's appearance, she in fact *had never actually reached him.* Ex. E ("Mr. Barze [is] no longer [an] employee[] of the Minneapolis Police Departments. Despite my efforts, I have been unable to get in contact with [him] to coordinate [his] deposition[].").

4

Once the City revealed that it did not employ, and could not contact, Mr. Barze, counsel for Ms. Tirado moved to effect service on Mr. Barze itself—a step it could have begun months earlier but for the City's remarkable lack of candor. Before they could do so, however, the City forced an additional delay by demanding that Ms. Tirado serve an additional interrogatory seeking basic contact information for Mr. Barze. *See* Ex. F. That information was finally produced on October 18, 2021. Mr. Barze then proceeded to evade multiple attempts at service over the course of a full month, until a private investigator hired to conduct a stakeout at his workplace was finally able to deliver the subpoena on November 18, 2021. Only days after Mr. Barze was served—following significant delay and at considerable expense to Ms. Tirado—counsel for the City gave notice that she had been retained to represent him.[2]

Mr. Barze's deposition is now scheduled for December 2, 2021—one day before Ms. Tirado's deadline to name the Officer Defendants. In total, the City's failure to correctly disclose Mr. Barze's departure from the Minneapolis Police Department, followed by his attempt to evade service, has delayed the deposition of a crucial witness by more than three months.

---

[2] Ms. Tirado reserves all rights to recover the considerable fees and costs incurred in serving Mr. Barze.

**Second**, the City has for months failed to produce records of which officers present or nearby when Ms. Tirado was injured were carrying—or even *trained* to carry—the type of 40mm less-lethal launcher with which she was shot. Ms. Tirado first requested records of which officers were assigned those weapons, and/or trained to use them, more than a year ago, *see* Ex. G at Requests No. 9 & 20 (Plaintiff's First Requests for Production of Documents to the City Defendants (Oct. 23, 2020)); *see also* Ex. H at Request No. 7 (Plaintiff's Second Requests for Production of Documents to the City Defendants (Aug. 19, 2021)).

The City's position regarding those records has been unclear, but it appears to be either 1) that no such records exist, or 2) that counsel for the City will not state whether they do or not. *See* Ex. I at 2 (Meet & Confer Letter from Plaintiff to City (Nov. 15, 2021)) (summarizing City's shifting position) Discovery to date shows that neither position is remotely tenable.

Witnesses have testified to records that are routinely created when officers are trained on, carry, and use 40mm launchers. *See, e.g.* Ex. J at 46:10-47:13 (Peltz Depo. Trans.) ("You have to go through *qualification through the MPD range* to be issued a 40-millimeter, less-than-lethal launcher."); Ex. K at 57:14-20 (Bennett Depo. Trans) ("As a SWAT member that is issued a 40-millimeter launcher, they are also issued a certain *number of rounds that is inventoried and assigned to you*."), 57:21-59:2 ("[I]f you're to carry a launcher during your SWAT activities, *there would*

6

*be a record of that*."), 62:13-63:3 ("Q: And would there be a record of how many rounds you deployed during your shift? A: [O]n a normal shift, in the 911 patrol function . . . you would have to update your inventory. [And for] [t]he 1280 [SWAT] response, yes, because *you're returning those rounds. So they would have to update the . . . inventory at the end of that deployment*.") (all emphases added).

The parties continue to meet and confer regarding these records, but the City's longstanding refusal to produce them—or even admit their existence—has severely slowed the process of identifying the Officer Defendants. Ms. Tirado does not know when these records will be produced, or if obtaining them will require a motion to compel. And once they *are* produced—whether voluntarily or under compulsion by the Court—additional time will be required, at a minimum, to review them and conduct additional depositions to identify the Officer Defendants.

There is good cause to extend the Scheduling Order to ensure that the City's discovery delinquencies do not irreparably prejudice Ms. Tirado's ability to identify the Officer Defendants and hold them accountable under the law.

## CONCLUSION & PROPOSED AMENDED SCHEDULE

For these reasons, the Court should grant the Motion and amend the Scheduling Order, ECF No. 96, as follows:

## PROPOSED AMENDED SCHEDULE

| Event | Current Date | New Date |
|---|---|---|
| Amend Pleadings to Add Additional Parties or Include Punitive Damages | December 3, 2021 | June 3, 2022 |
| Close of Fact Discovery | January 31, 2022 | July 29, 2022 |
| Settlement Conference | February 16, 2022 | August 16, 2022 |
| Non-Dispositive Motions (Not Relating to Expert Discovery) | February 25, 2022 | August 25, 2022 |
| Rule 35 Medical Exam | March 9, 2022 | September 1, 2022 |
| Identify Experts (Plaintiff) | March 11, 2022 | August 26, 2022 |
| Expert Disclosures (Plaintiff) | March 22, 2022 | September 8, 2022 |
| Identify Experts (Defendants) | May 13, 2022 | October 21, 2022 |
| Expert Disclosures (Defendants) | June 13, 2022 | November 23, 2022 |
| Identify Rebuttal Experts (Plaintiff) | July 14, 2022 | December 8, 2022 |
| Rebuttal Expert Disclosures (Plaintiff) | July 25, 2022 | December 22, 2022 |
| Close of Expert Discovery | August 24, 2022 | January 10, 2023 |
| Non-Dispositive Motions (Relating to Expert Discovery) | September 7, 2022 | February 17, 2023 |

8

| Motions for Summary Judgment | October 28, 2022 | March 28, 2023 |
|---|---|---|
| Trial | January 23, 2023 | May 25, 2023 |

Dated: November 24, 2021          **GREENE ESPEL PLLP**

/s/ John M. Baker
John M. Baker, Reg. No. 0174403
Davida S. McGhee, Reg. No. 0400175
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
jbaker@greeneespel.com
dwilliams@greeneespel.com
nscheiner@greeneespel.com

-and-

Tai-Heng Cheng (admitted pro hac vice)
Gaëlle E. Tribié (admitted pro hac vice)
Cassandra Liu (admitted pro hac vice)
John G. Plotz (admitted pro hac vice)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5661
tcheng@sidley.com
gtribie@sidley.com
cassandra.liu@sidley.com
jplotz@sidley.com

Margaret Hope Allen (admitted pro hac vice)
SIDLEY AUSTIN LLP
2021 McKinney Ave, Ste. 2000

Dallas, TX 75201
(214) 969-3506
margaret.allen@sidley.com

Stacy Horth-Neubert (admitted pro hac vice)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6018
shorthneubert@sidley.com

Gabriel Schonfeld (admitted pro hac vice)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
(202) 736-8483
gschonfeld@sidley.com

*Attorneys for Plaintiff Linda Tirado*