# Exhibit G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Linda Tirado,<br><br>Plaintiff,<br><br>v.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo, *in his official capacity*; Robert Kroll, *in his individual capacity*; and Minneapolis Police Department Officers John Does 1-4, *in their official and individual capacities*,<br><br>Defendants. | Case No. 0:20-cv-01338-JRT-ECW |

## PLAINTIFF LINDA TIRADO'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS BY DEFENDANTS CITY OF MINNEAPOLIS AND CHIEF OF POLICE MEDARIA ARRADONDO

Pursuant to the Federal Rules of Civil Procedure and any and all applicable local civil rules of the United States District Court for the District of Minnesota, plaintiff Linda Tirado ("Tirado") requests that defendants City of Minneapolis and Minneapolis Chief of Police Medaria Arradondo (collectively, "the City") produce and permit the inspection and copying of the Documents described below, in accordance with the definitions and instructions set forth below, at the offices of

1

Sidley Austin LLP, 787 Seventh Avenue, New York, New York, 10019, or at such other place as may be agreed upon, within thirty days from the date of service hereof.

**DEFINITIONS**

1. "Any" or "each" should be understood to include and encompass "all"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or." "And" and "or" shall be construed both conjunctively and disjunctively.

2. The "Area Near Minneapolis's Fifth Precinct" refers to the area near the Minneapolis Police Department Fifth Precinct building located at 3101 Nicollet Avenue, Minneapolis, MN, 55408, and specifically includes the area within the following geographical boundaries: North of 35th Street, East of Lyndale Avenue, South of Lake Street, and West of Interstate 35W.

3. "Arradondo" means Medaria Arradondo, the Minneapolis Chief of Police.

4. "Complaint" means the Amended Complaint filed in this action by Plaintiff Linda Tirado on July 29, 2020, or any later Amended Complaint filed in this action.

5. "Communication" or "Communications" mean and include, but are not limited to, any of the following: (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, text or SMS, voicemail, or any other means; (b) any

2

telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

6. "Defendants" includes the City of Minneapolis, Minneapolis Chief of Police Medaria Arradondo, Minneapolis Police Lieutenant Robert Kroll, and John Does 1-4, as well as any as well as any assigns, agents, representatives, attorneys, employees, officers, directors, affiliates, subsidiaries, persons, or entities acting or purporting to act on their behalf.

7. "Dispersal Order" means a verbal, oral or written command, warning, instruction or demand from a law enforcement agency or officer requesting that individuals vacate a specified area or are not permitted in a specified area.

8. "Document" or "Documents" include, without limitation, any tangible thing upon which any expression, communication, or representation has been recorded by any means including, but not limited to, handwriting, typewriting, printing, transcribing, photostating, photographing, videotaping, magnetic impulse, computer disks, computer storage drives, computer tapes, or mechanical, electronic, or digital recording or information storage of any kind, and any non-identical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including, but not limited to,

working papers, preliminary, intermediate or final drafts, correspondence, memoranda, Electronically Stored Information, electronic mail, charts, notes, texts, MMS or SMS, records of any meetings, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

9. "Electronically Stored Information" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media or ESI otherwise within the meaning of the Federal Rules of Civil Procedure.

10. "George Floyd Protests" means the public protests, demonstrations, and gatherings that occurred from May 26, 2020 through June 3, 2020 in Minneapolis.

11. "Incident" means the event that resulted in Plaintiff Linda Tirado being struck in her left eye by a less-lethal projectile.

12. "Including" means including without limitation.

13. "John Does 1-4" refers to the individual member or members of the Minneapolis Police Department or agents of the City of Minneapolis who were involved in causing the deployment of the less-lethal projectile that struck Tirado in her left eye.

14. "Less-lethal projectiles" or "non-lethal projectiles" includes any and all projectiles, ammunition, guns, weapons or dispensers deployed by the Minneapolis Police Department designed to be less lethal than conventional metal bullets.

15. "May 29 Protests" means the George Floyd Protests occurring on May 29, 2020 and after midnight on May 30, 2020 in Minneapolis, Minnesota.

