

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 213 896 6018
SHORTHNEUBERT@SIDLEY.COM

February 2, 2021

**By Email**

Kristin Sarff
Assistant City Attorney
Minneapolis City Attorney's Office
350 South 5th Street
City Hall – Room 210
Minneapolis, MN 55415

Re:    *Tirado v. Minneapolis et al. – Meet and Confer Regarding City of Minneapolis and Medaria Arradondo's Answers to Plaintiff's First Set of Interrogatories and First Set of Requests for Production*

Dear Ms. Sarff:

Although we have not completed our discussions regarding a protective order, we nonetheless thought it prudent to begin the meet and confer process with respect to the Defendants City of Minneapolis and Medaria Arradondo's (collectively, "City Defendants") Answers to Plaintiff Linda Tirado's ("Plaintiff" or "Ms. Tirado") First Set of Interrogatories dated November 23, 2020 ("Answers to Interrogatories") and Defendants City of Minneapolis' and Medaria Arradondo's Answers to Plaintiff's First Set of Request for Production of Documents dated November 23, 2020 ("Answers to RFPs"). Pursuant to Minnesota Local Rules 7.1 and 37.1(a), we request a meet and confer to discuss your Answers to Interrogatories and Answers to RFPs. In advance of a meet and confer, set forth below are Plaintiff's preliminary responses to City Defendants' Answers to Interrogatories and Answers to RFPs. Plaintiff reserves the right to supplement her responses and sets forth these responses without waiving any additional objections.

**ISSUES COMMON TO INTERROGATORY AND DOCUMENT REQUEST RESPONSES**

As an initial matter, Plaintiff addresses three erroneous assertions made in City Defendants' Answers to Interrogatories and Answers to RFPs: (i) that Plaintiff has exceeded the permissible number of discovery requests, (ii) that the Minnesota Government Data Practices Act authorizes City Defendants to withhold documents or information responsive to Plaintiff's discovery requests, and (iii) that the definition of John Does 1-4 is limited the single person who pulled the trigger on the weapon that shot the less-lethal projectile that struck Tirado in her left eye.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

### 1) <u>Number of Discovery Requests</u>

Plaintiff disputes City Defendants' assertion that Plaintiff has impermissibly exceeded any limitation of twenty-five interrogatories or twenty-five requests for production.

*Interrogatories.* As of the date of this letter, Plaintiff has only posed ten interrogatories to City Defendants, none of which are "compound" as City Defendants suggest. Indeed, in accordance with Advisory Committee Notes of Federal Rule of Civil Procedure 33, "a question about communications *of a particular type* should be treated as a *single interrogatory*." (emphases added). Moreover, the U.S. District Court for the District of Minnesota ("the District of Minnesota") has found that "interrogatory subparts are to be counted as one interrogatory" where, as here, "they are logically or factually subsumed within and necessarily related to the primary question." *Henschen & Assocs., LLC v. Am. Portfolios Fin. Servs., Inc.*, No. 10-cv-3590 (SRN/JSM), 2012 WL 13027961, at *5 (D. Minn. Apr. 9, 2012) (internal citations omitted). Plaintiff's definition of "Use of Force," for example, is not compound simply because it includes several examples of what constitutes the use of force. Nor is a request compound because answering it will require looking in multiple places to identify the information sought. *See*, *e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 299 (N.D. Cal. 2016) (counting as one interrogatory a request for the defendant to "identify all facts supporting such bases, all documents relating to such facts, and the persons most knowledgeable" because the subparts were "subsumed within the interrogatory as they are logically related its primary topic"). Plaintiff will be forced to file a motion to compel responses to all interrogatories City Defendants continue to refuse to answer on this basis. *See Cardenas v. Dorel Juv. Grp., Inc.*, 231 F.R.D. 616, 623 (D. Kan. 2005) (granting plaintiff's motion to compel responses to plaintiff's interrogatories despite challenge that interrogatories had discrete subparts).

*Document Requests.* Equally specious is City Defendants' claim that Plaintiff's 20 document requests exceed "customary" limitations. First, no such limitation on the number of document requests exists under either the Federal Rules of Civil Procedure or Local Rules, and the District of Minnesota has specifically held that there is no limit on the number of requests for production of documents a party may serve. *See* Fed. R. Civ. P. 34; *Foster v. Litman*, No. 19-cv-260 (JNE/ECW), 2020 WL 39192, at *5 (D. Minn. Jan. 3, 2020) ("[T]here are no set limitations on requests for production of documents."). Second, the Court has not issued any order limiting the number of document requests either party may serve in this action.

For these reasons, City Defendants must answer all interrogatories included in Plaintiff's First Set of Interrogatories dated October 23, 2020 ("Plaintiff's Interrogatories") and all requests for documents included in Plaintiff's First Requests for Production dated October 23, 2020 ("Plaintiff's RFPs").

# SIDLEY

Page 3

### 2) Minnesota Government Data Practices Act

City Defendants erroneously assert that information and documents sought in response to Plaintiff's Interrogatories and Plaintiff's RFPs can be withheld as confidential pursuant to the Minnesota Government Data Practices Act ("MGDPA"). To the contrary, the MGDPA "establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn. Stat. § 13.01; *see also Nat'l Council on Teacher Quality v. Minnesota State Colls. & Univs.*, 837 N.W.2d 314, 319 (Minn. App. 2013) ("The purpose of the act is to facilitate public data accessibility."). Moreover, the MGDPA does not protect against disclosure in the course of a federal action. *See, e.g.*, *Keefe v. City of Minneapolis*, No. 09-cv-2941 (DSD/SER), 2014 WL 1805398, at *2 (D. Minn. May 7, 2014) ("Even if [allegations of employee misconduct] is considered private under the MGDPA, the Act expressly contemplates that otherwise private information may be released in connection with judicial proceedings."); *Ruszczyk ex rel. Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 763 (D. Minn. 2018) ("It is well-settled in this District . . . that the Minnesota Government Data Practices Act yields to civil discovery as governed by the Federal Rules of Civil Procedure."); *Scheffler v. Molin* , No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012) ("It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information. . . . The MGDPA tells Minnesota government authorities what information they must and must not disclose when a request is made under the MGDPA. What it does not do is trump the Federal Rules of Civil Procedure, which define what information is discoverable in a federal lawsuit.").

Furthermore, many categories of documents Plaintiff requests are not even considered confidential under the MGDPA. City Defendants cannot assert confidentiality where there are no grounds to do so.

### 3) John Does 1-4

In her discovery requests, Plaintiff defined "John Does 1-4" as "the individual member or members of the Minneapolis Police Department or agents of the City of Minneapolis who were involved in causing the deployment of the less-lethal projectile that struck Tirado in her left eye." City Defendants object to that definition in part by asserting that "since the First Amended Complaint alleges Plaintiff was struck once in the left eye and, therefore, multiple individuals were not involved in causing her to allegedly be struck." This objection improperly disregards the possibility that persons other than the John Doe who pulled the trigger on the less-lethal weapon that struck Tirado in her left eye may have been involved in the shooting, such as by commanding, instructing, or encouraging the shooter to pull the trigger. City Defendants may not withhold responsive documents or information relating to any such persons of which they are aware.

# SIDLEY

Page 4

## **PLAINTIFF'S SPECIFIC RESPONSES TO THE ANSWERS TO INTERROGATORIES**

**DEFENDANTS' GENERAL OBJECTION NO. 8:** The City Defendants object to Plaintiff's Interrogatories to the extent that they seek information in the possession and/or control of other entities that are not parties to this action.

**PLAINTIFF'S RESPONSE:** Please clarify that City Defendants do not intend to withhold information in their possession, custody or control simply because such information might also be in the possession, custody or control of other persons or entities.

\* \* \*

**DEFENDANTS' GENERAL OBJECTION NO. 10:** City Defendants object to Plaintiff's Interrogatories to the extent they seek confidential information, including but not limited to private personnel data, law enforcement information, and other information protected from disclosure under the Minnesota Government Data Practices Act. The City Defendants will produce appropriate documents and information only subject to a Protective Order.

**PLAINTIFF'S RESPONSE:** There is no applicable protection against disclosure for confidential information, including under the MGDPA, as noted above. Furthermore, whether a document or information is "appropriate" is not a valid basis to withhold production. Accordingly, please confirm that City Defendants will produce, without limitation, any confidential documents and information after the entry of a Protective Order, and will not limit production to only documents and information that City Defendants deem "appropriate."

\* \* \*

**DEFENDANTS' GENERAL OBJECTION NO. 11:** The City Defendants object to Plaintiff's Document Requests to the extent that they are directed to any persons or entities purporting to act on behalf of the City of Minneapolis, Chief Arradondo or the Minneapolis Police Department.

