UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Linda Tirado,

       Plaintiff,

vs.

City of Minneapolis; Minneapolis Chief of
Police Medaria Arradondo, *in his official
capacity*; Robert Kroll, *in his individual
capacity*; and Minneapolis Police
Department Officers John Does 1-4, *in
their official and individual capacities*,

       Defendants.

Case No. 20-CV-01338 (JRT/JFD)

**CITY OF MINNEAPOLIS AND
MEDARIA ARRADONDO'S
MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND THE
SCHEDULING ORDER**

**<u>INTRODUCTION</u>**

Plaintiff's motion asks the Court to extend all of the pending deadlines in this case by approximately six months. This motion represents the Plaintiff's third request for an extension to the deadline to amend her complaint to name additional parties, namely the true identity of the John Doe defendants. Plaintiff's request is one too many. Notwithstanding any on-going discovery disputes or exchanges, Plaintiff has had in her possession – for nearly eight months – the police reports and body worn camera video footage necessary to amend her complaint to name the John Does, assuming they actually exist. Accordingly, the City of Minneapolis and Chief of Police Medaria Arradondo ("City Defendants") respectfully request that the Court deny Plaintiff's motion.

## FACTS

**A.   Plaintiff's pleadings and changing allegations.**

Plaintiff Linda Tirado filed a Complaint alleging that on May 29, 2020, ten to thirty minutes after the 8:00 p.m. curfew ordered by Governor Walz and Mayor Frey had commenced, John Doe 1 struck her in the eye with a less-lethal foam bullet while she was taking photographs near the Third Precinct of the Minneapolis Police Department (MPD). (Dkt. No. 1 at ¶¶ 1, 5, 44-45, 47.)  According to Plaintiff, an unknown individual marked her with a tracking round, leaving a bright green target on her black backpack, before she was struck in the eye.  (*Id*. at ¶¶ 1, 50.)  Plaintiff's Complaint defined the John Does as "agents of Defendants City of Minneapolis and Minnesota State Patrol."  (*Id*. at ¶ 17.) Plaintiff also sued Colonel Matthew Langer of the Minnesota State Patrol and John Harrington from the Minnesota Department of Public Safety, based on his supervisory responsibility over the Minnesota State Patrol. (*Id*. at ¶¶ 15-16.)

Plaintiff then filed a First Amended Complaint changing the date, time and location of the alleged incident, and the definition of the John Does. (Dkt. No. 33.)  Plaintiff newly alleged that in the early morning hours of May 30, 2020, around 12:34 a.m., John Doe 1 struck her in the head with a foam bullet while she was taking photographs of a line of police officers near the MPD's Fifth Precinct.  (*Id*. at ¶¶ 1, 36, 46, 52.) Plaintiff again alleged that her backpack was marked with a green tracking round.  (*Id*. at ¶ 66.)  Plaintiff redefined the John Does as "officers of the Minneapolis Police Department".  (*Id*. at ¶ 14.)

In a subsequent communication, after the City Defendants answered the First Amended Complaint, Plaintiff's counsel informed the defense that Plaintiff was now

claiming to have been struck by John Doe 1 around 11:34 p.m. on May 29, 2020, near the Fifth Precinct.  (Declaration of Kristin Sarff ("Sarff Decl.") at ¶2.)

## B.    The City Defendants answer the First Amended Complaint after motion practice, and deny that a Minneapolis Police Department officer struck Plaintiff.

The City Defendants' brought a motion to dismiss the claims asserted in the First Amended Complaint against the City Defendants only.  (Dkt. Nos. 43, 45.)  On February 22, 2021, the Court denied the City Defendants' motion.  (Dkt. No. 64.)  On March 8, 2021, the City Defendants' answered the Plaintiff's First Amended Complaint.  (Dkt. No. 68.)  In the Answer, City Defendants denied, upon information and belief, that Plaintiff was shot by a Minneapolis Police Department ("MPD") officer.  (*Id.* at ¶¶137-138.)  For the reasons explained in the City Defendants' October 28, 2021, letter to the Court, the City Defendants continue to deny that an MPD officer struck Plaintiff with a 40mm round.  (Sarff Decl. at Ex. O.)