16. "Members of the Press" means and refers to any person acting as a journalist, reporter, columnist, correspondent, broadcaster, publisher, blogger, vlogger, photographer, or videographer, whether on an independent or freelance basis, or as an employee, independent contractor, or affiliate of a newspaper, magazine, website, blog, social media page, broadcaster, publisher, or other news

5

media outlet, including but not limited to Andy Mannix, Jared Goyette, Max Nesterek, Omar Jimenez, and Plaintiff Linda Tirado.

17. "Minneapolis Police Department" refers to the primary law enforcement agency in Minneapolis, Minnesota, as well as any assigns, agents, representatives, attorneys, employees, officers, directors, affiliates, subsidiaries, divisions, precincts, persons, or entities acting or purporting to act on the behalf of the Minneapolis Police Department.

18. "Previous Press Incidents" means and refers to any instances in which the Use of Force was utilized by You or the any member of the Minneapolis Police Department or John Does 1-4 against any Member of the Press from August 18, 2008 to May 25, 2020, including but not limited to the Use of Force in connection with the 2008 Republican National Convention or related protest activities.

19. "Relating to" and "Concerning" each mean, in addition to their usual and customary meanings, concerning, relating to, discussing, mentioning, evidencing, embodying, constituting, effecting, referring to, assessing, recording, analyzing, describing, evaluating, memorializing, about, regarding, touching upon, listing, or reflecting the matter specified in the request.

20. "Relevant Time Period" means August 18, 2008 through the present.

21. "Tirado" means Linda Tirado, also known as Linda Eaton, the Plaintiff in this action.

22. "Use of Force" means and refers to any use of the following techniques, agents, weapons, or devices by an officer, agent, or employee of the Minneapolis Police Department acting in the course of his or her duties or otherwise under color of law: physical force (including, but not limited to restraint, hand or foot strikes, strikes with a baton, nightstick, or similar weapon, lethal or less-lethal projectiles, or vehicular impact), chemical agents (including, but not limited to, pepper spray, pepper balls, CS gas, or tear gas), or device intended to incapacitate, compel dispersal, or induce compliance through sensory overload, pain, discomfort, or disorientation (including, but not limited to, flash-bang grenades, long-range audio devices, microwave beams, or strobe lights).

23. "You" or "Your" means and refers to the City of Minneapolis, Arradondo, and the Minneapolis Police Department, as well as any successors, predecessors, assigns, agents, representatives, attorneys, employees, officers, directors, affiliates, subsidiaries, persons, or entities acting or purporting to act on any behalf of the City of Minneapolis, Arradondo or the Minneapolis Police Department.

## INSTRUCTIONS

1. Each Document is to be produced (along with all drafts thereof) in its entirety, without abbreviation or expurgation.

2. Separate and complete responses are required for each request.

3. Produce all requested Documents and Communications in Your possession, custody, or control, including those of Your predecessors, successors, assigns, principals, agents, attorneys, accountants, affiliates, directors, officers, consultants, employees, independent contractors, bailees, representatives or other entities under Your common control, and any companies for which You have access to documents or information related to these requests for production, and any other person or entity from whom You can obtain such Documents and Communications by request or which You have a right to bring within Your possession by demand.

4. Unless otherwise stated, the date range for these Requests shall be the Relevant Time Period.

5. These Requests are continuing in nature through the conclusion of this Action and require supplemental or additional responses when you obtain or become aware of any new, further, or additional Documents or Communications responsive to these Requests pursuant to Federal Rule of Civil Procedure 26(e). Responsive documents obtained or discovered after any response to these Requests must be promptly produced.

6. If you withhold any Document or Communication requested herein on the basis of any assertion of privilege or other immunity from discovery, you must comply with the requirements of the Federal Rules of Civil Procedure.

## DOCUMENT PRODUCTION FORMAT

1. For Documents maintained in paper format, the following specifications should be used for production:

    (a) Scanned images should be produced as single-page black-and-white TIF files in group IV format imaged at 300 dpi (or color JPEG).

    (b) Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

    (c) Each production volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

    (d) To the extent that Documents have been run through Optical Character Recognition (OCR) software in the course of reviewing the Documents for production, full text should also be delivered for each Document. Text should be delivered on a Document level and may be included in an appropriately formatted text file (.TXT) that is named to match the first Bates number of the Document.