**PLAINTIFF'S RESPONSE:** Please clarify the meaning of City Defendants' General Objection No. 11.

\* \* \*

**PLAINTIFF'S INTERROGATORY NO. 1**: Identify John Does 1-4, including but not limited to their names and titles.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 1**: City Defendants also object to the definition of "John Does 1-4" and this Interrogatory on the grounds that it [sic] premature, particularly to the extent it presumes Plaintiff was struck in

# SIDLEY

Page 5

the eye with a less-lethal projectile by an MPD officer or agent. City Defendants further object to this Interrogatory to the extent it seeks attorney work product or calls for a legal conclusion with respect to causation and whether an individual is an agent of the MPD, and improperly seeks to place the burden of identifying the John Does on the City Defendants. City Defendants additionally object to Plaintiff's definition of "Identify" as . . . seeking private, non-public data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . City Defendants will provide the Plaintiff with relevant body worn camera video footage recorded on the evening of May 29, 2020, and a General Offense Report related to events occurring near the Fifth Precinct on May 29, 2020 to enable the Plaintiff to identify the purported John Does.

   **PLAINTIFF'S RESPONSE**: City Defendants have not stated any objection that would permit them to withhold information in their possession, custody or control regarding the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. If City Defendants know the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to provide that information in response to this interrogatory. The discoverability of such information under Fed. R. Civ. P. 26 is so basic that, even if Ms. Tirado had not specifically requested it, the City Defendants would have a mandatory duty to disclose it under Fed. R. Civ. P. 26(a)(1)(A)(i), as the name of an "individual likely to have discoverable information" the City Defendants "may use to support [their] claims or defenses" and not solely for impeachment. In this District, that makes it discoverable when requested as well. *See Wesman v. United Parcel Serv., Inc.*, No. CV 08-457 (DSD/SRN), 2009 WL 10678317, at \*7 (D. Minn. Apr. 2, 2009). If the General Offense Report will identify by name of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, production of that report is sufficient to satisfy this interrogatory. If it does not, please tell us if City Defendants contend that they do not know the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. Please also tell us if City Defendants contend that Ms. Tirado was not struck in the eye with a less-lethal projectile by an MPD officer or agent. Further, please confirm (1) the time period for which City Defendants will produce body worn camera footage, and (2) that the body worn camera video footage will include the name(s) of the personnel capturing the footage.

*  *  *

**PLAINTIFF'S INTERROGATORY NO. 2**: Identify all training programs, courses or education of Minneapolis Police Department officers, employees or officials—including those performed by equipment manufacturers, other third parties, the Minneapolis Police Department, the Minnesota Peace Officer Standards and Training (POST) Board, or other government-related bodies—that relate to the Use of Force.

# SIDLEY

Page 6

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 2**: City Defendants also object to this Interrogatory as being overly broad, unduly burdensome, and seeking irrelevant information in so far as it seeks information for the time period defined as the so-called "relevant time period" back to August 18, 2008, and, therefore, may include training which the John Does did not receive. City Defendants further object to the Plaintiff's definition of "Identify" as . . . seeking private, non-public personnel data or other data prohibited from disclosure by the MGDPA. City Defendants additionally object to the Interrogatory as being compound and composed of at least sixteen different subparts. . . , each of which count toward the limit of 25 interrogatories under the parties' September 9, 2020 Rule 26(f) Report. . . . [U]pon the entry of Protective Order and Plaintiff's identification of the John Does by name, . . . the City Defendants will produce Minneapolis Police Department training records and materials pertaining to the use of less-lethal projectiles that was provided to the John Doe that Plaintiff identifies by name or badge number as having struck her with a less-lethal projectile.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. Plaintiff further asks that City Defendants confirm whether it is their position that Minneapolis Police Department training records and materials are confidential under the MGDPA. Further, the information sought by Interrogatory No. 2 is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case regardless of whether John Does 1-4 were provided with such training. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Accordingly, Plaintiff reiterates her request that City Defendants identify information that is responsive to Interrogatory No. 2 in its totality.

*       *       *

**PLAINTIFF'S INTERROGATORY NO. 3**: Identify which training programs stated in Interrogatory No. 2 each of the individual Defendants attended.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 3:** City Defendants also object to this Interrogatory as seeking irrelevant information in so far as it seeks training-related information for Defendants that did not use force on Plaintiff. City Defendants also object to this Interrogatory as being overly broad both temporally and substantively. . . . [U]pon the entry of Protective Order and Plaintiff's identification of the John Does by name, . . . the City Defendants will produce training records and materials related to and received by the John Doe that allegedly used a less-lethal projectile with respect to Plaintiff.

**PLAINTIFF'S RESPONSE:** The information sought by Interrogatory No. 3 is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Accordingly, Plaintiff reiterates her request that City Defendants identify information that is responsive to Interrogatory No. 3 in its totality. Further, if the City Defendants are aware of the identity of the

# SIDLEY

Page 7

person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to respond to this interrogatory as to those persons. They may not withhold information in their possession, custody or control until such time that Plaintiff is able to identify such persons.

*       *       *

**PLAINTIFF'S INTERROGATORY NO. 4:** Identify which, if any, members of the Minneapolis Police Department were subject to any disciplinary proceedings in connection with the George Floyd Protests or any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 4:** City Defendants further object to these definitions and Interrogatory as encompassing and seeking information that is overly broad, unduly burdensome, and irrelevant, particularly given that the stated temporal periods occur substantially before and after the Plaintiff's incident, and the May 26 to May 31, 2020, period which Plaintiff alleges to be the relevant period for her custom claim against the City. . . . City Defendants additionally object to this Interrogatory to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . City Defendants will generally identify any disciplinary proceedings relating to the use of less-lethal projectiles against known members of the press between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter regarding the MGDPA not providing a basis to withhold responsive information. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by Interrogatory No. 4 is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See*, *e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of prior reported incidents and to understand how files related to these incidents are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

*       *       *

**PLAINTIFF'S INTERROGATORY NO. 5:** Identify all complaints filed with the Internal Affairs Unit of the Minneapolis Police Department in connection with the George Floyd Protests or any Previous Press Incidents.

# SIDLEY

Page 8

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 5:** City Defendants further object to this Interrogatory to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . City Defendants will produce copies of complaints, if any, made to the Minneapolis Police Department's Internal Affairs Unit relating to the use of less-lethal projectiles against known members of the press between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter regarding the MGDPA not providing a basis to withhold responsive information. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by Interrogatory No. 5 is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See*, *e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of prior reported incidents and to understand how files related to these incidents are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

\*       \*       \*

**PLAINTIFF'S INTERROGATORY NO. 6:** Identify all lawsuits filed by Members of the Press against any Defendant or member of the Minneapolis Police Department.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 6:** City Defendants also object to this Interrogatory as being overly broad and unduly burdensome, particularly given the objectionably overbroad definition of "Member of the Press" provided by Plaintiff. City Defendants also object to this Interrogatory as seeking irrelevant information in so far as it seeks the identification of lawsuits challenging conduct bearing no similarly to Plaintiff's allegation that she was struck by a less-lethal projectile. City Defendants further object to this Interrogatory as requiring the City Defendants to undertake an unreasonable investigation because, as records are kept in the normal course of business, the City does not track lawsuits based on the profession of the plaintiff and the temporal period for this Interrogatory is overly broad, seeking information back to August 2008. City Defendants additionally object to this Interrogatory as seeking information equally within the Plaintiff's possession, particularly to the extent it seeks information relating to lawsuits against Defendants or City employees for events unrelated to their employment, because publicly filed lawsuits are available to Plaintiff.

**PLAINTIFF'S RESPONSE:** As an offer of compromise, Plaintiff is willing to narrow Interrogatory No. 6 to the following: "Identify all lawsuits filed by Members of the Press against

# SIDLEY

Page 9

any Defendant or member of the Minneapolis Police Department which allege use of force against Members of the Press." Plaintiff is also willing to meet and confer to discuss the Minneapolis Police Department's system capabilities, search functions, and how records are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants. Plaintiff is willing to meet and confer regarding the City Defendants' contention that some lawsuits against the Minneapolis Police Department are publicly available to Plaintiff.

*       *       *

**PLAINTIFF'S INTERROGATORY NO. 7**: Identify the processes in place during the Relevant Time Period by which You accounted for, or otherwise tracked, the use of a) less-lethal or non-lethal projectiles; b) ballistic tracking rounds, foam rounds or bullets, chemical irritants, firearms, weapons, SWAT gear, or combat gear; and c) other equipment, ammunition, weapons or devices.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 7:** City Defendants also object to this Interrogatory as being unduly burdensome, overly broad, and seeking irrelevant information, particularly to the extent it seeks information with respect to equipment and munitions that are not alleged to have been involved in Plaintiff's incident and for a time period unrelated to Plaintiff's incident or the custom alleged to exist by Plaintiff. City Defendants also object to this Interrogatory as being compound and consisting of at least eleven subparts . . . . City Defendants will produce documents related to the process of tracking less-projectiles [sic] between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter regarding the number of requests propounded. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. The information sought by Interrogatory No. 7 is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Furthermore, information related to ballistic tracking rounds is directly related to the Incident, as Plaintiff alleges that she was marked with one on May 29, 2020. *See* Am. Compl. ¶¶ 1, 49, 50. Nonetheless, Plaintiff is willing to meet and confer regarding the scope of this Request so that the parties might be able to address any alleged undue burden on City Defendants.