## C.    The parties serve early discovery.

While the City Defendants' motion to dismiss was pending, counsel for the City Defendants met and conferred with Plaintiff's counsel regarding a discovery schedule and other matters typically contained in a Rule 26(f) Report.  (Sarff Decl. at ¶3.)

On September 2, 2020, the City Defendants served discovery requests on the Plaintiff.  (Sarff Decl. at Ex. A.)  Among the discovery requests, City Defendants requested all photographs, videos and audio recordings taken by Plaintiff on May 29, 2020, and May 30, 2020. (*See* Sarff Decl. at Ex. B, pp. 6-7 (showing document request numbers 1 and 2).)  On October 5, 2020, Plaintiff agreed to produce only those photographs, videos and

recordings taken by Plaintiff in the eleven-minutes before she claims to have been shot and then for a period thereafter.  (*Id.*)  However, Plaintiff did not produce any photographs, videos or recordings with her discovery responses, or any other responsive documents. (Sarff Decl. at ¶5.)  It was not until April 20, 2021, that Plaintiff produced any documents, including photographs, videos, or recordings to the City Defendants.  (*Id.*)  Plaintiff never claimed the photographs, videos or recordings were confidential and, when they were produced, they were not marked with a confidential designation. (*Id.*)

On October 23, 2020, Plaintiff served discovery on City Defendants.  (Dkt. No. 104-7.)  Interrogatory number 1 requested the identity of John Does 1-4 and Document Request number 1 sought documents and communications "sufficient to identify each of John Does 1-4." (Sarff Decl. at Ex C, p. 4; Ex. D at p. 5.)  On November 23, 2020, the City Defendants timely responded to Plaintiff's discovery requests.  (Sarff Decl. at Exs. C-D.)  In response to interrogatory number 1 and document request number 1, City Defendants reserved a series of objections and responded, in part, "without conceding that Plaintiff was struck in the eye with a less-lethal projectile by an MPD officer, upon the entry of a Protective Order, City Defendants will provide the Plaintiff with relevant body worn camera video footage recorded on the evening of May 29, 2020, and a General Offense Report related to events occurring near the Fifth Precinct on May 29, 2020, to enable the Plaintiff to identify the purported John Does."  (Sarff Decl. at Ex. C, pp. 5-6 (answer to interrogatory number 1); Ex. D, p. 2 (response to document request number 1).)

**D.**   **Meet and confers.**

Plaintiff has sent the Plaintiff various meet and confer letters or emails.  The first meet and confer letter, sent on February 2, 2021, was a 26-page single-spaced letter detailing what Plaintiff perceived to be deficiencies in the City Defendants' responses to Plaintiff's first set of discovery requests.  (Sarff Decl. at Ex. K.)  On or about February 17, 2021, the parties had a phone call to address the letter.  (Sarff Decl. at ¶16.)  In the phone call, City Defendants sought compromise regarding the Plaintiff's requests, and reminded Plaintiff that certain documents would be produced following the entry of a Protective Order.  (*Id.*) In addition to the phone call, City Defendants provided a responsive letter detailing their position on the discovery responses.  (Sarff Decl. at Ex. L.)

Additional correspondence and meet and confers have been conducted since these initial exchanges.  Plaintiff has never filed a motion to compel discovery related to the purported deficiencies with the City Defendants' November 23, 2020, responses to Plaintiff's first set of discovery or any subsequent discovery requests.[1]  (*See generally* Docket).

**E.**   **The Court issues a Protective Order based on the parties' stipulation.**

On February 26, 2021, the parties filed a Stipulation for a Protective Order.  (Dkt. No. 65.)  On April 6, 2021, the Court issued a Protective Order based on the parties' stipulation.  (Dkt. No. 72.)   Under the Protective Order, the parties were permitted to designate certain documents as Confidential and Confidential – Attorneys' Eyes Only

---

[1] Plaintiff has ten attorneys of record, located in five different locations: Minneapolis, New York, Dallas, Los Angeles, and Washington, DC.  (*See generally* Docket).

("AEO"). (Dkt. No. 72 at pp. 1-2.)   The parties had the "right" to designate documents and Confidential if they believed in good faith that the documents qualified for protection "under applicable law, including the Minnesota Government Data Practices Act." (*Id.* at p. 1, ¶1(a).)   Specifically, "if properly requested through discovery," the City Defendants would produce on a Confidential or Confidential AEO basis, certain enumerated documents from the MPD, including "[b]ody worn camera video footage." (*Id.* at pp. 2-3, ¶1(d)(i)-(iv).)