2. For Documents that originated and are maintained in electronic format ("Electronically Stored Information"), the following specifications should be used for production:

    (a) Documents should be produced in such fashion as to identify the location (*i.e.*, the network file folder, hard drive, backup tape, or other location) where the Documents are stored and, where applicable, the natural person in whose possession they were found, or on whose hardware device they reside or are stored. If the storage location was a file share or work group folder, that should be specified as well.

    (b) Attachments, enclosures, and/or exhibits to any parent Documents should also be produced and proximately referenced to the respective parent Documents containing the attachments, enclosures, and/or exhibits.

9

  (c) For standard Documents, emails, and presentations originating in electronic form, Documents should be produced as TIFF images using the same specifications as set forth above for paper Documents, with a delimited text file (using the delimiters detailed below) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) First Production Number of Parent Email; (vi) First Production Number of Child Attachments; (vii) Custodian; (viii) All Custodians; (ix) From; (x) Recipients; (xi) Copyees (i.e. "cc's"); (xii) Blind Copyees (i.e. "bcc's"); (xiii) Email Subject; (xiv) Title; (xv) Date Sent; (xvi) Time Sent [HH:MM:SS]; (xvii) File Name; (xviii) File Extension; (xix) Author; (xx) Date Created; (xxi) Date Last Modified; (xxii) Date Accessed; (xxiii) Date Printed; (xxiv) File Size; (xxv) Original Location Path; (xxvi) Email Folder Path; (xxvii) Extracted Text (not OCR Text) produced as separate .TXT files; (xxviii) Native Link Path; (xxix) Redaction Applied.

  3. When converting Electronically Stored Information from its native format into its production format: (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate Documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; (f) auto-populated fields shall be replaced with descriptive text for the item. For example, auto-populating "page number" fields shall be replaced with the text "PAGE #," auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "PATH" (or other similar text).

4. Additional special processing of certain Electronically Stored Information will be as follows: Microsoft Excel spreadsheet files will not be converted to TIFF files and will be produced in native format. A placeholder TIFF image will be created, Bates numbered, and the produced Excel file will be renamed to match the Bates number on its corresponding placeholder page. The exception will be for redacted spreadsheets which will be produced in TIFF format as specified above. Images for the redacted spreadsheets will display the content in the same manner as if it were printed. The extractable metadata and text will be provided for native files, and OCR will be provided for the un-redacted portions of the Documents.

5. Documents produced shall be provided with (i) Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production. The database load file shall include a reference to any native files that are produced.

## DOCUMENT REQUESTS

1. Documents and Communications sufficient to identify each of John Does 1-4.

2. Documents and Communications sufficient to identify all officers of the Minneapolis Police Department on duty in the Area Near Minneapolis's Fifth Precinct during the May 29 Protests.

3. Documents and Communications sufficient to identify all vehicles of the Minneapolis Police Department located in the Area Near Minneapolis's Fifth Precinct at any time during the May 29 Protests, as well as which officers were assigned to such vehicles.

4. All Minneapolis Police Department personnel files for any of John Does 1-4.

5. All Documents and Communications relating to any complaints filed with the Internal Affairs Unit of the Minneapolis Police Department in connection with the George Floyd Protests or any Previous Press Incidents.

6. All Documents and Communications related to Minneapolis Civilian Review Authority and Office of Police Conduct Review records in connection with the George Floyd Protests or any Previous Press Incidents.

7. All Documents and Communications relating to any disciplinary proceedings against any Minneapolis Police Department officers, including but not limited to the John Does 1-4, in connection with the George Floyd Protests or any Previous Press Incidents.

8. All Documents and Communications relating to any discussion, decision, command, or instruction by You, the Minneapolis Police Department, the Minnesota Peace Officer Standards and Training (POST) Board, or any Defendant regarding whether or not to conduct any disciplinary proceedings against any Minneapolis Police Department personnel, including but not limited to any of the John Does 1-4, in connection with the George Floyd Protests and any Previous Press Incidents.