*       *       *

**PLAINTIFF'S INTERROGATORY NO. 8**: For the period of May 25, 2020 to present, identify all meetings relating to the George Floyd Protests held by You and/or attended by any members of the Minneapolis Police Department, and describe the substance of what was discussed during those meetings.

# SIDLEY

Page 10

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 8:** City Defendants also object to this Interrogatory as being overly broad and unduly burdensome, particularly to the extent it seeks a narrative response and seeks information relating to meetings that did not involve Chief Arradondo and for which the City Defendants have no notice. . . . City Defendants will not provide responsive information unless and until the Court issues an order permitting discovery in excess of the customary and regularly enforce practice limiting discovery to 25 interrogatories.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter regarding the number of requests propounded. Further, City Defendants erroneously object to providing a "narrative response" to an interrogatory. Under Rule 34 of the Federal Rules of Civil Procedure, an interrogatory may be answered "fully in writing" – i.e., with a narrative response – or by production of business records from which the answer may be derived. F.R.C.P. 34(b)(3) & (d). City Defendants are free to do either but may not refuse to answer simply because the interrogatory seeks a narrative response. In addition, we do not understand your objection that the interrogatory calls for information regarding "meetings that did not involve Chief Arradondo and for which the City Defendants have no notice." If City Defendants are asserting that information relating to meetings attended by the Minneapolis Police Department relating to the George Floyd Protests is not in their possession, custody or control, please explain how that is possible.

\*     \*     \*

**PLAINTIFF'S INTERROGATORY NO. 9:** For the period May 25, 2020 to present, identify all meetings held between or among You and Defendants relating to Tirado.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 9:** City Defendants incorporate all of their objections identified in answer to Interrogatory Number 8. . . . City Defendants will not provide responsive information unless and until the Court issues an order permitting discovery in excess of the customary and regulatory enforced practice limiting discovery to 25 interrogatories.

**PLAINTIFF'S RESPONSE**: See Plaintiff's response regarding Interrogatory No. 8.

\*     \*     \*

**PLAINTIFF'S INTERROGATORY NO. 10**: Identify all individual Minneapolis Police Department personnel who responded in person to incidents at or around East 31st Street between Nicollet Ave. and 1st Ave. South, Nicollet Ave. between 31st Ave. and Lake Street, or West 31st Street between Nicollet Ave., and Blaisdell Ave, in the City of Minneapolis between May 29, 2020 at 10:00 pm CDT and May 30, 2020 at 1:00 am CDT.

# SIDLEY

Page 11

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO INTERROGATORY NO. 10:** City Defendants object to this Interrogatory to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Practice Act. City Defendants also object to this Interrogatory to the extent it is temporally overly broad, seeking information relating to personnel after the time Plaintiff alleges she was injured. City Defendants further object to this Interrogatory as being in excess of 25 Interrogatories.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. In addition, City Defendants' overbreadth objection is not well taken. The time period specified in Interrogatory No. 10 is only three hours and seeks to capture the time period directly before and after the Incident to ensure that all relevant and responsive information is captured. Moreover, City Defendants' overbreadth objection is wholly inconsistent with its position (which Plaintiff also disputes) that Plaintiff is required to identify the John Does, which would be impossible to do without the requested information.

## PLAINTIFF'S SPECIFIC RESPONSES TO THE ANSWERS TO REQUESTS FOR PRODUCTION

**DEFENDANTS' GENERAL OBJECTION NO. 8:** The City Defendants object to Plaintiff's Document Requests to the extent that they seek information in the possession and/or control of other parties, parties that have not been served in this matter, and entities that are not parties to this lawsuit, including, but not limited to, Robert Kroll, John Does, and Minnesota National Guard, and Minnesota State Patrol.

**PLAINTIFF'S RESPONSE:** Please clarify that City Defendants do not intend to withhold documents in their possession, custody or control simply because such documents might also be in the possession, custody or control of other persons or entities.

\*       \*       \*

**DEFENDANTS' GENERAL OBJECTION NO. 10:** The City Defendants object to Plaintiff's Document Requests to the extent they seek confidential information, including but not limited to, private personnel data, law enforcement information, and other private, non-public data. The City Defendants will produce relevant, non-privileged documents pursuant to the terms of a Protective Order.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive information. Further, there is no basis to withhold responsive documents merely because they are confidential. Nor are City Defendants permitted to limit their production to documents they deem to be "relevant." At a minimum, City Defendants are required to object to a particular Request for Production on the basis of relevance to permit Plaintiff to understand if responsive documents are being withheld

# SIDLEY

Page 12

on the basis of such objection. Please confirm that unless otherwise indicated in the objections to a particular Request for Production, City Defendants will not withhold on the basis of relevance any documents that are responsive to Plaintiff's requests.

*     *     *

**DEFENDANTS' GENERAL OBJECTION NO. 11**: The City Defendants object to Plaintiff's Document Requests to the extent that they are directed to any persons or entities purporting to act on behalf of the City of Minneapolis, Chief Arradondo or the Minneapolis Police Department.

**PLAINTIFF'S RESPONSE:** Please clarify the meaning of City Defendants' General Objection No. 11. In particular, please clarify who, if anyone, might be acting on behalf of City Defendants or the Minneapolis Police Department but would be excluded from City Defendants' search for responsive documents. Alternatively, please clarify whose files you do intend to search for responsive documents.

*     *     *

**PLAINTIFF'S DOCUMENT REQUEST NO. 1:** Documents and Communications sufficient to identify each of John Does 1-4.

**RELEVANT EXCERPT OF CITY DEFENDANTS' ANSWER TO DOCUMENT REQUEST NO. 1:** City Defendants also object to the definition of "John Does 1-4" and this Document Request on the grounds that it premature, particularly to the extent it presumes Plaintiff was struck in the eye with a less-lethal projectile by an MPD officer or agent. City Defendants further object to this Document Request to the extent it . . . improperly seeks to place the burden of identifying the John Does on the City Defendants. City Defendants additionally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a Protective Order, the City Defendants will provide Plaintiff with relevant body worn camera video footage recorded on the evening of May 29, 2020, and a General Offense Report related to events occurring where Plaintiff claims to have been injured on May 29, 2020.

**PLAINTIFF'S RESPONSE:** City Defendants have not stated any objection that would permit them to withhold documents and communications in their possession, custody or control regarding the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. If City Defendants have documents or communications sufficient to identify the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to produce that information in response to this Request. If the General Offense Report will identify by name the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, production of that report is sufficient to satisfy

# SIDLEY

Page 13

this request. If they do not, please tell us if City Defendants contend that they do not know or have no documents that state the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. Please also tell us if City Defendants contend that Ms. Tirado was not struck in the eye with a less-lethal projectile by an MPD officer or agent. Further, please confirm (1) the time period for which City Defendants will produce body worn camera footage, and (2) that the body worn camera video footage will include the name(s) of the personnel capturing the footage.

*     *     *

**PLAINTIFF'S DOCUMENT REQUEST NO. 2**: Documents and Communications sufficient to identify all officers of Minneapolis Police Department on duty in the Area Near Minneapolis's Fifth Precinct during the May 29 Protests.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 2:** City Defendants object to Plaintiff's two-day period definition of "May 29 Protests" and the use of this term in the Document Request as being overly broad, unduly burdensome, seeking disproportionate discovery, and seeking irrelevant information unrelated to the time of Plaintiff's alleged injury, both before and after her alleged injury. City Defendants also object to the definition of "Area Near Minneapolis's Fifth Precinct" and this Document Request as being geographically over broad, unduly burdensome and seeking irrelevant information unrelated to the location where Plaintiff was allegedly injured. . . . City Defendants additionally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. [U]pon the entry of a Protective Order, City Defendants will produce document(s) sufficient to identify the officers that were on duty for the Fifth Precinct on May 29, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. Nonetheless, Plaintiff agrees to City Defendants' proposal to narrow the time period for this Request to May 29, 2020. Further, please confirm that your offer to produce document(s) sufficient to identify the officers that were on duty for the Fifth Precinct includes all officers who were on duty in the Area Near Minneapolis's Fifth Precinct.