## F.   <u>The Court's First Pretrial Scheduling Order.</u>

On April 27, 2021, the Court issued a Pretrial Scheduling Order with the input of counsel for the parties. (Dkt. No. 74 at p. 1.)   The Scheduling Order notes that parties must "promptly" bring disputes to the Court through its procedures for resolving non-dispositive motions. (*Id.*)   "In other words, simply because this schedule established a deadline for filing a particular non-dispositive motion does not mean that a motion brought by that deadline will automatically be considered to have been timely filed if the relief sought by the motion is likely to impact the parties' ability to meet the other deadlines in this Order and if it appears that with the exercise of diligence, the motion could have been brought sooner." (*Id.* at pp. 1-2.)

The Court ordered that the parties must make their initial disclosures on or before April 20, 2021. (*Id.* at p. 2, ¶1 (first paragraph 1).)   Each side was permitted to take no more than 10 factual depositions. (Id. at p. 3, ¶4.)   The Court further ordered that "all motions that seek to amend the pleadings or to add parties must be filed and served on or before **August 20, 2021**." (*Id.* at p. 5 ¶1 (emphasis in original).)

**G.**   **The City Defendants' initial disclosures identified witnesses from May 29, and produced all related police reports and body worn camera video footage.**

On April 20, 2021, the City Defendants produced its initial disclosures.  (Sarff Decl. at Ex. E.)  In the initial disclosures, City Defendants identified individuals that were employed by the MPD on May 29, 2020, and that would have "knowledge of police and law enforcement events occurring on May 29, 2020" including Tyrone Barze.[2]  (*Id*. at p. 7.) City Defendants also disclosed Sergeant Kevin Angerhofer and Tony Caspers as having knowledge relating to training on the use of less-lethal munitions.  (*Id*. at p. 7.)

The City Defendants also produced various police reports, including General Offense Reports, CAD Reports, and Incident Details Reports, related to the protests, riots, and civil unrest between May 26, 2020, to May 31, 2020.  (*Id*. at p. 15.)  Those reports specifically covered events taking place near the Fifth Precinct on May 29, 2020, and enumerated the officers that were present near the Fifth Precinct.  (Sarff Decl. at ¶9; Sarff Decl. Ex. F (MPLS_Tirado000807-000898).)  For those SWAT officers responding to the riot near the Fifth Precinct on May 29, 2020, the officers' police report supplements either explicitly identified that they were working in a SWAT capacity or they identified the number of the SWAT unit to which they were assigned.  (*See, e.g.,* Sarff Decl., Ex. F at MPLS_Tirado000811, Tirado000848, Tirado000882, Tirado00889.)  The police report supplements also detailed officers' use of 40mm rounds or launchers on May 29.  (*See, e.g.,* Sarff Decl. Ex. F at MPLS_Tirado000845.)  Additionally, City Defendants produced

---

[2] At the time the City Defendants were preparing their Initial Disclosures, Tyrone Barze was employed with the MPD.  (Sarff Decl. at ¶9.)

a document detailing and inventorying the munitions used between May 26 and June 7, 2020, including the 40mm rounds used on May 29.  (Sarff Decl., Ex. E at p. 16 ("2020 Protest Munitions Used"); Ex. J (MPLS_Tirado006650).)  Further, the May 29, 2020, Incident Detail Report that was produced identified both the names of the officers that responded near the Fifth Precinct and the "Unit" to which they were assigned, including Units 1280 to 1286 for the SWAT team.  (Sarff Decl., Ex. G (Tirado_000915-000938) at MPLS_Tirado000917.)  All of the relevant police reports were produced to Plaintiff on April 20, 2021.[3]

In addition to the police reports listed above, City Defendants also began producing body worn camera video footage, along with an index, of officers near the Fifth Precinct on May 29, 2020. (Sarff Decl., Ex. E at pp. 16-18.)  Due to the volume of video footage, the City Defendants completed production of the approximately 160 videos from body worn cameras on April 22, 2021, two days after the initial disclosure deadline.  (Sarff Decl.