9. For the period May 25, 2020 to present, all Documents and Communications regarding the assignment and tracking of any of the following items used by the Minneapolis Police Department during the George Floyd Protests: a) less-lethal or non-lethal projectiles; b) ballistic tracking rounds, foam rounds or bullets, chemical irritants, firearms, weapons, SWAT gear, or combat gear; and c) other equipment, ammunition, weapons or devices.

10. For the period May 25, 2020 to present, all Documents and Communications relating to any Dispersal Order issued during the May 29 Protests.

11. All body worn camera video footage recorded from May 29, 2020 at 10:00 p.m. CDT and May 30, 2020 at 1:00 a.m. CDT by Minneapolis Police Department officers who were on duty at or around the Area Near Minneapolis' Fifth Precinct during that time period.

12. All video records, including police surveillance or building security footage, recorded at any time between May 29, 2020 at 10:00 p.m. CDT and May 30, 2020 at 1:00 a.m. CDT and capturing footage of or around the Area Near Minneapolis's Fifth Precinct, including but not limited to cameras affixed to the awning over the sidewalk and stairs leading to the Minneapolis Police Department Fifth Precinct building's Nicollet Avenue entrance or affixed to the northernmost overhang of the building on the 31st Avenue side.

13. All traffic camera footage recorded at any time between May 29, 2020 at 10:00 p.m. CDT and May 30, 2020 at 1:00 a.m. CDT of or around East 31st Street between Nicollet Ave. and 1st Ave. South, Nicollet Ave. between 31st Ave. and Lake Street, or West 31st Street between Nicollet Ave. and Blaisdell Ave.

14. For the period May 25, 2020 to present, all Documents and Communications, including by not limited to incident reports or incident summaries, relating to any Use of Force during the George Floyd Protests, including but not limited to incident reports or incident summaries involving Members of the Press.

15. For the period May 25, 2020 to present, all Documents and Communications between or among You and any Defendant relating to Tirado.

16. All Documents and Communications between or among You and any Defendants relating to the Use of Force (including but not limited to the use of less-

14

lethal or non-lethal projectiles) against any Members of the Press in connection with public protests, riots, demonstrations or gatherings.

17. All recordings, photographs or videos relating to: a) Tirado; b) any Members of the Press taken during the George Floyd Protests; and c) any Previous Press Incidents.

18. All Documents and Communications relating to any customs, practices, policies or procedures of the Minneapolis Police Department relating to: a) the Use of Force; b) the use of ballistic tracking rounds; c) crowd control (including but not limited to public protests, riots, demonstrations or gatherings); and d) the identification or treatment of any Member of the Press in connection with any of the above.

19. All Documents and Communications relating to any manufacturer recommendations regarding the Minneapolis Police Department's: a) use of less-lethal or non-lethal projectiles (including but not limited to foam rounds or bullets and marking rounds); and b) use of chemical irritants.

20. All Documents and Communications relating to any training programs, courses or education of Minneapolis Police Department officers, employees or officials—including those performed by equipment manufacturers, other third parties, the Minneapolis Police Department, the Minnesota Peace Officer Standards and Training (POST) Board, or other government-related

bodies—that relate to: a) the Use of Force; b) the use of less-lethal or non-lethal projectiles; c) the use of foam rounds or bullets, weapons, firearms, devices, SWAT gear, combat gear chemical irritants; and d) any tactics or methods used for crowd control, public protests, riots or other public demonstrations or gatherings.

Dated:  October 23, 2020       **GREENE ESPEL PLLP**

/s/ John M. Baker
John M. Baker, Reg. No. 0174403
Davida S. McGhee, Reg. No. 0400175
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
(612) 373-0830
jbaker@greeneespel.com
dwilliams@greeneespel.com

-and-

Tai-Heng Cheng (admitted *pro hac vice*)
Gaëlle E. Tribié (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5661
tcheng@sidley.com
gtribie@sidley.com

Margaret Hope Allen (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave, Ste. 2000
Dallas, TX 75201
(214) 969-3506
margaret.allen@sidley.com

Stacy Horth-Neubert (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6018
shorthneubert@sidley.com

Gabriel Schonfeld (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
1501 K Street NW
Washington, DC 20005
(202) 736-8483
gschonfeld@gmail.com

*Attorneys for Plaintiff Linda Tirado*

17