*     *     *

**PLAINTIFF'S DOCUMENT REQUEST NO. 3:** Documents and Communications sufficient to identify all vehicles of the Minneapolis Police Department located in the Area Near Minneapolis's Fifth Precinct at any time during the May 29 Protests, as well as which officers were assigned to such vehicles.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 3:** City Defendants further object to this Document Request as being compound

# SIDLEY

Page 14

and composed of two different Document Requests. . . . City Defendants additionally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a Protective Order, City Defendants will provide the Plaintiff with a General Offense Report and Incident Detail Report related to events occurring near the Fifth Precinct on May 29, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. Nonetheless, Plaintiff agrees to City Defendants' proposal to narrow the time period for this Request to May 29, 2020. Please confirm whether the General Offense Report and Incident Detail Report will identify all police vehicles in the Area Near Minneapolis's Fifth Precinct.

*        *        *

**PLAINTIFF'S DOCUMENT REQUEST NO. 4:** All Minneapolis Police Department personnel files for any of John Does 1-4.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 4:** City Defendants incorporate their objections to the definition of "John Does 1-4" . . . . City Defendants also object to this Document Request to the extent it improperly seeks to place the burden of identifying the John Does on the City Defendants, and calls for attorney work product. City Defendants further object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. Subject to and without waiving these objections and the foregoing General Objections, and without conceding that Plaintiff was struck in the eye with a less-lethal projectile by an MPD officer, City Defendants will produce the personnel files of the John Does once identified by name by the Plaintiff and upon the entry of a Protective Order.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. City Defendants have not stated any objection that would permit them to withhold documents and communications in their possession, custody or control regarding the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. If City Defendants know the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to produce the personnel files for such persons. If they do not, please tell us if City Defendants contend that they do not know the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye.

*        *        *

# SIDLEY

Page 15

**PLAINTIFF'S DOCUMENT REQUEST NO. 5:** All Documents and Communications relating to any complaints filed with the Internal Affairs Unit of the Minneapolis Police Department in connection with the George Floyd Protests or any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 5:** City Defendants object to these definitions and this Document Request as encompassing and seeking information that is overly broad, unduly burdensome, and irrelevant particularly given that the stated temporal periods occur substantially before and after the Plaintiff's incident, and substantially before and after the May 26 to May 31, 2020, period which Plaintiff alleges to be the relevant period for her custom claim against the City. . . . Moreover, City Defendants object to this Document Request as being unduly burdensome and requiring the City to undertake an unreasonable investigation because, as records are kept in the normal course of business, it would not be readily identifiable whether the complainant was a member of the press, particularly given the objectionably overbroad definition of "Member of the Press" provided by Plaintiff. . . . City Defendants finally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon entry of a Protective Order, City Defendants will produce copies of complaints, if any, made to the Minneapolis Police Department's Internal Affairs Unit relating to the use of less-lethal projectiles against known members of the press between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by the Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of prior reported incidents and to understand how files related these incidents are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

\*        \*        \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 6:** All Documents and Communications related to Minneapolis Civilian Review Authority and Office of Police Conduct Review records in connection with the George Floyd Protests or any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 6:** City Defendants incorporate all of the objections set forth in Response to

# SIDLEY

Page 16

Document Request Number 5. Subject to and without waiving those objections and the foregoing General Objections, and upon entry of a Protective Order, City Defendants will produce copies of complaints, if any, made to the Office of Police Conduct Review relating to the use of less-lethal projectiles against known members of the press between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by the Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of Office of Police Conduct Review records and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

*     *     *

**PLAINTIFF'S DOCUMENT REQUEST NO. 7:** All Documents and Communications relating to any disciplinary proceedings against any Minneapolis Police Department officers, including but not limited to the John Does 1-4, in connection with the George Floyd Protests or any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 7:** City Defendants also object to this Document Request as being overly broad and unduly burdensome in so far as it seeks "all" documents and communication relating to any disciplinary hearings referenced . . . . City Defendants finally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a protective order, City Defendants will produce documents related to any disciplinary proceedings involving allegations of improper uses of less-lethal projectiles against known members of the press between May 26 and May 31, 2020, and documents related to any disciplinary proceedings against the John Doe who allegedly struck Plaintiff with a less-lethal projectile, once identified by name by the Plaintiff, to the extent they relate to incidents occurring between May 26 and May 31, 2020, incidents involving known members of the press, or incidents using less-lethal projectiles.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26

# SIDLEY

Page 17

to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Furthermore, City Defendants have not stated any objection that would permit them to withhold documents and communications in their possession, custody or control regarding the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. If City Defendants know the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to produce the requested documents related to such persons. If they do not, please tell us if City Defendants contend that they do not know the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of responsive documents and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

\*     \*     \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 8**: All Documents and Communications relating to any discussion, decision, command or instruction by You, the Minneapolis Police Department, the Minnesota Peace Officer Standards and Training (POST) Board, or any Defendant regarding whether or not to conduct any disciplinary proceedings against any Minneapolis Police Department personnel, including but not limited to any of the John Does 1-4, in connection with the George Floyd Protests and any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 8**: City Defendants also object to this Document Request as being overly broad and unduly burdensome with respect to the breadth of the definition of "You" and in so far as it seeks "all" documents and communications relating to any "discussion, decision, command, or instruction." . . . City Defendants finally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a Protective Order, City Defendants will produce documents related to any disciplinary proceedings involving allegations of improper uses of less-lethal projectiles against known members of the press between May 26 and May 31, 2020, and against the John Doe who allegedly struck Plaintiff with a less-lethal projectile, once identified by name by the Plaintiff. . . .

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point discussed above that the MGDPA does not provide a basis to withhold responsive documents. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to

# SIDLEY

Page 18

May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Furthermore, if City Defendants know the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to produce the requested documents related to such persons. If they do not, please tell us if City Defendants contend that they do not know the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of responsive documents and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

\*       \*       \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 9**: For the period May 25, 2020 to present, all Documents and Communications regarding the assignment and tracking of any of the following items used by the Minneapolis Police Department during the George Floyd Protests: a) less-lethal or non-lethal projectiles; b) ballistic tracking rounds, foam rounds or bullets, chemical irritants, firearms, weapons, SWAT gear, or combat gear; and c) other equipment, ammunition, weapons or devices.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 9:** City Defendants object to this Document [Request] as being unduly burdensome, overly broad, and seeking irrelevant information, particularly to the extent it seeks information with respect to equipment and munitions that are not alleged to have been involved in Plaintiff's incident and for a time period unrelated to Plaintiff's incident or the custom alleged to exist by Plaintiff. City Defendants also object to this Document Request as being compound and consisting of at least twelve document requests . . . . City Defendants additionally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. [U]pon entry of a protective order, City Defendants will produce documents related to the assignment and tracking of less-lethal projectiles between May 26 and May 31, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles against known members of the press." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The

# SIDLEY

Page 19

information sought by this Document Request is to determine, among other information, the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Furthermore, information related to ballistic tracking rounds is directly related to Plaintiff's incident, as Plaintiff alleges that she was marked with one on May 29, 2020. *See* Am. Compl. ¶¶ 1, 49, 50. Nonetheless, Plaintiff is willing to meet and confer regarding the scope of this Request.

\*   \*   \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 10:** For the period May 25, 2020 to present, all Documents and Communications relating to any Dispersal Order issued during the May 29 Protests.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 10:** City Defendants object to this Document Request as being unduly burdensome, overly broad, and seeking irrelevant information to the extent it seeks information relating to any dispersal orders provided at a date and time unrelated to Plaintiff's alleged injury . . . . City Defendants further object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon entry of a protective order, City Defendants will provide relevant body worn camera video footage, radio recordings, and a General Offense Report related to area where Plaintiff claims to have been injured on the evening of May 29, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. Further, Plaintiff's Request No. 10 is for documents and communications relating to any Dispersal Order issued during the May 29 Protests – not "body worn camera video footage, radio recordings, and a General Offense Report[.]" Please clarify whether it is your position that these items are responsive to this Request and whether additional documents and communications responsive to this request are in your possession, custody or control.

\*   \*   \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 11:** All body worn camera video footage recorded from May 29, 2020 at 10:00 p.m. CDT and May 30, 2020 at 1:00 a.m. CDT by Minneapolis Police Department officers who were on duty at or around the Area Near Minneapolis' Fifth Precinct during that time period.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 11:** City Defendants also object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a protective order, City Defendants will

# SIDLEY

Page 20

provide relevant body worn camera footage for officers on duty for the Fifth Precinct on the evening of May 29, 2020.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. Please confirm (1) the time period for which City Defendants will produce body worn camera footage, and (2) that the body worn camera video footage will include the name(s) of the personnel capturing the footage. Further, please confirm that your offer to produce body worn camera footage for the officers that were on duty for the Fifth Precinct includes all officers who were on duty in the Area Near Minneapolis's Fifth Precinct.