---

[3] In an October 28, 2021, letter to the Court, Plaintiff's counsel claimed that the City Defendants failed to produce all relevant police reports. According to Plaintiff, she "learned during the deposition of Officer Bennett on October 21 that he wrote an additional supplemental report for the May 29 General Offense Report that covers the events while he was at the 5th precinct."  Plaintiff asserted to the Court that "[t]his additional report is not contained within the May 29 General Offense Report, nor have the City Defendants produced it separately."  Plaintiff is incorrect.  Brian Bennett's work shift covered the evening of May 29 and into the next day on May 30.  At Mr. Bennett's deposition, he informed Plaintiff's counsel that his supplement for the May 29 incident was entered under a police GO Report number other than the one Plaintiff's counsel was presenting to him as an exhibit in the deposition.  (Sarff Decl., Ex. I at pp. 114:7-115:11.)  City Defendants produced both supplements written by Mr. Bennett with its initial disclosures, nearly eight months ago.  (Sarff Decl., Ex. F at MPLS_Tirado000848-000849; Sarff Decl. at Ex. H (detailing Officer Bennett's response to the Fifth Precinct).)  On at least four occasions in this case, Plaintiff has suggested that the City Defendants failed to produce documents that were already in Plaintiff's possession.

at ¶8.)  All of the relevant body worn camera video footage known to the City Defendants

was produced on or within two days of the initial disclosure deadline.[4]

**H.**    **Plaintiff asks if the City Attorney's Office can accept service of subpoenas on**
          **behalf of non-party witnesses, and Plaintiff ultimately effects personal service**
          **on just one of the non-party witnesses.**

On August 5, 2021, Plaintiff asked defense counsel whether they were "authorized

to accept service" of subpoenas for the deposition of two non-party witnesses, including

Tyrone Barze.  (Dkt. No. 104-1 at p. 3 (August 5, 2021, email).)    Defense counsel

responded, in part, that the defense would "reach out" to the non-party witnesses "to see"

if they could "accept service on their behalf."  (*Id*. at p. 2 (August 6, 2021, email).  Two

days later, while the parties were still emailing regarding scheduling conflicts for the

proposed depositions, defense counsel again emailed Plaintiff that they would "reach out"

to the non-party witnesses to check their availability and "inquire about waiving personal

service of the subpoena."  (*Id*. at p. 1 (August 9, 2021, email).)

Subsequently, on August 20 and October 12, 2021, Plaintiff's counsel asked the

defense if they would produce five additional witnesses without effecting personal service

---

[4] In an October 28, 2020, letter to the Court, Plaintiff implied that the City Defendants had
not produced all of the available body worn camera video footage, stating Plaintiff's
counsel is "aware of at least one known MPD officer, Officer Sawyer Moen, who was near
the area where Ms. Tirado was struck but was not wearing a BWC that was recording
during the requested time period on May 29."  As the Plaintiff has been informed, certain
MPD officers did not have access to their body worn camera videos or could not charge
their cameras for a variety of reasons, including the breach and burning of the MPD Third
Precinct on the previous evening of May 28, 2020, where cameras and chargers had been
stored.  In fact, in the last paragraph of Officer Moen's supplement, which Plaintiff has in
her possession, Officer Moen referenced this very same occurrence, explaining why he did
not have any body worn camera video.  (Sarff Decl. at Ex. F, MPLS_Tirado000882.)

of a subpoena, for a total of seven witnesses. (Sarff Decl. at ¶18.) Five of the witnesses appeared for a deposition without having been served with a subpoena, and Plaintiff canceled the deposition of one witness, which was scheduled for October 15. (*Id*.) The depositions of the remaining five witnesses occurred on September 30, October 12, October 21, November 19, and November 22. (*Id*.) Plaintiff has not sought to depose any other witnesses since her request on October 12, 2021. (*Id*.)