*      *      *

**PLAINTIFF'S DOCUMENT REQUEST NO. 12**: All video records, including police surveillance or building security footage recorded at any time between May 29, 2020 at 10:00 p.m. CDT and May 30, 2020 at 1:00 a.m. CDT and capturing footage of or around the Area Near the Minneapolis's Fifth Precinct, including but not limited to cameras affixed to the awning over the sidewalk and stairs leading to the Minneapolis Police Department Fifth Precinct building's Nicollet Avenue entrance or affixed to the northernmost overhang of the building on the 31st Avenue side.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 12:** City Defendants further object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a protective order, City Defendants will provide video recording from the Fifth Precinct building on the evening of May 29, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. Please confirm (1) the time period for which City Defendants will produce video recording from the Fifth Precinct building, and (2) that City Defendants are not withholding any video recordings in City Defendants' possession, custody or control that are responsive to this Request.

*      *      *

**PLAINTIFF'S DOCUMENT REQUEST NO. 13:** All traffic camera footage recorded at any time between May 29, 2020 at 10:00 p.m. CDT and May 30, 3030 at 1:00 a.m. CDT of or around East 31st Street between Nicollet Ave. and 1st Ave. South, Nicollet Ave. between 31st Ave. and Lake Street, or West 31st Street between Nicollet Ave. and Blaisdell Ave.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 13:** City Defendants further object to this Document Request to the extent it

# SIDLEY

Page 21

seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. . . . [U]pon the entry of a protective order, City Defendants will provide traffic camera footage at the requested locations, if any, on the evening of May 29, 2020.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter that the MGDPA does not provide a basis to withhold responsive documents. Please confirm the time period for which City Defendants will produce traffic camera footage.

*     *     *

**PLAINTIFF'S DOCUMENT REQUEST NO. 14:** For the period May 25, 2020 to present, all Documents and Communications, including but not limited to incident reports or incident summaries, relating to any Use of Force during the George Floyd Protests, including but not limited to incident reports or incident summaries involving Members of the Press.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 14:** City Defendants also object to this Document Request as being unduly burdensome and requiring the City to undertake an unreasonable investigation because as records are kept in the normal course of business, it would not be readily identifiable whether an incident involved a member of the press, particularly given the objectionably overbroad definition of "Member of the Press" provided by Plaintiff. City Defendants further object to this Document Request as being unduly burdensome, overly broad, and seeking irrelevant information, particularly to the extent it seeks information with respect to uses of force that are not alleged to have been involved in Plaintiff's incident and for the time period after May 31, 2020, which is unrelated the custom alleged to exist by Plaintiff. City Defendants finally object to this request as being in excess of 25 Document Requests.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the point raised at the outset of this letter regarding the number of requests propounded. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to prior to May 31, 2020. City Defendants also improperly seek to limit the scope of the request by objecting "to the extent it seeks information with respect to uses of force that are not alleged to have been involved in Plaintiff's incident[.]" Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of incident reports and incident summaries, and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

*     *     *

# SIDLEY

Page 22

**PLAINTIFF'S DOCUMENT REQUEST NO. 15:** For the period May 25, 2020 to present, all Documents and Communications between or among You and any Defendant relating to Tirado.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 15:** City Defendants also object to this Document Request to the extent it seeks information equally within the possession of other Defendants. City Defendants further object to this Document Request as being in excess of 25 Document Requests. City Defendants additionally object to this Document Request on the grounds that Plaintiff has not yet identified the John Doe Defendants by name, making a complete search for information impossible. City Defendants finally object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. City Defendants have not stated any objection that would permit them to withhold information in their possession, custody or control regarding the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye. If City Defendants know the name(s) of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye, they are required to produce the requested documents related to such persons. If they do not, please tell us if City Defendants contend that they do not know the identity of the person or persons who were involved in causing the deployment of the less-lethal projectile that struck Ms. Tirado in her left eye.

\*       \*       \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 16:** All Documents and Communications between or among You and any Defendants relating to the Use of Force (including but not limited to the use of less-lethal or non-lethal projectiles) against any Members of the Press in connection with the public protests, riots, demonstrations or gatherings.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 16:** City Defendants also object to this Document Request as being unduly burdensome and overly broad based on the temporal period listed in the Plaintiff's instructions and definitions, being August 18, 2008, to the present, particularly since this period is substantially before and after the custom alleged to exist by Plaintiff. Moreover, City Defendants object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. City Defendants finally object to this Document Request as being in excess of 25 Document Requests.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. In addition, City Defendants improperly seek

# SIDLEY

Page 23

to unilaterally limit the temporal scope on this request. Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Nonetheless, Plaintiff is willing to meet and confer regarding the scope of this Request.

\*     \*     \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 17:** All recordings, photographs or videos relating to: a) Tirado; b) any Members of the Press taken during the George Floyd Protests; and c) any Previous Press Incidents.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 17:** City Defendants also object to this Document Request as being overly broad, unduly burdensome, and seeking irrelevant information, particularly to the extent it seeks information about uses of force unrelated to the use of less-lethal projectiles, as alleged to have been used in Plaintiff's incident. City Defendants also object to this Document Request as being unduly burdensome and requiring the City to undertake an unreasonable investigation because, as records are kept in the normal course of business, it would not be readily identifiable whether the incident involved a member of the press, particularly given the objectionably overbroad definition of "Member of the Press" provided by Plaintiff. City Defendants further object to this Document Request as being compound and composed of at least three different Document Requests. . . . Moreover, City Defendants object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. City Defendants finally object to this Document Request as being in excess of 25 Document Requests.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. In addition, City Defendants improperly seek to unilaterally limit the temporal scope on this request based on their own defense that the relevant time period relating to Defendants' behavior is limited to May 26 to May 31, 2020. City Defendants also improperly seek to limit the scope of the request based on their own defense that the only relevant use of force is the "use of less-lethal projectiles." Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150. Furthermore, information related to ballistic tracking rounds is directly related to Plaintiff's incident, as Plaintiff alleges that she was marked with one on May 29, 2020. *See* Am. Compl. ¶¶ 1, 49, 50. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of the recordings, photographs or videos requested, and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

# SIDLEY

Page 24

\*          \*          \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 18:** All Documents and Communications relating to any customs, practices, policies or procedures of the Minneapolis Police Department relating to: a) the Use of Force; b) the use of ballistic tracking rounds; c) crowd control (including but not limited to public protests, riots, demonstrations or gathers); and d) the identification or treatment of any Member of the Press in connection with any of the above.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 18:** City Defendants further object to this Document Request as being unduly burdensome and requiring the City to undertake an unreasonable investigation because, as records are kept in the normal course of business, it would not be readily identifiable whether the incident involved a member of the press. . . . City Defendants further object to this Document Request as being compound and composed of at least seven different Document Requests. . . . Moreover, City Defendants object to this Document Request to the extent it seeks private, non-public personnel data or other data prohibited from disclosure by the Minnesota Government Data Practices Act. City Defendants finally object to this Document Request as being in excess of 25 Document Requests.

**PLAINTIFF'S RESPONSE**: Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. Nonetheless, Plaintiff is willing to meet and confer to discuss the collection of Documents and Communications relating to any customs, practices, policies or procedures of the Minneapolis Police Department, and to understand how these files are kept in the ordinary course of business so that the parties might be able to address any alleged undue burden on City Defendants.

\*          \*          \*

**PLAINTIFF'S DOCUMENT REQUEST NO. 19:** All Documents and Communications relating to any manufacturer recommendations regarding the Minneapolis Police Department's: a) use of less-lethal or non-lethal projectiles (including but not limited to foam rounds or bullets and marking rounds); and b) use of chemical irritants.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 19:** City Defendants also object to this Document Request on the grounds that it seeks information equally within the possession of the Plaintiff, and based on the allegations in the Amended Complaint, are already within the Plaintiff's possession. City Defendants further object this Document Request as being compound and composed of at least two different Document Requests. . . . City Defendants additionally object to this Document Request as being in excess of 25 Document Requests.

# SIDLEY

Page 25

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. City Defendants have not stated any objection that would permit them to withhold information in their possession, custody or control.

*   *   *

**PLAINTIFF'S DOCUMENT REQUEST NO. 20:** All Documents and Communications relating to any training programs, courses or education of Minneapolis Police Department officers, employees or officials – including those performed by equipment manufacturers, other third parties, the Minneapolis Police Department, the Minnesota Peace Officer Standards and Training (POST) Board, or other government-related bodies – that relate to: a) the Use of Force; b) the use of less-lethal or non-lethal projectiles; c) the use of foam rounds or bullets, weapons, firearms, devices, SWAT gear, combat gear chemical irritants; and d) any tactics or methods used for crowd control, public protests, riots or other public demonstrations or gatherings.