Defense counsel was unable to coordinate the deposition of Tyrone Barze. Defense counsel never informed Plaintiff's counsel that Tyrone Barze was willing to waive his legal right to personal service of the subpoena, or that defense counsel could accept service of the subpoena on his behalf. (*See* Dkt. Nos. 104-1, 104-2, 104-3, 104-4.) Instead, defense counsel informed Plaintiff that they were either "working on" scheduling and then, later, that they did "not have availability" for Mr. Barze. (Dkt. Nos. 104-3, 104-4.) On September 29, 2021, Defense counsel ultimately informed Plaintiff's counsel that "[d]espite my efforts, I have been unable to get in contact with [Mr. Barze] to coordinate" the deposition. (Dkt. No. 104-5.) Plaintiff's counsel asked for Mr. Barze's home address to personally serve the subpoena. Defense counsel asked Plaintiff to serve the City Defendants with an interrogatory for the home address, owing to the need to properly label the information as Confidential AEO under the Protective Order, but agreed as a courtesy to respond to the interrogatory within five business days rather than the 30-days allowed under the Federal Rules of Civil Procedure. (Dkt. Nos. 104-6 (October 8 email agreeing to respond in five business days).) On October 18, 2021, and within five days of receiving an interrogatory, City Defendants responded to Plaintiff's third set of interrogatories by

producing the last known address, phone number and email address for Mr. Barze.  (Sarff Decl. at ¶19.) On November 18, 2021, Plaintiff's counsel emailed stating that Mr. Barze had been served with a subpoena to appear at a deposition on December 2, 2021.  (Sarff Decl. at ¶20.)  Mr. Barze was deposed on December 2, 2021. (*Id.*)

**I.      The Court has already issued two Amended Scheduling Orders.**

On August 19, 2021, owing to the need to schedule depositions and conduct other fact discovery, the parties stipulated to extend the deadlines in the Scheduling Order by two months, in part, because "Plaintiff must review many hours or real-time video footage, along with significant volumes of other records in order to identify the John Doe Defendants and amend the Complaint accordingly."  (Dkt. No. 84 at p. 2.)  On August 20, 2021, the Court issued an Order approving the joint stipulation to Amend the Scheduling Order.  (Dkt. No. 86.)  The deadline to amend the pleadings to add additional parties or include punitive damages was extended to October 20, 2021.  (Dkt. No. 86 at p. 2.)

On October 20, 2021, after Mr. Barze was personally served with a subpoena, the parties entered a second stipulation to extend the deadlines in the Scheduling Order by six weeks, in part, because "Plaintiff anticipates that additional depositions may be necessary to identify the John Doe Defendants and amend the complaint accordingly." (Dkt. No. 94.) On October 21, 2021, the Court issued an Order Approving the Second Joint Stipulation to Amend the Scheduling Order ("Second Amended Scheduling Order").  (Dkt. No. 96.)  The deadline to bring a motion to amend the pleadings to add additional parties or include punitive damages was extended again to December 3, 2021. (*Id*. at p. 2.)  The close of fact discovery was extended to January 31, 2022. (*Id*.)

**J.      Deposition testimony regarding the identity of the alleged John Does.**

In the depositions, Plaintiff's counsel has shown the deponents pictures from Plaintiff's Complaint, which she claims depicts the John Does that struck her with a 40mm round.  (*See* Dkt. No. 33 at ¶58, pp. 16-17 (containing two photographs).)  Beginning on October 12, 2021, four of the deponents stated that the MPD officers wearing black vests and helmets in the photographs appear to be members of the SWAT team.  (Sarff Decl., Ex. M (October 12, 2021, Braun Deposition) at 228:23-229:25 (confirming all of the pictured individuals appear to be SWAT officers); Ex. I (October 21, 2021, Bennett Deposition) at 154:2-157:2 (identifying officers with the heavy vest as SWAT officers); Ex. N (November 19, 2021, Moen Deposition) at 128:17-130:4 (confirming the officers appear to be SWAT officers); Sarff Decl. at ¶23.)   Additionally, during one of the depositions, Plaintiff was informed that any unit assigned with a number beginning with "12" such as 1280, 1281, 1282 and so forth is a subunit of the SWAT team.  (Sarff Decl., Ex. I at 107:16-108:9.)  Plaintiff has not sought to depose any other witnesses, including SWAT team members, since her last October 12, 2021, deposition request.  (Sarff Decl. at ¶18.)

## ARGUMENT

**A.      Plaintiff cannot show good cause to extend the Scheduling Order for a third time.**

The Federal Rules of Civil Procedure provide that a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard of Rule 16(b) is an exacting one, for it demands a demonstration

that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 522 (D. Minn. 2018) (cleaned up); *see also Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS,* 2011 4625761 (Oct. 3, 2011).  The good cause standard "is not optional." *Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434–35 (8th Cir. 2019) (quoting *Sherman v. Winco Fireworks*, Inc., 532 F.3d 709, 716 (8th Cir. 2008)). "In sum, Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 582 (D. Minn. 1999).