**RELEVANT EXCERPT OF CITY DEFENDANTS' RESPONSE TO DOCUMENT REQUEST NO. 20:** City Defendants object to this Document Request as being compound and composed of at least eighteen different Document Requests . . . . City Defendants also object to this Document Request as being overly broad, unduly burdensome, and seeking irrelevant information, both temporally and substantively. . . . Moreover, City Defendants object to this Document Request to the extent it seeks private, non-public data or other data prohibited from disclosure by the Minnesota Government Data Practice Act. City Defendants finally object to this Document Request as being in excess of 25 Document Requests.

**PLAINTIFF'S RESPONSE:** Plaintiff reiterates the points raised at the outset of this letter regarding the number of requests and the MGDPA. City Defendants have not stated any objection that would permit them to withhold information in their possession, custody or control. The documents requested are directly relevant, both temporally and in terms of the substantive information being sought, because Plaintiff alleges a custom and pattern of unlawful conduct regarding the use of force. The information sought by this Document Request is relevant to the Minneapolis Police Department's custom and pre-existing pattern of unlawful conduct, and is proportional to the needs of this case. *See, e.g.*, Am. Compl. ¶¶ 96, 133, 142, 150.

*   *   *

We look forward to continuing this discussion with you and will seek to resolve all discovery disputes in good faith.

Sincerely,

*Stacy M Neubert*

Stacy Horth-Neubert

# SIDLEY

Page 26

cc: Heather P. Robertson (Heather.Robertson@minneapolismn.gov)
   Sharda Enslin (sharda.enslin@minneapolismn.gov)
   John Baker (JBaker@greeneespel.com)
   Davida Williams (DWilliams@greeneespel.com)
   Tai-Heng Cheng (tcheng@sidley.com)
   Gaëlle E. Tribié (gtribie@sidley.com)
   Gabriel L. Schonfeld (gschonfeld@sidley.com)

EXHIBIT K TO DECLARATION OF KRISTIN R. SARFF



**Office of the City Attorney**
James R. Rowader, Jr.
City Attorney
350 S. Fifth St., Room 210
Minneapolis, MN 55415
TEL  612.673.3000  TTY  612.673.2157
www.minneapolismn.gov

612.673.3919
kristin.sarff@minneapolismn.gov

March 4, 2021

<u>By E-mail</u>
Stacy Horth-Neubert
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013

Re:    *Linda Tirado v. City of Minneapolis, et al.,* Court File No. 20-cv-01338 (JRT/ECW)

Dear Ms. Horth-Neubert,

Following our meet and confer, I am writing to provide additional information regarding the City Defendants' discovery responses.

**"John Does" 1-4.**  City Defendants continue to object to the definition of John Does provided by Plaintiff, which includes those "involved in *causing* the deployment" of a less-lethal projectile, as calling for a legal conclusion.  However, the City Defendants are not withholding any information based on this objection.  As you are aware, based on a review of body worn camera ("BWC") footage, City Defendants contest Plaintiff's allegation that a Minneapolis Department Officer struck her with a less-lethal projectile.  Consequently, there are no John Does to identify.  Following the entry of a Protective Order, City Defendants will produce the reviewed BWC footage to Plaintiff and the names of the officers for which BWC footage has been provided.  From that point, it is the Plaintiff's burden to identify any John Does that she thinks exist, and City Defendants maintain that requesting defense counsel to submit an identification of "John Does," even if they did exist, calls for attorney work product.

**Minnesota Government Data Practices Act.**  City Defendants maintain the objections based on the Minnesota Government Data Practice Act ("MGDPA") that were asserted in response to individual discovery requests.  Following the entry of a Protective Order, however, the City Defendants will produce private, non-public documents protected from disclosure under the MGDPA on a Confidential basis.

**Plaintiff's compound document requests.**  See responses to individual discovery requests below.

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

**Body Worn Camera footage.**  Following the entry of a protective order, City Defendants will produce BWC footage for the time period of May 29, 2020, at 10:00 p.m. to May 30, 2020, at 1:00 a.m., as requested, for officers that were near the Fifth Precinct, meaning within two blocks of the Fifth Precinct building in any direction.

**General Objections**

- No. 8: For clarification, City Defendants will provide responsive, non-privileged information and documents in its possession, but will not seek out documents in the possession and control of other entities.  Plaintiff can seek discovery directly from other entities.

- No. 10: See above response relating to the MGDPA.

- No. 11: City Defendants will not be seeking out information in the possession and control of Defendant Robert Kroll, POST, equipment manufacturers, individual officers, or any other entity other than the City of Minneapolis, Chief Arradondo, or the MPD for the purpose of responding to Plaintiff's discovery requests.  Plaintiff can seek discovery directly from those entities.

**Interrogatories**

- No. 1: See above response regarding the John Does.

- No. 2: City Defendants will treat interrogatory number 2 as posing a single interrogatory request.  City Defendants will identify any training offered by the MPD regarding use of force to its officers in the last seven years, which is the applicable retention period.

- No. 3: See above regarding John Does and training materials that will be provided.

- No. 4: Following the entry of a Protective Order, City Defendants will identify individuals that were the subject of disciplinary proceedings that resulted in the imposition of discipline in connection with the protests between May 26, to May 31, 2020.  As noted before, the City does not maintain its records in a fashion that would allow the City to identify whether a disciplinary matter related to an incident involving a member of the press.  It would be unduly burdensome for the City Attorney's Office to have to review every available record involving the imposition of discipline and then research whether the complainant was a member of the press to respond to this discovery request.  If the Plaintiff has specific incidences for which she would like to collect disciplinary proceeding records, please identify those and the City Defendants will endeavor to collect them for the seven-year

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

retention period.  Additionally, City Defendants maintain that seeking any and all disciplinary proceeding records that involve any sort of use of force, particularly those types of force that are not mentioned in her Amended Complaint, is overly broad, unduly burdensome, and not likely to lead to the discovery of relevant information.  Please feel free to suggest some limiting parameters.

- No. 5: See response to number 4 above as it equally covers the City Defendants' position with respect to Internal Affairs Unit complaints.

- No. 6: Plaintiff has agreed to limit this request to "identify all lawsuits filed by Member of the Press against any Defendant or member of the Minneapolis Police Department which allege use of force against Members of the Press."  With the reservation that the City Defendants do not necessarily know the profession of plaintiffs and would not know of any lawsuits involving officers outside of their capacity as officers, as a compromise, the City Defendants will endeavor to identify any lawsuits filed by known members of the press in the last seven years.  City Defendants also note that filed lawsuits are accessible to Plaintiff's counsel.

- No. 7:  The City Defendants will treat interrogatory number 7 as posing a single interrogatory.  As a compromise, the City Defendants will provide any information regarding the tracking, accounting or use of less-lethal or non-lethal projectiles, ballistic tracking rounds, foam rounds or bullets, chemical munitions, and SWAT gear.  The remaining items listed in interrogatory number 7 are either too vague, and therefore unduly burdensome to seek out, or are not related to any of the allegations in Plaintiff's Amended Complaint.  In response to Document Request No. 9, the City will produce documents related to the tracking less-lethal projectiles between May 26 and May 31, 2020.

- No. 8: The City Defendants will treat interrogatory number 8 as posing a single interrogatory.  As for the clarification sought, interrogatory number 8 conceivably asks the City Defendants to describe anytime any City employees met and the topic of the George Floyd protests came up over a multiple-months-long period, including conversations that are wholly unrelated to the police response between May 26 to May 31, 2020, or that involve officers off-duty and for which the City Defendants would have no notice or knowledge.  The interrogatory is simply too broad in terms of the temporal period, participants, and subject matter to conceivably respond to as worded.   Please feel free to suggest some limiting parameters.

- No. 9:  See above, including City Defendants response relating to the John Does.  As a compromise, City Defendants will endeavor to identify any meetings, if they existed, between Defendant Kroll and Chief Arradondo or the command staff of the MPD relating to Plaintiff.

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

- No. 10: Following entry of a protective order, City Defendants will provide records that will permit the Plaintiff identify officers that responded to the area near, i.e. within two blocks of, the Fifth Precinct building for the time period of May 29, 2020, at 10:00 p.m. to May 30, 2020, at 1:00 a.m., as requested.

**Document Requests**

- No. 1: See above regarding the John Does.

- No. 2:  See above response to interrogatory number 10 above.

- No. 3:  The City Defendants will treat document request number 3 as posing a single document request.  The City Defendants will produce General Offense Reports and Incident Detail Reports to identify the vehicle and officers for the location and timeframe discussed above, and the City Defendant believe they will be sufficient to capture the information sought.

- No. 4: See above response regarding John Does.  No personnel files can be produced as there are no known John Does.

- Nos. 5, 6 and 7: See above responses to interrogatory numbers 4 and 5 above.