The Court must first look at whether the party moving for the extension of the scheduling order has been diligent in attempting to meet the order's deadlines.  *Kmak v. Am. Century Companies, Inc.*, 873 F.3d 1030, 1034–35 (8th Cir. 2017).  While courts may consider the prejudice to the nonmoving party or parties, the question of prejudice to the nonmoving party need not be considered if the moving party has not been diligent.  *Albright as Next Friend of Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (citing *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

After two previous amendments to the Scheduling Order, the Second Amended Scheduling Order requires that all motions seeking to amend the pleadings to add parties must be filed by December 3, 2021. Plaintiff now asks for a third extension to that deadline, namely, to amend her First Amended Complaint to identify the John Doe defendants and add them as parties.  Plaintiff claims that two delays in this case warrant a third extension to the amendment deadline.  However, neither of the purported delays establish good cause

to modify the deadline to amend the pleadings under the Second Amended Scheduling Order.  Moreover, in so far as the Plaintiff seeks to extend the fact discovery deadline in the Second Amended Scheduling Order, her motion fails to comply with the requirements of Local Rule 16.3(c)(1)-(4) (requiring plaintiff to describe what discovery remains to be complete, has been completed, explanation of why not all discovery has been completed, and a statement of how long discovery will take to be completed).

## 1. The scheduling associated with a single deposition does not establish "good cause" to extend all or any of the deadlines by six months.

Plaintiff incorrectly suggests that the Second Amended Scheduling Order should be extended because of a delay in the scheduling of Tyrone Barze's deposition.  This argument is flawed for multiple reasons, and is insufficient to establish good cause for a third extension.

First, Tyrone Barze was not and is not the linchpin, dispositive witness with respect to identifying the John Doe defendants.  As defense counsel informed the Court during the October 21, 2021, Status Conference, Tyrone Barze was not operating a 40mm launcher on May 29, 2021, meaning he could not be John Doe 1. (Sarff Decl. at ¶23.)  Tyrone Barze confirmed this fact during his deposition.  (*Id*.)  Like three other witnesses before him, Mr. Barze confirmed that the officers depicted in Plaintiff's photographs were likely members of the SWAT team, but could not identify the specific identities of the officers.  There was no reason to believe that after having deposed the other four members of the 1286 SWAT team, that Tyrone Barze would offer any unique testimony with regard to the identification of the uniformly dressed officers in Plaintiff's photographs, or the overall identification of

the John Does. Had Mr. Barze been deposed earlier, Plaintiff would not be in a materially

different position than she is now – still unable to identify any of the John Does.

Second, Plaintiff does not offer any explanation for how a delay in the scheduling

of a single deposition warrants a six-month across-the-board extension to all of the

deadlines in the Second Amended Scheduling Order. Nor does Plaintiff identify anything

that prevented her from deposing other witnesses that were disclosed with the City

Defendants' April 20, 2021, initial disclosures. Nearly eight months ago, the City

Defendants produced all of the police supplements related to the May 29, 2020, incident.

Those supplements not only identified which officers were members of the SWAT team,

but also explicitly identified which officers reported using 40mm rounds. Additionally,

the City Defendants produced all available body worn camera footage for the incident.

Absolutely nothing prevented Plaintiff from deposing other witnesses – in particular, the

other SWAT officers or others reporting the use of 40mm rounds – pending the scheduling

of Mr. Barze's deposition, let alone months earlier when the initial disclosures were served.

Plaintiff has a sizeable legal team, and there was no excuse for Plaintiff to sit on her hands

hoping that one deposition would resolve all issues associated with the identification of the

John Does demonstrates a lack of diligence on her part. *See  Hagen v. Siouxland Obstetrics

& Gynecology, P.C.*, 286 F.R.D. 423, 425 (N.D. Iowa 2012) (denying extension when

movants were represented by a team of six attorneys).