- No. 8:  See above responses regarding John Does and interrogatory numbers 4 and 5.

- No. 9: See above response to interrogatory number 7.

- No. 10: The items listed in response to Document Request number 10 (BWC footage, radio recordings, and General Offense Reports) will document dispersal orders provided by the MPD during the timeframe of 10:00 p.m. on May 29 to 1:00 a.m. on May 30.  City Defendants are not seeking to withhold any information relating to dispersal orders provided by the MPD, but note that there are likely documents and information held by other law enforcement agencies related to dispersal orders for this timeframe, but the City Defendants do not have possession of those records. Plaintiff can seek discovery relating to dispersal orders from law enforcement directly from those other entities.

- No. 11: See above response regarding BWC footage.

- Nos. 12 and 13: City Defendants will provide all City video within its possession for the timeframe and locations listed in this letter following the entry of a Protective Order.

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

- No. 14: See above response relating to the identification of members of the press and limitations on related, relevant uses of force. City Defendants will produce incident reports and summaries for the time period between May 26 and May 31, 2020.

- Nos. 15 and 16: See above response to interrogatory number 9.

- No. 17: See above response above relating to the identification of members of the press and the City's retention period. City Defendants will provide any recording, photographs or video of Plaintiff and any recording, photographs or video relating to force used against known members of the press during the May 26 to May 31, 2020, time period, and in the last seven years.

- No. 18: City Defendants will treat document request number 18 as posing a single document request. See above responses relating to the identification of members of the press and the retention period. The City will provide policies relating to the use of force, ballistic tracking rounds, and crowd control for the last seven years, and documents relating to customs or practices, if they exist, on the same subjects for the same period.

- No. 19: City Defendants will provide documents relating to manufacturer recommendations regarding less-lethal projectiles and chemical munitions used by the MPD within the last seven years that are in its possession.

- No. 20: City Defendants will treat document request number 20 as posing a single document request. See above response relating to General Objection number 11. As a compromise, City Defendants will provide documents that constitute training offered by the MPD relating to less-lethal or non-lethal projectiles, ballistic tracking rounds, foam rounds or bullets, chemical munitions, SWAT gear, or crowd control or protests within its retention period. The remaining items listed in document request number 20 are either too vague, and therefore, unduly burdensome to seek out, or are not related to any of the allegations in Plaintiff's Amended Complaint.

**Plaintiff's new request.** By email, Plaintiff has asked the City Defendants to identify officers depicted in a series of photographs taken by Plaintiff. Please submit any new inquiries by serving a document request or interrogatory. City Defendants note in advance that the timestamp metadata provided by Plaintiff in relation to her photographs appears to be inaccurate, and that Plaintiff still has not produced all of the photographs taken by Plaintiff on May 29, 2020, which may provide necessary context for identification purposes.

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

Please let me know if you would like to discuss Plaintiff's discovery requests further.

Sincerely,

*/s Kristin R. Sarff*

Kristin R. Sarff
Assistant City Attorney


cc: Plaintiff's counsel of record

EXHIBIT L TO DECLARATION OF KRISTIN R. SARFF

1

```
1

2            UNITED STATES DISTRICT COURT

3            FOR THE DISTRICT OF MINNESOTA

4     ----------------------------X
      LINDA TIRADO,
5
                   Plaintiff,          Civil Action No.
6
             v.                        20-cv-01338 (JRT-ECW)
7
      CITY OF MINNEAPOLIS;
8     MINNEAPOLIS CHIEF OF POLICE
      MEDARIA ARRADONDO, in his
9     official capacity; ROBERT KROLL,
      in his individual capacity; and
10    Minneapolis Police Department
      Officers John Does 1-4, in their
11    official and individual
      capacities,
12
                   Defendants.
13    ----------------------------X

14

15         REMOTE VIDEOTAPED DEPOSITION

16                      OF

17               ANDREW BRAUN

18         TUESDAY, OCTOBER 12, 2021

19

20

21

22

23

24    Reported by:
      ANNETTE ARLEQUIN, CCR, RPR, CRR, CLR
25    JOB NO. 2021-812426
```

EXHIBIT M TO DECLARATION OF KRISTIN R. SARFF

Andrew Braun - October 12, 2021

228

1                    A. Braun

2    this looks to be around where and when the

3    green laser pointed in your eye?

4            MS. SARFF:  Objection.  Form.

5    BY MR. PLOTZ:

6        Q.    That was the question.

7        A.    It seems like it could have been

8    around this time period.  But, again, most

9    of the streets were covered in debris and

10   the orange street signs and everything

11   else.  So in my recollection, I remember

12   seeing knocked-over debris and orange signs

13   when I took the laser directly to the eye.

14   Now I cannot recall if this was the exact

15   moment or if this was the intersection that

16   it occurred in, but again it seems -- it

17   seems as though it might be either at this

18   moment or close to this moment.

19       Q.    Okay.

20            MR. PLOTZ:  Why don't we stop the

21       screen share.

22            Let's go to Tab 12-1.

23            So as Exhibit 7, I would like to

24       enter the document with the Bates-stamp

25       Tirado_0000044.

EXHIBIT M TO DECLARATION OF KRISTIN R. SARFF

Andrew Braun - October 12, 2021

229

1              A. Braun

2          (Plaintiff's Braun Exhibit 7,

3      Photograph, Bates-stamped

4      Tirado_0000044, marked for

5      identification, as of this date.)

6   BY MR. PLOTZ:

7      Q.   Do you recognize the location of

8   this photograph?

9      A.   It appears as though it looks

10  like it's the intersection Nicollet and

11  31st next to the metal fence.

12     Q.   Does this look like the same

13  location of the videos that you just saw?

14     A.   It appears to be, yes.

15     Q.   Do you recognize yourself in this

16  picture?

17     A.   No.

18     Q.   Based on your recollection of

19  where you stood when you were at this

20  intersection, do you know, can you

21  determine which individual is you?

22     A.   No.

23     Q.   Do all the individuals in this

24  picture look to be members of SWAT teams?

25     A.   Yes.

EXHIBIT M TO DECLARATION OF KRISTIN R. SARFF

1

1

2   UNITED STATES DISTRICT COURT

3   FOR THE DISTRICT OF MINNESOTA
    Civil Action No. 20-cv-01338 (JRT-ECW)
4   --------------------------------------

5   LINDA TIRADO,

6              Plaintiff,

7      vs.

8   CITY OF MINNEAPOLIS; MINNEAPOLIS
    CHIEF OF POLICE MEDARIA ARRADONDO,
9   in his official capacity; ROBERT
    KROLL, in his individual capacity,
10  and MINNEAPOLIS POLICE DEPARTMENT
    OFFICERS JOHN DOES 1-4, in their
11  official and individual capacities,

12             Defendants.

13  --------------------------------------

14

15        REMOTE VIDEOTAPED DEPOSITION OF

16               SAWYER MOEN

17

18          Friday, November 19, 2021

19             9:12 a.m. (CT)

20

21

22

23  Reported by:

24  Jaclyn Urzia, CSR

25  Job No. 2021-820036

EXHIBIT N TO DECLARATION OF KRISTIN R. SARFF

128

```
 1              S. MOEN

 2              (Exhibit 4, Photograph, Bates

 3        TIRADO_0000044, remotely introduced

 4        and provided electronically to the

 5        reporter.)

 6        Q.   And so we're just going to --

 7   we'll just start with the Bates stamp

 8   number.  So do you recognize the area that

 9   this photograph was taken?

10        A.   I believe it to be in the area of

11   the 5th Precinct.

12        Q.   Do you recognize it as the same

13   area that the body camera footage we just

14   saw was showing?

15        A.   Yes.

16        Q.   Okay.

17              MR. PLOTZ:  And now, I'd like to

18        enter the native file for this

19        photograph as Exhibit 4A.  This is the

20        file titled Tab

21        7-1-Native_DSC_0344.jpeg.

22              (Exhibit 4A, Photograph, native

23        file, Bates DSC_0344.jpeg, remotely

24        introduced and provided electronically

25        to the reporter.)
```

EXHIBIT N TO DECLARATION OF KRISTIN R. SARFF

129

1              S. MOEN

2      Q.    Does this look to be the same

3   photograph that you were just looking at?

4      A.    It appears to be similar, yes.

5      Q.    Okay.

6            Can you tell whether any of the

7   officers depicted are carrying a

8   40-millimeter launcher?

9      A.    It appears the officer on the

10   left is carrying a 40-millimeter launcher.

11      Q.    And so we're just going to -- is

12   the officer the cursor is on the person

13   you're referring to?

14      A.    Yes.

15      Q.    Is anyone else -- sorry.

16            And do you know the identity of

17   that officer?

18      A.    I do not.

19      Q.    Okay.

20            Is there any other officer

21   carrying a 40-millimeter launcher that you

22   can identify?