Third, the need to effect personal service on a single non-party witness does not

amount to good cause for a third scheduling order extension. Plaintiff suggests some sort

of wrong-doing on the behalf of the City Defendants and Mr. Barze because she needed to

personally serve Mr. Barze with a subpoena to appear at a deposition.   While defense counsel agreed to attempt to ask Mr. Barze if he would allow counsel to accept service of a subpoena on his behalf, and defense produced five other witnesses in such a manner, the record shows that defense counsel was, unfortunately, unable to reach Mr. Barze to discuss Plaintiff's request.   Defense counsel never represented that Mr. Barze had waived his right to personal service of the subpoena, and Plaintiff had no reasonable expectation that he would do so.   In other words, at any time, Plaintiff's counsel knew that they could be informed that Mr. Barze would not waive personal service.   Still, when scheduling was unsuccessful, City Defendants agreed to produce Mr. Barze's address within only five business days of a properly served interrogatory to assist Plaintiff in personally serving Mr. Barze.   That Plaintiff was required to comply with Federal Rule of Civil Procedure 45(b) is neither improper nor sufficient to satisfy the exacting standard of good cause.   Although Plaintiff contends that Mr. Barze attempted to evade service of the subpoena, it is notable that Plaintiff offers no record citation in support of that contention, and no affidavit from a process server suggesting any particular evasive conduct by Mr. Barze.

Fourth, the Court has already twice extended the Scheduling Order based on Plaintiff's need to conduct depositions, including the deposition of Mr. Barze, and identify the John Doe defendants.   To the extent good cause existed with respect to Mr. Barze's deposition, it was subsumed in the last stipulation and Second Amended Scheduling Order. The scheduling of a single deposition does not amount to good cause for a perpetual, or six-month, extension to all deadlines in this case.

2.     **There are no discovery deficiencies warranting the requested extension or establishing "good cause."**

Plaintiff incorrectly suggests that the amendment deadline in the Second Amended Scheduling Order should be extended because of purported discovery deficiencies.  This argument likewise fails for multiple reasons, and is insufficient to establish good cause for a third extension.

The City Defendants fully responded to Plaintiff's discovery requests seeking information sufficient to identify the John Does.  In Plaintiff's first set of discovery requests, interrogatory number 1 requested the identity of John Does 1-4 and Document Request number 1 sought documents and communications "*sufficient to identify each of John Does 1-4.*"  (Sarff Decl. at Ex C, p. 4; Ex. D at p. 5 (emphasis added).)  City Defendants responded, "without conceding that Plaintiff was struck in the eye with a less-lethal projectile by an MPD officer, upon the entry of a Protective Order, City Defendants will provide the Plaintiff with relevant body worn camera video footage recorded on the evening of May 29, 2020, and a General Offense Report related to events occurring near the Fifth Precinct on May 29, 2020, to enable the Plaintiff to identify the purported John Does."  (Sarff Decl. at Ex. C, pp. 5-6; Ex. D, p. 2.)  Those documents, which were served on April 20, 2021, are sufficient to identify the John Does should they actually exist.  Plaintiff has had the relevant video and police reports for nearly eight months but has only endeavored to depose six of the over-eighty officers that were present near the Fifth Precinct.  Plaintiff's failure to identify the John Does is not a result of the City Defendants' discovery responses, it is the natural result of a record filled with evidence that contradicts

Plaintiff's claims.  Notably and significantly, Plaintiff does not allege to this Court that the City Defendants' answer to interrogatory number 1 or response to document request number 1 is deficient or lacking in any regard.

Rather, Plaintiff alleges that the City Defendants' responses to discovery requests on other topics, relating to the tracking of 40mm rounds or training related to 40mm rounds, is somehow lacking.   Once again, Plaintiff appears to be unfamiliar with the document production from City Defendants.  Along with the City Defendants' initial disclosures, they produced a spreadsheet inventorying the munitions used during the protests between May 26, and June 7, 2020, including the 40mm rounds used on May 29, 2020.  (Sarff Decl., Ex. J.)  Additionally, City Defendants produced training materials relating to the use of less-lethal munitions, including a PowerPoint presentation relating to Chemical Munitions and Crowd Control Re-Cert, which was the 40mm training offered to SWAT personnel prior to the May 2020 riots.  (Sarff Decl. Ex. E at p. 15 (citing to MPLS_Tirado002393-006646), p.16 (citing to MPLS_Tirado006651-006730).)   And, most importantly, the City Defendants produced the best evidence of officers' use of 40 mm rounds – the police report supplements describing and the body worn camera videos showing which officers near the Fifth Precinct were carrying 40mm launchers and using 40mm rounds.