23      A.    Not that I can identify, no.

24      Q.    As far as you can tell, is

25   everyone pictured a member of the SWAT

                                          130

1                S. MOEN

2    team?

3        A.   Yes, it would appear to be that,

4    yes.

5        Q.   Also, as a general question, do

6    you know what a beanbag round is?

7        A.   You'd have to elaborate more on

8    that.

9        Q.   A beanbag 40-millimeter round, is

10   there anything that you consider a beanbag

11   round?

12       A.   We do have stabilized beanbag

13   rounds that are used from a less-lethal

14   shotgun, but not that I know of from a

15   40-millimeter.

16       Q.   Okay.  I'll come back to that.

17            MR. PLOTZ:  So we have our fire

18       drill that we have to go to

19       unfortunately.  So we're going to have

20       to take about a 10-minute break and we

21       can come back at around 1:35, 1:37.

22            THE VIDEOGRAPHER:  Okay.  The

23       time is --

24            MR. PLOTZ:  Sorry.  That's 12:37.

25       We can come back, Central Time.

EXHIBIT N TO DECLARATION OF KRISTIN R. SARFF



**Office of the City Attorney**
James R. Rowader, Jr.
City Attorney
350 S. Fifth St., Room 210
Minneapolis, MN 55415
TEL  612.673.3000  TTY  612.673.2157
www.minneapolismn.gov

612.673.3919
kristin.sarff@minneapolismn.gov

October 28, 2021

<u>By E-Mail</u>
Judge John F. Docherty
United States Magistrate Judge
United States District Court
316 N. Robert Street
St. Paul, MN 55101

Re:     *Linda Tirado v. City of Minneapolis, et al.*, Court File No. 20-CV-1338 (JRT/JFD)

Dear Judge Docherty,

As requested in the Court's October 22, 2021, Order, I am writing to provide the Court with a description of the evidence that bears on the identity of the John Doe Defendants, and related discovery.

Plaintiff Linda Tirado filed a Complaint alleging that on May 29, 2020, ten to thirty minutes after the 8:00 p.m. curfew ordered by Governor Walz and Mayor Frey had commenced, John Doe 1 struck her in the eye with a less-lethal foam bullet while she was taking photographs near the Third Precinct of the Minneapolis Police Department (MPD).  (Dkt. No. 1 at ¶¶ 1, 5, 44-45, 47).  According to Plaintiff, an unknown individual marked her with a tracking round, leaving a bright green target on her black backpack, before she was struck in the eye.  (*Id*. at ¶¶ 1, 50).  Plaintiff's Complaint defined the John Does as "agents of Defendants City of Minneapolis and Minnesota State Patrol." (*Id*. at ¶ 17). Plaintiff also sued Colonel Matthew Langer of the Minnesota State Patrol and John Harrington from the Minnesota Department of Public Safety, based on his supervisory responsibility over the Minnesota State Patrol. (*Id*. at ¶¶ 15-16).

Plaintiff then filed a First Amended Complaint changing the date, time and location of the alleged incident, and the definition of the John Does. (Dkt. No. 33).  Plaintiff newly alleged that in the early morning hours of May 30, 2020, around 12:34 a.m., John Doe 1 struck her in the head with a foam bullet while she was taking photographs of a line of police officers near the MPD's Fifth Precinct.  (*Id*. at ¶¶ 1, 36, 46, 52). Plaintiff again alleged that her backpack was marked with a green tracking round.  (*Id*. at ¶ 66).  Plaintiff redefined the John Does as "officers of the Minneapolis Police Department".  (*Id*. at ¶ 14).

In a subsequent communication, after the City of Minneapolis (City) answered the First Amended Complaint, Plaintiff's counsel informed the Defense that Plaintiff was now claiming to have been struck by John Doe 1 around 11:34 p.m. on May 29, 2020, near the Fifth Precinct.

In response to an interrogatory requesting the identity of the John Does 1-4, the City reserved a series of objections to the interrogatory and answered, in part, "without conceding that Plaintiff was struck in the eye with a less-lethal projectile by an MPD officer, upon the entry of a Protective Order, City Defendants will provide the Plaintiff with relevant body worn camera video footage recorded on the evening of May 29, 2020, and a General Offense Report related to events occurring near the Fifth Precinct on May 29, 2020, to enable the Plaintiff to identify the purported John Does." In various meet and confers with Plaintiff's counsel regarding both discovery and a stipulation for a protective order, Defense counsel informed Plaintiff's counsel that body worn camera video showed the Plaintiff walking away from MPD officers untouched.

Magistrate Judge Elizabeth Cowan Wright issued a Protective Order on April 6, 2021, governing, among other things, the confidential production of body worn camera video. (Dkt. No. 72 at ¶ 1(d)(iv)). Judge Wright also ordered the parties to make initial disclosures on or before April 20, 2021. (Dkt. No. 74 at p. 3, ¶ 1 (Deadlines for Initial Disclosures and Fact Discovery)).

On April 20, 2021, the City produced its initial disclosures, including the General Offense Report (police report and officer-written supplements) and Incident Detail Report for the MPD's response to the riot occurring outside the Fifth Precinct on the evening of May 29, 2020, and began producing body worn camera videos recorded between 10:00 p.m. on May 29 and 1:00 a.m. on May 30, which was the timeframe posed by Plaintiff in a Request for the Production of Documents. Due to the volume of video footage, the City completed its production of the approximately 160 videos from body worn cameras on April 22, 2021, two days after the initial disclosure deadline. Since that time, the City has also produced a staffing roster showing the MPD personnel working on May 29, 2020, as well as the Internal Affairs Unit file relating to Plaintiff's allegations, radio communications, and video footage from the Fifth Precinct building, among other documents.

Contrary to Plaintiff's description of the events near the Fifth Precinct, the body worn camera video clearly shows that MPD officers were responding to a dangerous riot. Multiple buildings, including the Wells Fargo bank building, were set ablaze by arsonists. Molotov cocktails were thrown at the Fifth Precinct, one night after the Third Precinct had been set on fire. Rioters were actively looting nearby businesses. Gun shots were fired at MPD officers. Commercial grade fireworks were launched at MPD officers. Rioters attempted to blind MPD officers with green and blue lasers, and threw a variety of projectiles at officers, including, but not limited to, frozen water bottles, rocks, and pipes.

In other words, Plaintiff was present at a time and location where there were numerous other objects that could have injured her other than a law enforcement projectile.

Plaintiff herself took photos confirming a variety of threats to MPD officers, as well as herself, and the on-going illegal activity near the Fifth Precinct. See Exhibit A. Plaintiff also took pictures showing that other law enforcement agencies, other than the MPD, were present in Minneapolis. Additionally, video from body worn cameras as well as the Fifth Precinct building show other law enforcement agencies present near the Fifth Precinct on the evening of May 29, 2020.

Plaintiff has now deposed three individuals that were employed by the MPD and responded to the Fifth Precinct riot on May 29, 2020. Two of those individuals were equipped with 40mm launchers, although neither had green markings rounds. The body worn camera video for those individuals do not show either of the them shooting at or striking Plaintiff. Plaintiff's counsel intends to depose three additional individuals that were present near the Fifth Precinct, however, none of those individuals were operating a 40mm launcher on the evening of May 29, 2020.

In the voluminous video produced by the City, Plaintiff is never seen with a green mark on her backpack, none of the officers load a 40mm launcher with a green marking round, and Plaintiff cannot be seen being struck by any projectile, much less a projectile fired by an MPD officer. See Exhibit B.[1] Accordingly, the City continues to deny that Plaintiff was injured in the manner she has alleged, and the City continues to assert that none of the MPD officers photographed by Plaintiff struck her with a green marking round or any other projectile.

To the extent the Plaintiff intends to name an MPD officer as John Doe 1, Plaintiff has had the requisite information to do so since April 22, 2021, when the City's initial disclosures were complete.

Sincerely,

*/s Kristin R. Sarff*

Kristin R. Sarff
Assistant City Attorney

---

[1] Pursuant to the Protective Order, the City produced body worn camera videos in this matter on a confidential basis. Accordingly, Exhibit B, which contains still frames from the BWC video, is being provided to the Court on a confidential basis. Due to size limitations, the City is unable to email clips, or extracts, from the BWC video along with this letter. Therefore, the City will deliver a flash drive with a copy of two BWC video clips to the Court and Plaintiff's local counsel tomorrow.

## EXHIBIT A: PLAINTIFF'S PHOTOGRAPHS

Molotov Cockatil thrown at the Fifth Precinct, and Projected Green and Blue Lasers



Illegal assembly between the Fifth Precinct and Wells Fargo set ablaze by arsonists.



Acts of arson at or near the Wells Fargo bank building.





Looting and property destruction.





Commercial grade fireworks launched.