Even if a deficiency could be found, the purported deficiencies would not warrant a *third extension* to the *deadline to amend the complaint*.  Plaintiff's remedy against purported discovery deficiencies is to bring a motion to compel.  But, to the extent Plaintiff claims that discovery deficiencies have prevented her from amending her complaint under *three separate scheduling orders*, Plaintiff's failure to bring a motion to compel

demonstrates a lack of diligence on her part and undermines a finding of good cause. *Smith v. BCE Inc.*, 225 F. App'x 212, 217 (5th Cir. 2007) (unpublished) ("A diligent party attempts to compel discovery through the presiding court after opposing counsel unjustly refuses to provide responses.").

Indeed, according to Plaintiff, the discovery deficiencies have purportedly persisted since her first set of discovery requests were served more than a year ago and purportedly continued in response to her second set of discovery requests nearly four months ago. Yet Plaintiff has not filed any motion to compel. City Defendants dispute Plaintiff's assertions, but even assuming them to be true, Plaintiff's assertions defeat her request to amend the scheduling order's deadlines to amend the complaint. *See Alexander v. 1328 Uptown, Inc.*, No. 18-CV-1544 (ECT/ECW), 2019 WL 9514655, at *4 (D. Minn. June 20, 2019) **(**"If the Fortney Entities' discovery responses were preventing Alexander from getting the veil-piercing discovery he needed for him to timely amend his Complaint, it was incumbent on Alexander to promptly raise his concerns with the Fortney Entities and with the Court. . . . Alexander has not explained why he did not ensure that he had the discovery needed to permit him to amend the Complaint."); *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, No. CV 06-4112 (ADM/JSM), 2009 WL 10677528, at *17 (D. Minn. July 10, 2009) (citing to Wells v. Sears Roebuck and Co., 203 F.R.D. 240, 241 (S.D. Miss. 2001) ("the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril. He must not expect the Court to extend discovery ... because of the failures of the other party to respond, even if that failure is in bad faith."). Plaintiff has not been diligent in seeking a motion to compel discovery that she claims is

necessary to amend her complaint and, accordingly, she cannot demonstrate good cause for the third extension she now seeks.

### 3.      The requested extension is prejudicial to the City Defendants.

The City Defendants deny that an MPD officer struck the Plaintiff with a 40mm projectile.  Plaintiff vacillated in her original complaint as to whether an MPD officer or another law enforcement agency was responsible for her alleged injury, and the evidence demonstrates a series of other possible causes for her injury.  Plaintiff has already had nearly eight months to read the police reports, review the body worn camera footage, and depose those officers that were present near the Fifth Precinct on May 29, 2020.  Still she cannot identify the John Does that allegedly harmed her, largely because the evidence does not support her claim against MPD officers.  It would be prejudicial to the City Defendants to extend the deadlines in this case for a third time, and needlessly extend costly discovery. *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 0:18-CV-1253-SRN-KMM, 2020 WL 6262378, at *2–3 (D. Minn. May 6, 2020) (finding additional discovery a source of prejudice to the non-moving party).  The Plaintiff's motion should be denied as prejudicial.

### CONCLUSION

To the extent the Plaintiff intends to name MPD officers as John Does 1-4, Plaintiff has had the requisite information to do so since April 2021, when the City Defendants' initial disclosures were complete.  Plaintiff has not demonstrated diligence or good cause that would warrant a third extension to the remaining deadlines in the Second Amended Scheduling Order, particularly with respect to the deadline to amend the complaint to add

parties.   Therefore, City Defendants respectfully request that the Court deny the Plaintiff's

motion.

Dated: December 13, 2021     JAMES R. ROWADER, JR.
               City Attorney
               By */s Kristin Sarff*
               KRISTIN R. SARFF (0388003)
               SHARDA ENSLIN (0389370)
               HEATHER P. ROBERTSON (0390470)
               Assistant City Attorneys
               350 South Fifth Street, Room 210
               Minneapolis, MN 55415
               (612) 673-3919
               (612) 673-2180
               (612) 673-3949
               kristin.sarff@minneapolismn.gov
               sharda.enslin@minneapolismn.gov
               heather.robertson@minneapolismn.gov

               *Attorneys for Defendants*
               *City of Minneapolis and Medaria*
               *Arradondo, in his official capacity*